**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE CULTURAL LANDSCAPE
FOUNDATION and CHARLES A.
BIRNBAUM,
   1711 Connecticut Avenue NW 200
   Washington, DC 20009

               *Plaintiffs*,

      *v.*

U.S. DEPARTMENT OF THE INTERIOR and
DOUG BURGUM, *in his official capacity as
Secretary of the Interior*;
   1849 C Street NW
   Washington, DC 20240

NATIONAL PARK SERVICE and JESSICA
BOWRON, *in her official capacity as Acting
Director of the National Park Service*;
   1849 C Street NW
   Washington, DC 20240

               *Defendants*.

No. 26 Civ. 1593

**<u>COMPLAINT</u>**

**INTRODUCTION**

1.     The Lincoln Memorial Reflecting Pool (the "Reflecting Pool") in Washington, DC, is one of the most iconic designed landscapes in the world. Completed in 1924 on the central axis of the National Mall, it has defined the visual and experiential character of the nation's capital for over a century. The Reflecting Pool's profound reflective quality—achieved through deliberate design choices, including the dark color of its basin—creates the sweeping mirror image of the Lincoln Memorial and the Washington Monument that millions of visitors experience every year.

2.     The dark grey, achromatic basin was not incidental to the design. It *was* the design. The 1999 National Park Service Cultural Landscape Report for the Lincoln Memorial Grounds specifically identifies the dark-tiled basin as a character-defining feature of the historic landscape,

noting that "the dark color of the tile created the illusion of greater depth and a more profound reflection."[1]

3.     But all that started changing when Defendants engaged a swimming pool contractor to resurface the Reflecting Pool a vivid blue coating. This work is ongoing.

4.     Shockingly, Defendants started altering the historic character of the Reflecting Pool without following Congressionally mandatory procedures. Of particular importance, Section 106 of the National Historic Preservation Act ("NHPA") requires agencies to engage in a process of consultation *before* making changes to historic properties. Indeed, Congress passed the NHPA in 1966 to forestall precisely this kind of unconsidered, wanton destruction of historic properties.

5.     The Reflecting Pool and its surrounding landscape are listed in the National Register of Historic Places as part of the National Mall Historic District. Accordingly, before making any changes to the Reflecting Pool, Defendants were obligated to follow the Section 106 procedures. This includes consulting with various interested parties such as experts and nonprofit organizations with relevant expertise that provide input on proposed changes.

6.     Defendants undertook this resurfacing without conducting the Section 106 consultation. No consulting parties have been notified, engaged, or given an opportunity to participate. This latest desecration of the reflecting pool is part of a pattern—epitomized most notably by the rush to destroy the East Wing of the White—in which this Administration willfully disregards legal limits established by Congress.

---

[1] U.S. Department of the Interior, *Cultural Landscape Report, West Potomac Park, Lincoln Memorial Groups* at 33 (Aug. 1999), https://npshistory.com/publications/linc/clr-lincoln-memorial-grounds.pdf [https://perma.cc/DHN3-7NYQ] ("1999 CLR").

2

7.        Every day that the resurfacing continues, the historic character of the Reflecting Pool is being further and fundamentally altered. And every day that Defendants forge ahead without following the Section 106 procedures, Plaintiffs are deprived of information and ability to participate in the review process that Congress provided in the NHPA. The Court should act now, halt further resurfacing, and require Defendants to comply with the law they have bypassed.

8.        Plaintiffs—a leading nonprofit organization dedicated to education about and promoting informed stewardship of historic designed landscapes and one of the foremost national authorities on national policies for managing change at and the treatment of cultural landscapes— seek declaratory and injunctive relief requiring Defendants to halt further resurfacing of the Reflecting Pool basin, to disclose and provide to Plaintiffs all plans and documentation relating to the undertaking so that Plaintiff The Cultural Landscape Foundation ("TCLF") may participate as a consulting party in the Section 106 review, and to complete that deliberative process before any further alteration of the basin proceeds.

## JURISDICTION AND VENUE

9.        This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

10.        Venue is proper in this District under 28 U.S.C. § 1391(e). The Reflecting Pool is located in this District, a substantial part of the events and omissions giving rise to these claims occurred here, and Defendants are agencies, officers, or employees of the United States acting in their official capacities.

## PARTIES

11.        Plaintiff THE CULTURAL LANDSCAPE FOUNDATION is a nonprofit, tax-exempt organization established in 1998 with its principal place of business in Washington, D.C.

TCLF's mission is to connect people to places by educating and engaging the public to make our shared landscape heritage more visible, identify its value, and empowering its stewards. TCLF pursues that mission through its four core programs: its *What's Out There* database, North America's largest and most exhaustive database of cultural landscapes; *Pioneers of American Landscape Design*, an in-depth multimedia library chronicling the lives of significant landscape architects and educators; *Landslide*, an ongoing collection of important landscapes and landscape features that are threatened; and *The Cornelia Hahn Oberlander International Landscape Architecture Prize*, a biennial prize in landscape architecture with a $100,000 monetary award.

12. In addition, TCLF engages in advocacy and engages with governments on proposed projects that affect cultural landscapes. As part of this effort, TCLF has an established practice of participating as a consulting party in Section 106 proceedings for significant, designed cultural landscapes. It has previously requested and obtained consulting party status in Section 106 proceedings related to historic properties in the National Mall area, including the White House Visitor Center and Lafayette Park.

13. TCLF has inquired with the National Park Service about the Reflecting Pool resurfacing project and requested consulting party status under in any Section 106 proceeding relating to the project.

14. Defendants' failure to initiate and conduct the Section 106 process before commencing the basin resurfacing and their ongoing refusal to disclose information about the undertaking, deprives TCLF of its ability to participate and engage in the deliberative processes that comprise Section 106: to be notified as a prospective consulting party and/or member of the public; to petition to become a consulting party; and—whether as a formal consulting party or as a member of the public—to receive and review plans and documentation regarding the

4

undertaking and its effects on the historic property and to submit expert comments on the historic significance of the character-defining feature at issue. That deprivation directly impairs TCLF's ability to fulfill the core advocacy and stewardship functions that constitute its organizational mission and constitutes a concrete, ongoing injury.

15.    Plaintiff CHARLES A. BIRNBAUM, FASLA, FAAR, is the founder, President, and CEO of TCLF and resides in the Washington, D.C. metropolitan area. From 1992 to 2007, Mr. Birnbaum spent fifteen years as coordinator of the National Park Service's Historic Landscape Initiative, and during this time he authored the *The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes* (1996) (the "*Standards and Guidelines*"), the governing federal framework for the preservation and treatment of historic landscapes, including the Lincoln Memorial Grounds and the Reflecting Pool. He is a recognized national authority on the identification, documentation, and management of change of significant historic designed landscapes.

16.    Mr. Birnbaum has visited the National Mall and the Reflecting Pool on numerous occasions, both in his professional capacity and for personal enjoyment. The Lincoln Memorial Grounds and the Reflecting Pool have been a cherished part of his personal life in Washington, D.C. During the COVID-19 pandemic, he found particular solace in walking around the Lincoln Memorial and the Reflecting Pool. Since that time, the Lincoln Memorial Grounds and the Reflecting Pool have been his go-to place for walking, reflecting, and taking respite from the demands of my work. In recent years, when he is not traveling, he visits the Lincoln Memorial and the Reflecting Pool approximately once a month and plans to continue visiting them with at least the same frequency in the future.

17.     Due to his training as a landscape architect with deep experience at NPS, including his authorship of the *Standards and Guidance*, Mr. Birnbaum has a heightened appreciation for the specific design qualities that make the Reflecting Pool significant: the grey, achromatic basin of the Reflecting Pool as the source of the pool's profound reflective depth. The ongoing resurfacing of the basin in vivid blue has materially degraded Mr. Birnbaum's aesthetic experience. Mr. Birnbaum's aesthetic enjoyment of the Reflecting Pool—as a historic designed landscape whose character he has documented, championed, and personally appreciated over many years—is being concretely harmed by Defendants' ongoing alteration of its character-defining features. *See, e.g.*, *Trump Begins Renovation Of Lincoln Memorial Reflecting Pool With 'American Flag Blue' Surface*, Dallas Express (Apr. 27, 2026), https://dallasexpress.com/national/trump-begins-renovation-of-lincoln-memorial-reflecting-pool-with-american-flag-blue-surface/ [https://perma.cc/2KGR-BHNF] (quoting Mr. Birnbaum). He will continue to suffer this aesthetic injury unless and until the historic character of the pool is restored.

18.     Defendant U.S. DEPARTMENT OF THE INTERIOR ("DOI") is a federal agency headquartered in Washington, D.C. The Department of the Interior oversees the National Park Service, which manages the National Mall and Memorial Parks, including the Lincoln Memorial Grounds and the Reflecting Pool. The Department of the Interior's spokesperson has publicly confirmed that the basin resurfacing project is being carried out under its authority.

19.     Defendant DOUG BURGUM is the Secretary of the Interior. He is sued in his official capacity. President Trump has publicly stated that he worked with Secretary Burgum on the Reflecting Pool resurfacing project. The Secretary is responsible for the supervision of public

business related to the National Park Service, including the management of the Reflecting Pool and the Lincoln Memorial Grounds.

20.    Defendant NATIONAL PARK SERVICE ("NPS") is a bureau within the Department of the Interior, headquartered in Washington, D.C. NPS administers the National Mall and Memorial Parks, of which the Lincoln Memorial Grounds, including the Reflecting Pool, are a part. NPS is the federal Agency Official responsible for compliance with Section 106 of the National Historic Preservation Act for undertakings affecting historic properties within its jurisdiction.

21.    Defendant JESSICA BOWRON is the Acting Director of the National Park Service. She is sued in her official capacity. The NPS Director is responsible for the supervision, management, and control of National Park System units, including the National Mall and Memorial Parks.

## LEGAL BACKGROUND

22.    In the relevant part, the NHPA provides: "The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State . . . prior to the approval of the expenditure of any Federal funds on the undertaking . . . shall take into account the effect of the undertaking on any historic property." 54 U.S.C. § 306108.

23.    An "undertaking" under Section 106 means any "project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including . . . those carried out by or on behalf of a federal agency; . . . those carried out with Federal financial assistance;" and "those requiring a Federal permit, license, or approval." 54 U.S.C. § 300320(1)-(3); 36 C.F.R. § 800.16(y). An agency's physical resurfacing of a historic property it manages and funds with federal resources is an undertaking.

24.    A "historic property" is "any prehistoric or historic district, site, building, structure, or object included on, or eligible for inclusion on, the National Register" of Historic Places. 54 U.S.C. §§ 300308, 300311. The National Mall Historic District, which includes the Lincoln Memorial Grounds and the Reflecting Pool, is a listed property on the National Register of Historic Places.

25.    The obligation to "take into account" the effect on historic property requires the agency to follow the mandatory consultative process set forth in the regulations at 36 C.F.R. Part 800. That process requires the Agency Official to: initiate the Section 106 process and identify consulting parties, *id.* § 800.3; identify historic properties that may be affected by the undertaking, *id.* § 800.4; assess adverse effects, *id.* § 800.5; and, where adverse effects exist, attempt to resolve them through consultation, *id.* § 800.6. The public must be provided information about the undertaking and its effects on historic properties and given an opportunity for comment and input before the undertaking proceeds. *Id.* § 800.2(d)(2). Throughout this process, the Agency Official is subject to documentation requirements that are designed to "enable any reviewing parties to understand" any "determination, finding, or agreement" under the regulations. *Id.* § 800.11(a).

26.    Critically, organizations with a demonstrated interest in the effects of an undertaking on historic properties—like TCLF—may participate as consulting parties in the Section 106 process. *Id.* § 800.2(c)(5). The Agency Official "shall consider all written requests of individuals and organizations to participate as consulting parties and, in consultation with the [State or Tribal Historic Preservation Officers] and any Indian tribe upon whose tribal lands an undertaking occurs or affects historic properties, determine which should be consulting parties." *Id.* § 800.3(f)(3).

27.    Additionally, because "[t]he views of the public are essential to informed Federal decisionmaking in the section 106 process," the Agency Official "shall seek and consider the views of the public" and must "provide the public with information about an undertaking and its effects on historic properties and seek public comment and input." *Id.* §§ 800.2(d)(1)-(2).

28.    The Section 106 process must be completed "prior to the approval of the expenditure of any Federal funds on the undertaking." 54 U.S.C. § 306108; *see also* 36 C.F.R. § 800.1(c) ("The agency official must complete the section 106 process 'prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license.'").

29.    Pursuant to 36 C.F.R. § 800.14(b), an agency may establish a "programmatic agreement" to govern certain repetitive activities, such as "routine management activities."

30.    In 2008, NPS signed the *Programmatic Agreement Among the National Park Service (U.S. Department of the Interior), the Advisory Council On Historic Preservation, and the National Conference of State Historic Preservation Officers for Compliance with Section 106 of the National Historic Preservation Act* (the "2008 PA"), https://parkplanning.nps.gov/document.cfm?documentID=66116    [https://perma.cc/TKU5-WJZ9]. It established a "streamlined" review process for certain undertakings such as preservation maintenance and repair of historic properties. For projects that qualify for streamlined review, no consultation is generally required under Section 106. *Id.* at 9.

31.    Under the 2008 PA, "[u]se of the Streamlined Review Process is limited to actions for retaining and preserving, protecting and maintaining, and repairing and replacing in-kind, as necessary, materials and features, consistent with the Secretary of the Interior's Standards for the Treatment of Historic Properties (Standards) and the accompanying guidelines." *Id.* at 11. The specific examples cited include "Repainting *in the same color as existing, or in similar colors or*

*historic colors* based upon an approved historic structure report, cultural landscape report, or a historic paint color analysis." *Id.* at 12 (emphasis added).

32.     The National Environmental Policy Act (NEPA) "ensures that the agency and the public are aware of the environmental consequences of proposed projects." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168, 177 (2025). Like NHPA, NEPA's procedural requirements "helps agencies to make better decisions and to ensure good project management." *Id.*

33.     NEPA requires every agency to issue an Environmental Impact Statement for any proposed agency action that has "a reasonably foreseeable significant effect on the quality of the human environment." 42 U.S.C. § 4336(b)(1). If the proposed agency action "does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," then the agency must prepare an Environmental Assessment "set[ting] forth the basis of such agency's finding of no significant impact or determination that an environmental impact statement is necessary." *Id*. § 4336(b)(2).

34.     In specific limited circumstances, an agency may determine that a proposed action falls within a "categorical exclusion[]" and therefore is exempt from the obligation to prepare an environmental assessment or environmental impact statement. *Id.* § 4336(a)(2). A categorical exclusion is "a category of actions that a Federal agency has determined normally does not significantly affect the quality of the human environment." *Id.* § 4336e(1); *see also* 43 C.F.R. § 46.210 (setting forth Department of Interior's categorical exclusions); Notice of Adoption of Categorical Exclusions Under Section 109 of the National Environmental Policy Act, 90 Fed. Reg. 24644, 24645 (June 11, 2025) (adopting additional categorical exclusions for National Park Service). Even if a proposed action would otherwise fall within a categorical exclusion,

10

Defendants may not invoke a categorical exclusion if the proposed action would have significant impacts on "park . . . lands" or "on properties listed, or eligible for listing, on the National Register of Historic Places." 43 C.F.R. § 46.215(b), (f).  "If a proposed action does not meet the criteria for any of the listed Departmental categorical exclusions or any of the individual bureau categorical exclusions, then the proposed action must be analyzed in an environmental assessment or environmental impact statement." 43 C.F.R. § 46.205(a).

35.    Agency compliance with the NHPA and NEPA is reviewable through the Administrative Procedure Act ("APA"). *See Nat'l Tr. for Historic Pres. v. Blanck*, 938 F. Supp. 908, 915-16 (D.D.C. 1996), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999) (citing 5 U.S.C. § 706). Under the APA, a court shall "hold unlawful and set aside agency action" taken "without observance of procedure required by law," "in excess of statutory jurisdiction, authority, or limitations," or that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(D), (C), (A).

## FACTUAL BACKGROUND

*The Reflecting Pool as a Historic Designed Landscape*

36.    The Lincoln Memorial Reflecting Pool has been one of the defining features of the nation's capital for over a century. It is one of the most iconic structures in the United States, and is an integral part of "one of the important axes in the nation, one that aligns several key national symbols including the U.S. Capitol Building, the Washington Monument, the World War II Memorial, and the Lincoln Memorial."[2] Congress has declared that "the great cross-axis of the Mall . . . [including the axis] from the United States Capitol to the Lincoln Memorial" is "a

---

[2]  National Park Service, Environmental Assessment, Rehabilitation of the Lincoln Memorial Reflecting Pool 1-5 (2009), https://npshistory.com/publications/linc/reflecting-pool-rehab-ea-2009.pdf [https://perma.cc/2CCA-BS5G].

substantially completed work of civic art" whose integrity should be preserved. Commemorative Works Clarification and Revision Act of 2003, Pub. L. No. 108-126 §202, 117 Stat. 1348.

37.     The Reflecting Pool and the area around it is "one of the most popular destinations in the country, having served as the backdrop to some of our nation's most historic events."[3] Millions of visitors from all over the world walk along, gaze into, and/or photograph the Reflecting Pool each year. The pool is the site of the 1963 March on Washington, where the Reverend Dr. Martin Luther King Jr. delivered his "I Have a Dream" speech, among the most consequential moments in American civic history.

38.     The Reflecting Pool is a man-made reflecting basin approximately 2,000 feet in length and 160 feet in width, located on the central axis of the National Mall between the Lincoln Memorial to the west and the Washington Monument to the east. Designed as a central element of the McMillan Commission's plan for the Mall, the pool was constructed between 1919 and 1924.

39.     The Reflecting Pool and its surrounding landscape—including the double rows of elm trees, the granite coping, the Rainbow Pool to the east, and the stepped approaches—are listed on the National Register of Historic Places as components of the National Mall Historic District.

40.     The visual and aesthetic character of the Reflecting Pool derives principally from its function as a mirror. As the 1999 National Park Service Cultural Landscape Report for the Lincoln Memorial Grounds explains, the waterproofing base developed for the pool's basin—consisting of an asphalt-coated membrane, slate, and concrete tile—was specifically chosen through trial and error for its dark coloration. *See* 1999 CLR at 33. The dark color of the tile

---

[3] *Id.* at iii.

"created the illusion of greater depth and a more profound reflection." *Id.* The grey, achromatic basin is not a utilitarian feature of the Reflecting Pool but a deliberate design choice integral to the pool's historic character and function. The 1999 CLR identifies it as a character-defining feature of the historic landscape.

*The Basin Resurfacing*

41.     On November 26, 2025, President Trump posted a video of the Reflecting Pool on Truth Social with the following message: "This is the Lincoln Memorial Reflecting Pool before Secretary of the Interior Doug Burgum and I fix it. Study it hard because you won't be seeing this Biden filth and incompetence much longer!" Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 26, 2025, 11:56AM), https://truthsocial.com/@realDonaldTrump/posts/115617052659110736 [https://trumpstruth.org/statuses/34025].

42.     Beginning some time in mid-April 2026, without any notice or reviews, Defendants commenced a project to resurface the basin of the Reflecting Pool with a vivid blue coating.



Rachel Treisman, *Trump's 'American Flag Blue' Reflecting Pool Project Gets a Mixed Reaction in D.C.*, NPR (Apr. 28, 2026), https://www.npr.org/2026/04/28/nx-s1-5802343/reflecting-pool-resurfacing-blue-trump [https://perma.cc/AA88-GKR3].

43.    President Trump announced the project at an April 23, 2026, Oval Office event, stating that he had been working on the project with Secretary Burgum and that the resurfacing contractor was someone who is, in his description, "unbelievable at doing swimming pools." Video posted by Forbes Breaking News, YouTube, *Trump Goes On Ten-Minute Rant About Plan For Lincoln Memorial Reflecting Pool 'Beautification'* (Apr. 23, 2026), https://www.youtube.com/watch?v=D_Fn5fxW55s [https://perma.cc/K42L-C9UZ]. Trump stated he had originally wanted turquoise "like in the Bahamas" but was persuaded by the contractor to choose a color called "American flag blue." *Id.* He indicated his intent to have the project complete by July 4, 2026, in time for the nation's 250th anniversary celebration. *Id.*

44.      According to public reporting, the project was awarded via a $6.9 million no-bid contract to Atlantic Industrial Coatings, which had performed work at President Trump's Trump National Golf Club in Sterling, VA. *See* David A. Fahrenthold & Luke Broadwater, *The No-Bid Contract That Is Turning Washington's Reflecting Pool Blue*, N.Y. Times (May 8, 2026), https://www.nytimes.com/2026/05/08/us/politics/reflecting-pool-trump-contract.html?unlocked_article_code=1.hVA.dnZ2.sbncrTFWnY-Y&smid=url-share.      The administration invoked an exemption for urgent situations to bypass ordinary government contract rules. *Id.* The purported urgency is that President Trump "wanted it changed for the country's birthday party on July 4." *Id.*

45.      On May 7, 2026, President Trump gave an interview where he criticized the historic reflecting pool structure because, in his view, "the color was never good, it had a grey stone underneath." Video posted by Diario AS, *Trump Full Visit To Reflecting Pool Works In Lincoln's Memorial Leaves Explosive Remarks*, YouTube (May 8, 2026), https://www.youtube.com/watch?v=4c40jxv6yb4 [https://perma.cc/M4NT-H4Z3]. In President Trump's view, a vivid blue paint job will make the structure look "better than it did in 1922 when it was built." *Id.*

46.      President Trump has stated that the project will cost over $1 million in taxpayer funds. *Id.*

47.      On May 1, 2026, President Trump posted an AI-generated image of himself, Vice President JD Vance, Secretary of State Marco Rubio, Secretary of the Interior Doug Burgum, and a woman, swimming in the Reflecting Pool.

15



Donald J. Trump (@realDonaldTrump), Truth Social (May 1, 2026, 11:03 PM), https://truthsocial.com/@realDonaldTrump/posts/116502756484361615 [https://trumpstruth.org/statuses/38131].

48.    As of the filing of this complaint, blue paint is being added to the Reflecting Pool on a daily basis. A spokesperson for the Department of the Interior has stated it expects the project to be completed by the end of May 2026. *See* Treisman, *supra* ¶ 42.

49.    The resurfacing will dramatically and permanently transform the character-defining grey, achromatic appearance of the Reflecting Pool basin. Where the historic dark-tiled basin created the profound reflective surface described in the 1999 Cultural Landscape Report, the vivid blue coating will fundamentally alter the visual and experiential character of the pool and the broader Lincoln Memorial Grounds landscape. The new coloration will cause the pool to resemble a large swimming pool rather than the reflective civic landscape it was designed to be, distorting the experience of the site for the millions of visitors who come to it each year.

*Defendants' Failure to Conduct Required Reviews*

50.    Defendants have undertaken the painting of the Reflecting Pool without following the processes required by law.

51.    To date, no Section 106 consultation has been publicly initiated in connection with the Reflecting Pool basin resurfacing. No determination of effect on the National Mall Historic District has been made available. No consulting parties have been identified, notified, or engaged. No public information about the undertaking and its effects on the historic property has been provided, and no opportunity for public comment has been offered, before work began or since.

52.    The NPS posts planning documents about its projects for public review on its Planning, Environment & Public Comment ("PEPC") website. *See* National Park Service, Planning, Environment & Public Comment, https://parkplanning.nps.gov/ [https://perma.cc/45WA-3BVW]. For example, for the previous renovation of the Reflecting Pool, PEPC contains approximately 20 documents, including meeting notices, meeting notes, environmental assessment documents, submissions to the U.S. Commission of Fine Arts, and submissions to the National Capital Planning Commission, programmatic agreements, and memorandums of agreement among the consulting parties. *See* National Parks Service, Rehabilitate Lincoln Reflecting Pool and Rehabilitate Surrounding Area, https://parkplanning.nps.gov/documentsList.cfmprojectID=26512 [https://perma.cc/GXM5-R6L7].

53.    As of the filing of this complaint, no planning documents related to the current Reflecting Pool resurfacing have been posted by NPS on the PEPC website.

54.    TCLF has affirmatively contacted Defendants to seek information about whether a Section 106 review was initiated. Specifically, on April 27, 2026, TCLF emailed Tammy

Stidham, NPS's Associate Regional Director for Lands and Planning to inquire about the Reflecting Pool resurfacing project.

55.    TCLF has also affirmatively requested consulting party status in any Section 106 proceeding relating to the Reflecting Pool basin resurfacing. Specifically, on May 5, 2026, TCLF emailed Tammy Stidham to request being a consulting party. Defendants have not responded to those inquiries.

56.    TCLF also contacted the Advisory Council on Historic Preservation ("ACHP")— the agency charged with issuing regulations to implement Section 106, 36 C.F.R. § 800.2(b)—to inquire about the Reflecting Pool basin resurfacing. On May 8, 2026, Jaime Loichinger, the Director of the Office of Federal Agency Programs at ACHP, responded: "As we understand, the NPS reviewed this under the terms of its 2008 Nationwide PA."

57.    On information and belief, NPS invoked the 2008 PA as the basis for forgoing standard Section 106 review. However, the Reflecting Pool basin resurfacing plain does not qualify for the streamlined review process. *See supra* ¶¶ 29-31.

58.    TCLF's participation as a consulting party would bring to the Section 106 process directly relevant institutional expertise. TCLF has a demonstrated and documented interest in the Reflecting Pool as a historic designed landscape and expertise in the assessment of effects on historic designed landscapes of the type at issue here.

59.    Defendants' failure to initiate Section 106 consultation has denied TCLF the opportunity to obtain information about the project and to participate and contribute its expertise before the historic character of the pool is permanently altered.

60.    Defendants have also failed to follow other processes that they have historically followed before making fundamental changes to the Reflecting Pool. For example, the

18

Commission of Fine Arts (CFA) has been involved with changes to the Reflecting Pool since it was first constructed. The CFA is a federal agency that advises on "statues, fountains, and monuments erected under the authority of the Federal Government," 40 U.S.C. § 9102(a)(2), and reviews federal agency projects that, among other things, contemplate "modifying an existing park or public space" or making "modifications or additions to an existing building or site on federal or D.C. government property." U.S. Commission of Fine Arts, Project Review, https://www.cfa.gov/project-review [https://perma.cc/G8QW-KBSF]. More than 100 years ago, President Harding ordered federal agencies to submit "the designs of statues, fountains and monuments, and all important plans for parks and all public buildings" to the CFA for "advice as to the merits."[4] Consistent with this command and longstanding practice, Defendants sought and obtained approval for design elements during the 2010 rehabilitation of the Reflecting Pool,[5] and for other changes to the surrounding area.[6] Yet Defendants have failed to submit their recent proposed changes to the Reflecting Pool to the CFA for review or approval.

_____

[4] Exec. Order No. 3524 (1921); *see also* 45 C.F.R. § 2101.1 ("The Commission of Fine Arts (referred to as the 'Commission') functions pursuant to statutes of the United States and Executive Orders of Presidents.").

[5] *See*, U.S. Commission of Fine Arts, CFA 18/MAR/10-2 (Mar. 26, 2010), https://www.cfa.gov/records-research/project-search/cfa-18mar10-2 [https://perma.cc/ZG7Q-FJVK]; U.S. Commission of Fine Arts, CFA 18/FEB/10-2 (Feb. 18, 2010), https://www.cfa.gov/records-research/project-search/cfa-18feb10-2 [https://perma.cc/BUP6-86NZ].

[6] *See, e.g.,* U.S. Commission of Fine Arts, CFA 21/SEP/23-a, https://www.cfa.gov/records-research/project-search/cfa-21-sep-23-0 [https://perma.cc/7HB6-CUGP] (approving temporary access ramps to main chamber of Lincoln memorial); U.S. Commission of Fine Arts, CFA 16/JUL/09-2 (July 24, 2009), https://www.cfa.gov/records-research/project-search/cfa-16jul09-2 [https://perma.cc/F4VU-HK4B] (requiring additional design development for landscape around Reflecting Pool, including raising "concerns about the design of the existing Elm Walks and proposed walkways along the Reflecting Pool—including the treatment of paving and its edges, as well as associated furniture such as lights, benches, and trash receptacles"); U.S. Commission of Fine Arts, CFA 18/SEP/08-3 (Sept. 26, 2008), https://www.cfa.gov/records-research/project-search/cfa-18sep08-3 [https://perma.cc/6LNA-AWVE] (criticizing plan for nearby temporary security barriers that would "have a visual impact that detracts from the beauty of the Lincoln

61.     Similarly, Defendants have failed to undertake any of the steps required by the National Environmental Policy Act (NEPA). NEPA requires that an agency consider the effect of its actions on the environment. Unless a categorical exclusion applies, the agency must prepare and publicly release an Environmental Assessment (EA) to determine if there will be significant environmental impacts from the federal action. No categorical exclusion applies to the resurfacing of the Reflecting Pool, and no EA has been prepared. Although Defendants conducted an Environmental Assessment in 2009 prior to rehabilitating the Reflecting Pool, they have failed to do so as part of the current undertaking. This failure to consider the environment comes despite the apparent risk inherent in adding industrial-grade paint to more than 300,000 square feet of the basin surface, touching millions of gallons of water.

**COUNT ONE**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), (D)**
**(Violation of National Historic Preservation Act, Section 106)**

62.     Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs.

---

Memorial and its setting"); U.S. Commission of Fine Arts, CFA 19/MAY/05-1 (May 25, 2005), https://www.cfa.gov/records-research/project-search/cfa-19may05-1     [https://perma.cc/6VGU-DFJR] ("Commission members have recommended that the bollards should be a simple and uncomplicated design that does not complete with the columns of the Memorial; they look forward to reviewing further studies of the material, shape, and color of the bollards"); U.S. Commission of Fine Arts, CFA 20/NOV/03-1 (Dec. 1, 2003), https://www.cfa.gov/records-research/project-search/cfa-20nov03-1 [https://perma.cc/Q2NL-FAZB] (weighing in on paving material for plaza outside Lincoln Memorial); U.S. Commission of Fine Arts, CFA 16/OCT/03-2 (Oct. 24, 2003), https://www.cfa.gov/records-research/project-search/cfa-16oct03-2     [https://perma.cc/FP8S-QFYG] (requesting mockup of lighting scheme for Lincoln Memorial); U.S. Commission of Fine Arts, CFA 20/FEB/03-4 (Mar. 4, 2003), https://www.cfa.gov/records-research/project-search/cfa-20feb03-4 [https://perma.cc/QHY6-YM56] (approving a plaque commemorating Martin Luther King, Jr.'s I Have a Dream speech on the steps of the Lincoln Memorial on the condition that certain changes to letter size and spacing are met).

63.    The Administrative Procedure Act authorizes courts to hold unlawful and set aside agency action found to be "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). It also authorizes courts to compel agency action "unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

64.    The commencement of the Reflecting Pool basin resurfacing on or about mid-April 2026 is final agency action because it represents the consummation of NPS's decision-making process regarding the impact of the resurfacing on the historic character. Legal consequences flow from the commencement of the resurfacing because it is an undertaking within the meaning of the NHPA and because Section 106 of the NHPA requires the agency to follow certain procedures before an undertaking. Defendants' failure to conduct Section 106 review before commencing the Reflecting Pool project is thus subject to judicial review under the APA. 5 U.S.C. § 704.

65.    The Reflecting Pool is part of the National Mall Historic District, listed on the National Register of Historic Places. It is therefore "historic property" within the meaning of 54 U.S.C. § 300308 and 36 C.F.R. § 800.16(*l*).

66.    The Reflecting Pool basin resurfacing is an "undertaking" within the meaning of 54 U.S.C. § 300320 and 36 C.F.R. § 800.16(y): it is a project carried out by or on behalf of Defendants and funded with federal resources, on federal property managed by a federal agency. President Trump expressly stated that the resurfacing was done with "the help of Secretary of the Interior Doug Burgum, and his entire Department." Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 24, 2026, 5:08 PM), https://truthsocial.com/@realDonaldTrump/posts/ 116461727359731405 [https://trumpstruth.org/statuses/38044].

21

67.     The Reflecting Pool basin resurfacing does not qualify for streamlined review under NPS's 2008 PA. *See supra* ¶¶ 29-31. The vivid blue paint is starkly different from both the existing grey, achromatic color and the historic color as evidenced by the 1999 Cultural Landscape Report. *See* CLR at 33. Accordingly, Defendants were required to follow the standard Section 106 review process. And for good reason: This type of massive change to a historic property cries out for public review and input.

68.     Section 106 required Defendants, prior to commencing the resurfacing, to initiate and complete the consultation process prescribed by 36 C.F.R. Part 800. That process required, at minimum: notifying the public and consulting parties, including TCLF; providing plans and documentation about the undertaking to the public and consulting parties; assessing whether the resurfacing would cause adverse effects; affording the public and consulting parties a reasonable opportunity to comment; and, if adverse effects were found, working with consulting parties to resolve them before proceeding. 54 U.S.C. § 306108; 36 C.F.R. §§ 800.2–800.6.

69.     The resurfacing of the Reflecting Pool basin with vivid blue industrial coating constitutes an adverse effect on the National Mall Historic District within the meaning of 36 C.F.R. § 800.5(a)(1). The dark grey, achromatic basin is a character-defining feature of the historic property, as established by the 1999 Cultural Landscape Report. The resurfacing materially alters that character-defining feature, permanently changing the color, material, and reflective quality of the basin in a manner that degrades the historic character and integrity of the pool and the broader landscape.

70.     Defendants commenced the resurfacing without initiating or completing any Section 106 consultation process. The public and consulting parties were not notified. No plans or documentation were disclosed to prospective consulting parties or the public before work

22

began. No assessment of effect was conducted and made available for review. No opportunity for comment was provided. Defendants have not disclosed any Section 106 documentation to date and have not responded to TCLF's affirmative inquiries seeking confirmation that any review occurred.

71.     To the extent Defendants did not conduct a Section 106 review because they determined that the Reflecting Pool basin resurfacing qualified for streamlined review, that determination was arbitrary and capricious or in violation of law, because the current project does not meet the requirements for streamlined review. Accordingly, that determination must be set aside.

72.     Exacerbating the problem, Defendants failed to obtain approval from, or consult with, the U.S. Commission of Fine Arts, which has been involved in the design elements of the Reflecting Pool and surrounding landscape for more than a century.

73.     Defendants' failure to initiate and complete the Section 106 process before commencing the Reflecting Pool basin resurfacing was action taken without observance of procedure required by law, in excess of statutory authority, and not in accordance with the NHPA, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

74.     Plaintiffs have been injured and will continue to be injured by Defendants' violations. TCLF has been deprived of its right to obtain information about the scope and nature of the project and to participate in the deliberative process mandated by Congress as either a consulting party or a member of the public. Had Defendants followed the Section 106 process, TCLF would have been able to submit expert comments on the effects of the resurfacing on the character-defining features of the Reflecting Pool, the Lincoln Memorial Grounds and the National Mall Historic District; and to participate in the deliberative process that Section 106

mandates before the undertaking proceeds. That ongoing deprivation directly impairs TCLF's ability to fulfill the core advocacy and stewardship functions that define its organizational mission. Mr. Birnbaum has suffered and continues to suffer a direct and ongoing aesthetic injury: the resurfacing of the historic grey basin in vivid blue has materially and perceptibly degraded the aesthetic experience of the Reflecting Pool that he has long visited and enjoyed, an injury that will become permanent and irreversible upon completion of the project.

## COUNT TWO
### Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), (D)
### (Violation of National Environmental Policy Act)

75.     Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs.

76.     The Administrative Procedure Act authorizes courts to hold unlawful and set aside agency action found to be "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). It also authorizes courts to compel agency action "unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

77.     The commencement of the Reflecting Pool basin resurfacing is final agency action because it represents the consummation of NPS's decision-making. *See* 5 U.S.C. § 704; 42 U.S.C. § 4336(a)(1).

78.     There is no categorical exclusion that applies to the resurfacing of the Reflecting Pool basin. Moreover, even if the resurfacing fit within a listed categorical exclusion, extraordinary circumstances apply that render the exclusion inapplicable. *See* 43 C.F.R. § 46.215.

24

79.     Defendants were required to issue either an Environmental Impact Statement or Environmental Assessment before undertaking the resurfacing. 42 U.S.C. § 4336(b); 43 C.F.R. § 46.205(c). Defendants failed to do so.

80.     Defendants' failure to complete the process required by NEPA before commencing the Reflecting Pool basin resurfacing led to final agency action taken without observance of procedure required by law, in excess of statutory authority, arbitrary and capricious, and not in accordance with NEPA, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

81.     Plaintiffs have been injured and will continue to be injured by Defendants' violations.

### PRAYER FOR RELIEF

Wherefore, good cause having been shown, Plaintiffs respectfully request that this Court:

a.  Declare that Defendants' commencement and continued execution of the Reflecting Pool basin resurfacing without initiating and completing the Section 106 consultation process required by 54 U.S.C. § 306108 and 36 C.F.R. Part 800 violates the National Historic Preservation Act, the National Environmental Policy Act, and the Administrative Procedure Act;

b.  Set aside any authorization, determination, or agency decision approving or implementing the Reflecting Pool basin resurfacing that was issued without completion of the Section 106 and NEPA process;

c.  Temporarily, preliminarily, and permanently enjoin Defendants from taking any further steps to alter the Reflecting Pool until Defendants have completed a lawful

Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review prescribed by 42 U.S.C. § 4336;

d.  Issue a temporary stay of agency action and such other appropriate relief as necessary, pursuant to 5 U.S.C. § 705; require Defendants to formally initiate the Section 106 and NEPA review process before any further physical alteration of the Reflecting Pool basin proceeds;

e.  Require Defendants to restore the historic elements of the Reflecting Pool;

f.  Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412(b) and other applicable law; and

g.  Grant such other and further relief as this Court deems just and proper.

Dated: May 11, 2026                                      Respectfully submitted,

/s/ Alexander Kristofcak
ALEXANDER KRISTOFCAK*
   (D.D.C. Bar No. NY0717)
JOSEPH MEAD
   (D.C. Bar No. 1740771)
NATHANIEL A.G. ZELINSKY
   (D.C. Bar No. 1724093)
WASHINGTON LITIGATION GROUP
1717 K Street NW, Suite 1120
Washington, DC 20006
Phone (202) 521-8734
Fax (202) 521-8745
akristofcak@washingtonlitigationgroup.org

* *Admitted only in California and New York; practicing under the supervision of D.C. Bar members*

*Attorneys for Plaintiffs*