**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

THE CULTURAL LANDSCAPE FOUNDATION
and CHARLES A. BIRNBAUM,

*Plaintiffs*,

*v.*

U.S. DEPARTMENT OF THE INTERIOR,
DOUG BURGUM, *in his official capacity as
Secretary of Interior*, NATIONAL PARK
SERVICE, and JESSICA BOWRON, *in her
official capacity as Acting Director of the
National Park Service*,

*Defendants*.

No. 26 Civ. 1593

---

**PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND/OR STAY
OF AGENCY ACTION**

Pursuant to 5 U.S.C. § 705, Federal Rule of Civil Procedure 65, and Local Civil Rule 65.1,

Plaintiffs respectfully ask the Court to immediately issue a temporary restraining order, a

preliminary injunction, and/or a stay of agency action. Defendants have undertaken to

fundamentally alter the Lincoln Memorial Reflecting Pool, harming its reflective quality and

replacing the serene, character-defining grey basin with vivid blue paint reminiscent of a

swimming pool. Without immediate judicial intervention, Defendants will deface an iconic

American landmark, in open violation of Congressionally mandated procedures set forth in the

National Historic Preservation Act (NHPA) and the National Environmental Policy Act (NEPA).

Plaintiffs therefore request that the Court: 1) immediately enter a temporary restraining order

directing Defendants to halt painting the Reflecting Pool; 2) shorten the time period in which

Defendants may file a brief in opposition to this motion; and 3) thereafter, enter a preliminary

injunction preventing further alteration to the Reflecting Pool. In the alternative, Plaintiffs ask the

1

Court to issue this relief as a stay of agency action under 5 U.S.C. § 705.

As set forth in greater detail in the accompanying memorandum, Plaintiffs have satisfied all four requirements for emergency injunctive relief. First, both NHPA and NEPA impose specific requirements on agencies to consider the effect of agency action on historic properties and the environment. Yet Defendants have failed to even gesture towards compliance, entirely disregarding their statutory obligations.

Defendants' failure to follow the law before inserting a permanent blemish on the National Mall is causing serious and irreparable harm to the Plaintiffs and the public generally. Plaintiffs The Cultural Landscape Foundation and Charles Birnbaum are recognized experts on historic and cultural landscapes, and routinely participate in mandatory consultations with agencies considering undertaking changes to historic properties. Yet by bypassing the required procedures, Defendants have caused Plaintiffs to lose their statutory participation rights, decimating the quality of Defendants' decisionmaking process. Plaintiff Birnbaum is not only professionally invested, but personally as well, regularly visiting and finding solace in the Reflecting Pool – an experience that will be diminished if the Reflecting Pool is transformed from its historic quality.

The balance of the equities and the public interest overwhelmingly favor immediate injunctive relief. The Reflecting Pool is part of one of the most iconic designed landscapes in the world, and has defined the visual and experiential character of the nation's capital for over a century. It has served as a backdrop to historical events and is visited by millions of visitors each year. Preventing Defendants from fundamentally altering a national treasure without following Congressionally mandated procedures poses minimal harm to the Defendants, but overwhelmingly benefits Plaintiffs and the rest of the public.

Accordingly, and for the reasons set forth more fully in Plaintiffs' Memorandum of Law

and supporting evidence, Plaintiffs respectfully request that the Court issue:

1) Without awaiting response from Defendants, a temporary restraining order immediately halting the resurfacing of the Reflecting Pool basin;

2) An order directing Defendants to file any brief in opposition to this motion on or before Monday, May 18, with oral argument scheduled as expeditiously as possible thereafter; and

3) A preliminary injunction enjoining Defendants from adding paint or resurfacing the Reflecting Pool basin until further order of the Court.

Plaintiffs further request that the Court waive the requirement for Plaintiffs to post bond under Federal Rule of Civil Procedure.

Dated: May 11, 2026

Respectfully submitted,

/s/ Alexander Kristofcak
ALEXANDER KRISTOFCAK*
  (D.D.C. Bar No. NY0717)
JOSEPH MEAD
  (D.D.C. Bar No. 1740771)
NATHANIEL A.G. ZELINSKY
  (D.C. Bar No. 1724093)

WASHINGTON LITIGATION GROUP
1717 K Street NW, Suite 1120
Washington, DC 20006
Phone (202) 521-8734
Fax (202) 521-8745
akristofcak@washingtonlitigationgroup.org

* *Admitted only in California and New York; practicing under the supervision of D.C. Bar members*

*Attorneys for Plaintiffs*

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION et al.,<br><br>     *Plaintiffs*,<br><br> *v.*<br><br>U.S. DEPARTMENT OF THE INTERIOR et al.,<br><br>     *Defendants*. | No. 26 Civ. 1593 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR TEMPORARY RESTRAINING ORDER OR SECTION 705 STAY**
**AND FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

LEGAL AND FACTUAL BACKGROUND ....................................................................... 2

    I. The Reflecting Pool Is a Historic Designed Landscape .................................................. 2

    II. The Basin Resurfacing Project ..................................................................................... 3

    III. Defendants' Failure to Conduct Required Reviews ....................................................... 6

    IV. Plaintiffs' Attempts to Engage Defendants ................................................................. 7

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

    I. PLAINTIFFS HAVE STANDING ................................................................................. 8

        A. TCLF Has Standing ........................................................................................... 8

        B. Mr. Birnbaum Has Standing ............................................................................... 10

    II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............................... 11

        A. Defendants Violated the NHPA ......................................................................... 12

            1. The Reflecting Pool Resurfacing Is an Undertaking Affecting a Historic
               Property ......................................................................................................... 12

            2. Defendants Were Required to Complete the Section 106 Process Before
               Commencing the Resurfacing. ...................................................................... 13

            3. The 2008 Programmatic Agreement Does Not Apply ...................................... 14

        B. Defendants Violated NEPA ................................................................................ 15

    III. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF ........... 17

    IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS PLAINTIFFS
       21

    V. THE COURT SHOULD WAIVE ANY BOND REQUIREMENT BECAUSE
DEFENDANTS FACE NO HARM AND PLAINTIFFS ARE A NONPROFIT AND ITS
PRESIDENT AND CEO PURSUING PUBLIC INTEREST LITIGATION ........................ 23

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................... 12

*Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009) ..... 17, 18

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87 (D.D.C. 2020)... 20

*Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021) .................................................... 8

*Com. of Mass. v. Watt*, 716 F.2d 946 (1st Cir. 1983) ................................................... 19

*Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019) ............. 20

*Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999) ...................................................... 9

*Democracy Project, Inc. v. United States Dep't of Just.*, 498 F. Supp. 3d 132 (D.D.C. 2020) .... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................ 10

*Illinois Com. Comm'n v. I.C.C.*, 848 F.2d 1246 (D.C. Cir. 1988) ......................................... 13, 18

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..................... 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 8

*Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360 (1989) ................................................ 19

*Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*,
  No. 25 Civ. 4316 (RJL), 2026 WL 533420 (D.D.C. Feb. 26, 2026) ......................................... 11

*Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*,
  No. 25 Civ. 4316 (RJL), 2026 WL 877779 (D.D.C. Mar. 31, 2026) ........................................ 17

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................... 8

*PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015) ..................................... 10

*Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989) ............................................ 10

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168 (2025) ...................... 15, 16

*Sierra Club v. Jackson*, 833 F. Supp. 2d 11 (D.D.C. 2012) ........................................... 8

*Sierra Club v. Jewell*, 764 F.3d 1 (D.C. Cir. 2014) ...................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................ 8

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 706(2)(D) ...................................................... 16

National Environmental Policy Act, 42 U.S.C. § 4336(b) ................................................ 16, 20

National Environmental Policy Act, 42 U.S.C. § 4336(b)(1) ............................................ 15

National Environmental Policy Act, 42 U.S.C. § 4336(b)(2) ............................................ 15

National Environmental Policy Act, 42 U.S.C. § 4336e(1) ............................................... 15

National Historic Preservation Act, 54 U.S.C. § 300308 ............................................................ 12

National Historic Preservation Act, 54 U.S.C. § 300320 ............................................................ 12

National Historic Preservation Act, 54 U.S.C. § 306108 ....................................................... 11, 21

Pub. L. No. 108-126, § 202.............................................................................................................. 2

## Regulations

36 C.F.R. § 800.1(a)...................................................................................................................... 14

36 C.F.R. § 800.1(c)...................................................................................................................... 14

36 C.F.R. § 800.2(c)(5) ................................................................................................................... 9

36 C.F.R. § 800.2(d) ....................................................................................................................... 9

36 C.F.R. § 800.2(d)(2)........................................................................................................ 14, 19, 21

36 C.F.R. § 800.3 .......................................................................................................................... 14

36 C.F.R. § 800.4 .......................................................................................................................... 14

36 C.F.R. § 800.5 .......................................................................................................................... 14

36 C.F.R. § 800.5(a)(1) ................................................................................................................. n.6

36 C.F.R. § 800.6 .......................................................................................................................... 14

36 C.F.R. § 800.14(b) ................................................................................................................... 15

36 C.F.R. § 800.16(y) ................................................................................................................... 12

43 C.F.R. § 46.205(c)..................................................................................................................... 16

43 C.F.R. § 46.215(f).................................................................................................................. 15, 16

## Other Authorities

2008 Nationwide Programmatic Agreement (2008 PA)............................................................ 7, 15

National Register of Historic Places (Boundary Increase), Ref. No. 16000805.......................... 12

NPS, Cultural Landscape Report, West Potomac Park, Lincoln Memorial Grounds (Aug. 1999)
    (1999 CLR) ............................................................................... 2, 3, 14, 15, n.1, n.6

NPS, Rehabilitation of the Lincoln Memorial Reflecting Pool and Surrounding Area,
    Environmental Assessment (Dec. 2009) ...................................................... 6, 16, n.4

NPS Planning, Environment and Public Comment (PEPC),
    National Mall and Memorial Parks ...................................................................... 5, 6

**INTRODUCTION**

The Lincoln Memorial Reflecting Pool is among the most iconic designed landscapes in the world. For more than a century, its grey, achromatic basin has served as the silent mirror of the nation's capital—capturing the Lincoln Memorial, the Washington Monument, and the open sky in a seamless, luminous plane. That reflective quality was not accidental. It was the product of a specific, documented design choice when the pool was built over a century ago: the dark, colorless surface of the basin causes it to recede, producing the "illusion of greater depth and a more profound reflection." Modern landscape architects agree with this design choice: dark, achromatic surfaces are ideal for reflecting pools in civic spaces due to their highly reflective and natural look.

But President Trump did not like it. At his behest, in approximately mid-April 2026, Defendants commenced a project to paint this cherished civic space with a vivid blue coating. In doing so, they flagrantly ignored the law. The National Historic Preservation Act (NHPA) requires federal agencies to consult with the public, experts, and interested organizations before making changes to historic properties. The National Environmental Policy Act (NEPA) requires agencies to assess the environmental consequences of their actions. Defendants did neither—they simply began painting.

Every day the project continues, the grey, achromatic character of the basin is further degraded. If work is not halted immediately, the project will be complete in a matter of weeks, and one of the great designed landscapes of the world will be fundamentally altered, before the public can provide any input. Defendants are defacing our nation's civic center with zero consideration of historic preservation or environmental impact in clear violation of Congressional mandates. The Court should issue a temporary restraining order immediately halting further resurfacing of the Reflecting Pool basin and set the matter for hearing on a preliminary injunction as soon as possible.

**LEGAL AND FACTUAL BACKGROUND**

**I.      The Reflecting Pool Is a Historic Designed Landscape**

The Lincoln Memorial Reflecting Pool has defined the visual and experiential character of the National Mall since its completion in 1924. Designed as the central element of the McMillan Commission's plan for the monumental core of the capital, the Reflecting Pool stretches approximately 2,000 feet from the Lincoln Memorial to the World War II Memorial and Rainbow Pool, with a width of approximately 160 feet. Congress has recognized the "great cross-axis of the Mall"—the axis from the United States Capitol to the Lincoln Memorial, anchored by the Reflecting Pool—as "a substantially completed work of civic art" whose integrity "should be preserved." Pub. L. No. 108-126, § 202.

The Reflecting Pool and its surrounding landscape are listed on the National Register of Historic Places as components of the National Mall Historic District. The pool has served as the backdrop to some of the most consequential moments in American civic history, including the 1963 March on Washington at which the Reverend Dr. Martin Luther King Jr. delivered his "I Have a Dream" speech. Millions of people visit the Reflecting Pool and the surrounding area every year, including Plaintiff Charles Birnbaum who visits about once a month and it is his go-to place for walking, reflecting, and taking respite. *See* Birnbaum Decl. ¶ 24.

The visual and aesthetic character of the Reflecting Pool derives principally from its function as a mirror. As the National Park Service (NPS)'s own 1999 Cultural Landscape Report documents, the pool's waterproofing base—consisting of an asphalt-coated membrane, slate, and concrete tile—was specifically developed through a process of trial and error for its dark coloration: "the dark color of the tile created the illusion of greater depth and a more profound

2

reflection."[1] The grey, achromatic basin is not a utilitarian background element. It is a character-defining feature of the Reflecting Pool, and has served that function since the Pool was built more than a century ago. *See* Birnbaum Decl. ¶ 25.

This is not mere happenstance. James Garland—a licensed architect with forty years of experience designing and restoring significant public water features, including projects on and adjacent to the National Mall—explains that dark, colorless basin surfaces are the established professional standard for reflecting pools precisely because they maximize reflectivity. *See* Declaration of James Garland ("Garland Decl.") ¶¶ 6–8. When a pool basin is dark, light passing through the water column is absorbed, making the basin effectively invisible to the viewer and leaving only the reflected image of the sky and surrounding landscape. *Id.* ¶ 6. The grey, achromatic finish of the Reflecting Pool achieves this effect with particular success—it recedes from perception, producing the authentic, serene reflective quality appropriate to a civic memorial landscape. *Id.* ¶ 7.

## II.     The Basin Resurfacing Project

Beginning in approximately mid-April 2026, Defendants abruptly commenced a project to resurface the basin with a vivid blue coating. The goal, in President Trump's words, was not restoration but transformation: to make it look, to his eye, "better than it did in 1922 when it was built." Diario AS, *Trump Full Visit To Reflecting Pool Works In Lincoln's Memorial Leaves Explosive Remarks*, YouTube (May 8, 2026), https://www.youtube.com/watch?v=4c40jxv6yb4.

---

[1] U.S. Department of the Interior, *Cultural Landscape Report, West Potomac Park, Lincoln Memorial Groups* at 33 (Aug. 1999), https://npshistory.com/publications/linc/clr-lincoln-memorial-grounds.pdf ("1999 CLR").



Rachel Treisman, *Trump's 'American Flag Blue' Reflecting Pool Project Gets a Mixed Reaction in D.C.*, NPR (Apr. 28, 2026), https://www.npr.org/2026/04/28/nx-s1-5802343/reflecting-pool-resurfacing-blue-trump.

President Trump announced the project at an April 23, 2026, Oval Office event, stating he had been working on it with Secretary Burgum and that the resurfacing contractor was, in his description, "unbelievable at doing swimming pools." Forbes Breaking News, *Trump Goes On Ten-Minute Rant About Plan For Lincoln Memorial Reflecting Pool 'Beautification',* YouTube (Apr. 23, 2026), https://www.youtube.com/watch?v=D_Fn5fxW55s. The contractor was given a no-bid contract for $6.9 million to complete the project. David A. Farenthold & Luke Broadwater, *The No-Bid Contract That Is Turning Washington's Reflecting Pool Blue*, NY Times (May 8, 2026), https://www.nytimes.com/2026/05/08/us/politics/reflecting-pool-trump-contract.html?unlocked_article_code=1.hVA.dnZ2.sbncrTFWnY-Y&smid=url-share.  President

4

Trump stated his goal was to make the Reflecting Pool look "much better than it ever was." *Id.* He stated his original preference had been turquoise "like in the Bahamas" but that he was persuaded to choose "American flag blue." Forbes Breaking News, *supra* A spokesperson for the Department of the Interior has confirmed the project is ongoing and that the agency expects completion by the end of May 2026. *See* Treisman, *supra*, at 4. As of the filing of this action, more blue paint is being applied to the Reflecting Pool basin daily.

The consequences of the repainting for the character of the Reflecting Pool are severe. As Mr. Garland explains, painting the basin blue is "fundamentally inconsistent with the pool's design purpose and its character as a civic reflecting landscape." Garland Decl. ¶ 10. Blue is not a neutral color; it is perceived by the eye as artificial. *Id.* ¶ 8. When a viewer looks at a blue-bottomed pool, the eye perceives the color of the basin through the water column, competing with and overriding the reflective surface image. *Id.* The result is not a mirror but "a 'prettified' blue pool—something false and artificial, more evocative of a resort or a swimming facility, not a virtuous civic landscape" *Id.*[2] "The artificiality is inescapable and irreconcilable with the authentic, natural reflective character the pool was designed to produce." *Id.* The blue paint, in Mr. Garland's professional judgment, "will undermine the pool's aura of seriousness, its aesthetic honesty, its reflective purity, and its tenor of quality and replace its authentic, natural, noble character with a superficial, resort-like aesthetic completely inappropriate to its setting and its function as a serious and treasured national memorial landscape, centerpiece to our nation's capital." *Id.* ¶ 10; *see also* Birnbaum Decl. ¶ 25 (explaining that the repainting "would thus transform one of the most

---

[2] Indeed, making the Reflecting Pool look like a swimming pool appears to be the point: President Trump posted an AI-generated image of himself and other lounging in the Reflecting Pool as one might do in a resort. *See* Donald J. Trump (@realDonaldTrump), Truth Social (May 1, 2026, 11:03 PM), https://truthsocial.com/@realDonaldTrump/posts/116502756484361615 [https://trumpstruth.org/statuses/38131].

powerful landscape experiences in America into something that more closely resembles a commercial swimming pool or a theme park").

### III.    Defendants' Failure to Conduct Required Reviews

Defendants commenced the resurfacing without initiating any of the legally required review processes.

*No Section 106 consultation.* No Section 106 process has been publicly initiated. *See* Birnbaum Decl. ¶¶ 14-15, Ex. A (email inquiries about Section 106 from TCLF to NPS, to which NPS has not responded). No determination of effect has been made public. No consulting parties— including Plaintiff TCLF, which has been participating as a consulting party in Section 106 proceedings concerning the White House Visitor Center and Lafayette Park, Birnbaum Decl. ¶¶ 8-9—have been notified, engaged, or given an opportunity to participate. No meaningful public information about the undertaking and its effects on the historic property has been provided, and no opportunity for public comment has been offered before work began or since. As of this filing, NPS has posted no planning documents related to the resurfacing on its publicly accessible Planning, Environment & Public Comment (PEPC) website, despite posting approximately twenty documents in connection with the prior 2010 rehabilitation of the Reflecting Pool. *See* NPS Planning, Environment and Public Comment (PEPC), National Mall and Memorial Parks – All Documents and Projects, https://parkplanning.nps.gov/parkHome.cfm?parkID=427 (last visited May 9, 2026).

*No CFA review.* The U.S. Commission of Fine Arts has exercised oversight over design elements of the Reflecting Pool and its surroundings for over a century, reviewing proposed changes to this landscape. Defendants sought and obtained CFA review in connection with the 2010 rehabilitation of the Reflecting Pool, as well as for bollards, lighting, paving, plaques, and

other features in the Lincoln Memorial area. *See* Compl. ¶ 60 nn. 5-6. They did not submit the current resurfacing project to the CFA.

*No NEPA review.* Defendants have not prepared an Environmental Assessment or Environmental Impact Statement for the resurfacing. *See* NPS Planning, Environment and Public Comment (PEPC), National Mall and Memorial Parks – All Documents and Projects, https://parkplanning.nps.gov/parkHome.cfm?parkID=427 (last visited May 9, 2026). In contrast, prior to the 2010 rehabilitation of the Reflecting Pool, Defendants conducted and publicly released an Environmental Assessment.[3] No such review was conducted here.

## IV.    Plaintiffs' Attempts to Engage Defendants

On April 27, 2026, Plaintiff TCLF contacted National Park Service's Associate Regional Director for Lands and Planning to inquire whether a Section 106 review had been initiated and to note that, as a component of a listed historic district, the pool's character-defining features should not be altered without required consultation. Birnbaum Decl. ¶ 16. Defendants did not respond. *Id.* On May 5, 2026, TCLF affirmatively requested consulting party status in any Section 106 proceeding relating to the project. *Id.* ¶ 17. Again, Defendants did not respond. *Id.*

On May 7, 2026, TCLF contacted the Advisory Council on Historic Preservation (ACHP) to ask whether a Section 106 review had been initiated. *Id.* ¶ 18. On May 8, 2026, ACHP's Director of the Office of Federal Agency Programs responded that "[a]s we understand, the NPS reviewed this under the terms of its 2008 Nationwide PA"—referring to the Programmatic Agreement between NPS, ACHP, and other consulting parties[4]—and directed TCLF to try reaching out to

---

[3] *See* U.S. Department of the Interior & National Park Service, Rehabilitation of the Lincoln Memorial Reflecting Pool and surrounding area, Environmental Assessment (Dec. 2009), https://npshistory.com/publications/linc/reflecting-pool-rehab-ea-2009.pdf.

[4]    2008    Nationwide    Programmatic    Agreement    ("2008    PA"),

7

NPS again. *Id.* ¶ 19.

## LEGAL STANDARD

A plaintiff seeking a temporary restraining order or a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief." *Church v. Biden*, 573 F. Supp. 3d 118, 132 (D.D.C. 2021). When the government is the defendant, the third and fourth factors—balance of equities and public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The same standard governs a stay pursuant to APA's Section 705. *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012).

## ARGUMENT

## I.     PLAINTIFFS HAVE STANDING

To establish Article III standing, a plaintiff must demonstrate an injury in fact, a causal connection between the injury and the challenged conduct, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Although only one plaintiff needs to have standing, *e.g., Bost v. Illinois State Bd. of Elections*, 146 S. Ct. 513, 519 n.3 (2026), both TCLF and Mr. Birnbaum have standing under longstanding precedent.

### A.     TCLF Has Standing

TCLF has standing based on injuries it has suffered as a result of Defendants' failure to initiate Section 106 review both as a potential participant in the Section 106 review—whether as a consulting party or a member of the public—and as a beneficiary of the information generated

---

https://parkplanning.nps.gov/document.cfm?documentID=66116.

through the review and on which is routinely relies in its programming.

Section 106 of the NHPA confers concrete participation rights on consulting parties—"organizations with a demonstrated interest in the undertaking . . . due to . . . their concern with the undertaking's effects on historic properties," 36 C.F.R. § 800.2(c)(5)—as well as the broader public, *id.* § 800.2(d) (explaining that the "view of the public are essential . . . in the section 106 process" and that the agency official must "provide the public with information about an undertaking"). Consulting parties and the public are entitled to receive information about the undertaking, provide comments, and participate in the deliberative process designed to resolve adverse effects before an undertaking proceeds. *Id.* §§ 800.2–800.6. Defendants' failure to initiate any Section 106 process has denied TCLF each of these rights in their entirety whether as a consulting party or a member of the public. *See Cummock v. Gore*, 180 F.3d 282, 290 (D.C. Cir. 1999) (holding that plaintiff suffered an injury where government "denied her requests for information that it was required to produce").

TCLF's concrete interest in this undertaking is well established. TCLF's mission includes "protection of cultural landscapes, including by . . . advancing the professional standards and public understanding of cultural landscape management; and advocating for managing change of nationally significant sites and landscapes, including through participation in federal review processes." Birnbaum Decl. ¶ 4. TCLF has previously obtained consulting party status in Section 106 proceedings concerning nearby historic properties in the National Mall area, including the White House Visitor Center and Lafayette Park, *id.* ¶ 9, and requested consulting party status in any Section 106 review with respect to this project, *id.* ¶ 15. Furthermore, TCLF has a wealth of directly applicable expertise relevant to this undertaking, both due to its longstanding institutional connection to the Lincoln Memorial Grounds, *id.* ¶¶ 12–13, and its CEO authoring the governing

9

federal framework, *id.* ¶ 1, 19. Had Defendants initiated Section 106 review, TCLF would have sought consulting party status, obtained information about the project, submitted expert comments on the effects of the resurfacing, and engaged in the deliberative process. *Id.* ¶ 19; *see also infra*, Note 6 (explaining that Plaintiffs could have attempted to show that the resurfacing of the Reflecting Pool's basin with a vivid blue color constitutes an "adverse effect"). The absence of a Section 106 review thus deprived TCLF of an opportunity to obtain information, participate in public deliberations, and protect the Reflecting Pool. *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093-95 (D.C. Cir. 2015) (organizational injured, for standing purposes, because it was "precluded" from pursuing its mission through "normal process" ordinarily provided by agency).

Besides the impact on TCLF as a potential participant in the Section 106 process, Defendants' failure to initiate Section 106 review has also deprived TCLF of valuable information—determinations of effect, memoranda of agreement—that the Section 106 process mandates and makes publicly available, and which TCLF uses in its educational guides, *What's Out There* database entries, and advocacy programs. Birnbaum Decl. ¶¶ 11, 20. This informational injury is concrete and directly linked to Defendants' statutory violations. *See Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989) (holding that defendants' refusal to provide information guaranteed under a statute constitutes a sufficiently distinct injury to provide standing to sue); *see also PETA*, 797 F.3d at 1095 (holding that "denial of access to . . . information" which impaired plaintiff's ability to "continue to educate the public" was an Article III injury).

### B.    Mr. Birnbaum Has Standing

A plaintiff like Mr. Birnbaum who regularly uses and enjoys a particular natural or designed environment has standing to challenge governmental action that lessens their enjoyment. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000). Mr.

Birnbaum's aesthetic injury is concrete, personal, and ongoing. He visits the Lincoln Memorial and the Reflecting Pool approximately once a month, walking around the pool and finding personal solace in its grey, reflective expanse. Birnbaum Decl. ¶ 24. His connection to the pool is not purely recreational—it is deeply informed by his professional training as a landscape architect and his decades of work documenting and stewarding the Lincoln Memorial Grounds. *Id.* ¶ 25. The ongoing resurfacing has materially and perceptibly degraded the aesthetic experience he has long valued: the vivid blue coating has already begun replacing the profound, mirror-like grey of the historic basin with the artificial, resort-like character of a swimming pool. *Id.* ¶ 26. He plans to continue visiting the pool and will continue to suffer this injury unless the resurfacing is halted and the historic character of the pool is restored. *Id.* Accordingly, he has standing to bring suit to protect the Reflecting Pool. *See Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, No. 25 Civ. 4316 (RJL), 2026 WL 533420, at *4 (D.D.C. Feb. 26, 2026) (finding that plaintiff who uses an affected area had aesthetic standing to challenge defendants' damaging her "aesthetic, cultural, and historical interest" in a property); *Sierra Club v. Jewell*, 764 F.3d 1, 6 (D.C. Cir. 2014) (holding that plaintiffs had standing due to "concrete interests in appreciating and studying the aesthetic features and historical significance" of a property).

## II.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs are likely to succeed on the merits because Defendants were required to, and have not, followed the procedural requirements of the NHPA and NEPA.  It bears emphasis: Defendants willfully refused to engage in standard processes—required by law—simply, it appears, because they did not want to.  This is egregious and it cries out for the Court's intervention.

**A.      Defendants Violated the NHPA**

### 1.      *The Reflecting Pool Resurfacing Is an Undertaking Affecting a Historic Property*

Section 106 of the NHPA requires the head of any federal agency with jurisdiction over a proposed undertaking to "take into account the effect of the undertaking on any historic property" prior to proceeding. 54 U.S.C. § 306108. NHPA's requirements plainly apply here.

*Historic property.* A "historic property" is any property "included in, or eligible for inclusion in, the National Register of Historic Places." 54 U.S.C. § 300308. This prerequisite is indisputably satisfied. The National Mall Historic District, which encompasses the Reflecting Pool and the Lincoln Memorial Grounds, is listed on the National Register. *See* National Register of Historic Places (Boundary Increase), Ref. No. 16000805, https://www.nps.gov/subjects/nationalregister/database-research.htm (stating that the "Listed Date" was November 28, 2016).

*Undertaking.* An "undertaking" includes any "project, activity, or program" "carried out by or on behalf of a federal agency," including those "carried out with Federal financial assistance." 54 U.S.C. § 300320; 36 C.F.R. § 800.16(y). The Reflecting Pool resurfacing is a project on NPS-managed federal property, funded with over $1 million in taxpayer funds, and carried out under the direction of the Secretary of the Interior. President Trump has expressly acknowledged that he undertook the project with "the help of Secretary of the Interior Doug Burgum, and his entire Department." Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 24, 2026, 5:08 PM), https://truthsocial.com/@realDonaldTrump/posts/ 116461727359731405 [https://trumpstruth.org/statuses/38044]. There is no question that this is an undertaking within the meaning of the NHPA.

*Commencement constitutes final agency action.* Defendants' decision to commence the

12

resurfacing without conducting Section 106 review is final agency action subject to review under the APA. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (final agency action marks the consummation of the decision-making process and is one from which legal consequences flow). The commencement of physical work on a historic property represents the culmination of NPS's decision-making about the undertaking and directly triggers the legal consequences that Section 106 was designed to prevent.

### 2. Defendants Were Required to Complete the Section 106 Process Before Commencing the Resurfacing.

The Section 106 obligation is emphatic and unconditional. The process is not a formality that an agency may conduct in parallel with or after an undertaking; it must occur *before* physical work proceeds. The agency official "must complete the section 106 process 'prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license.'" 36 C.F.R. § 800.1(c) (quoting 54 U.S.C. § 306108). That mandatory sequence exists by design. "The goal of consultation is to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties." *Id.* § 800.1(a). Without consultation, the agency may not appreciate the full effects of its work on historic property, and may do unnecessary harm to historic properties. *See Illinois Com. Comm'n v. I.C.C.*, 848 F.2d 1246, 1261 (D.C. Cir. 1988) (characterizing Section 106 as a "'stop, look, and listen' provision"). "The agency official shall ensure that the section 106 process is initiated early in the undertaking's planning, so that a broad range of alternatives may be considered during the planning process for the undertaking." *Id.* § 800.1(c).[5]

---

[5] As an illustration, with respect to this project, Plaintiffs could have sought to show that the resurfacing constitutes an "adverse effect" because the grey color of the basin is a defining historic feature. 1999 CLR at 33; Garland Decl. ¶¶ 8–12; *see also* 36 C.F.R. § 800.5(a)(1) ("An adverse effect is found when an undertaking may alter, directly or indirectly, any of the characteristics of

13

The Section 106 process that Defendants were required—and failed—to follow encompasses multiple mandatory steps. *See* 36 C.F.R. §§ 800.3–800.6. First, the agency official must initiate the process by identifying consulting parties, including the State Historic Preservation Officer, and any organizations with a demonstrated interest in the effects of the undertaking. *Id.* § 800.3. Second, the agency must identify historic properties within the area of potential effects. *Id.* § 800.4. Third, the agency must assess adverse effects, making the assessment available to consulting parties and the public for review and comment. *Id.* § 800.5. Fourth, if adverse effects are found, the agency must consult with interested parties to develop measures to avoid, minimize, or mitigate those effects. *Id.* § 800.6. Finally, because "[t]he views of the public are essential to informed Federal decisionmaking in the section 106 process," the agency must "provide the public with information about an undertaking and its effects on historic properties and seek public comment and input." *Id.* § 800.2(d)(2). Defendants took none of these steps. Failure to follow the required procedures of Section 106 alone is fatal to Defendants' actions.

### 3.    *The 2008 Programmatic Agreement Does Not Apply*

According to the ACHP, NPS has reviewed the resurfacing under the 2008 Nationwide Programmatic Agreement. *See* Birnbaum Decl. ¶ 17. Pursuant to 36 C.F.R. § 800.14(b), an agency may establish a "programmatic agreement" to govern certain repetitive activities, such as "routine management activities." The 2008 PA established a streamlined review process for certain undertakings that do not require further consultations. *See* 2008 PA at 9. However, the 2008 PA

---

a historic property that qualify the property for inclusion in the National Register in a manner that would diminish the integrity of the property's location, design, setting, materials, workmanship, feeling, or association."). The agency would then have to "develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects." To be clear, the Court does not need to find that the resurfacing constitutes an "adverse effect" to find that Defendants violated the NHPA. For that, the failure to initiate the process is sufficient.

14

specifically identifies, as an illustrative example of a qualifying streamlined-review action, "[r]epainting *in the same color as existing, or in similar colors or historic colors* based upon an approved historic structure report, cultural landscape report, or a historic paint color analysis." 2008 PA at 12 (emphasis added). Vivid blue is not the same as or similar to the existing grey, achromatic color. And it is not the historic color of the Reflecting Pool's basin, as the 1999 Cultural Landscape Report expressly documents. *See* 1999 CLR at 33. The current resurfacing is the opposite of what the streamline review process envisions: a dramatic departure from the existing and historic character of the basin. While the 2008 PA is designed to permit routine, like-for-like repainting without full consultation, it was certainly not designed to permit the complete aesthetic transformation.

Accordingly, to the extent NPS determined that the resurfacing qualified for the "streamlined" review process established in the 2008 PA, that determination was arbitrary and capricious and should be set aside.

## B.    Defendants Violated NEPA

NEPA provides an independent basis for setting aside Defendants' action. NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") for any major federal action that "has a reasonably foreseeable significant effect on the quality of the human environment." 42 U.S.C. § 4336(b)(1). If significant effects are unknown or unlikely, the agency must prepare an Environmental Assessment ("EA"). *Id.* § 4336(b)(2). NEPA serves the same basic pre-decisional function with respect to environmental impacts as NHPA does with respect to historical preservation: it "ensures that the agency and the public are aware of the environmental consequences of proposed projects" and "helps agencies to make better decisions and to ensure good project management." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168,

15

177 (2025). Defendants failed to prepare either type of report.

A categorical exclusion may excuse the requirement to prepare an EA or EIS only where the agency has determined that a category of actions "normally does not significantly affect the quality of the human environment." 42 U.S.C. § 4336e(1). But even a generally applicable categorical exclusion may not be invoked by Defendants where "extraordinary circumstances" apply such as "significant impact on properties listed, or eligible for listing, on the National Register of Historic Places." 43 C.F.R. § 46.215(f).

No categorical exclusion fits the current resurfacing. The project involves application of paint to more than 300,000 square feet of basin surface containing millions of gallons of water, fundamentally altering the visual character of a listed historic property. And even if a CE might otherwise be applicable in the abstract, the extraordinary circumstances regulations preclude invocation here because the Reflecting Pool is listed on the National Register of Historic Places. 43 C.F.R. § 46.215(f). Defendants' own prior conduct confirms that no categorical exclusion applies. Before the 2010 rehabilitation of the Reflecting Pool, Defendants prepared and publicly released a comprehensive EA. *See supra*, Note 3. The current resurfacing involves the same resource, and the same process should be followed.

Because no categorical exclusion applies, Defendants were required to prepare either an EA or an EIS before commencing the resurfacing. 42 U.S.C. § 4336(b); 43 C.F.R. § 46.205(c). They did neither. This failure is unlawful under the APA as agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

The environmental concerns here are not trivial. The resurfacing involves applying paint to an enormous water feature in the heart of the nation's most significant park system, with potential consequences for water quality, the ecology of the National Mall, and the experience of

16

the millions of visitors who come to this site each year. NEPA required Defendants to understand the environmental costs of its project before proceeding, which Defendants failed to do. *See Seven Cnty.*, 605 U.S. at 177.

### III.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF

The Court should immediately halt Defendants' blatantly unlawful actions.  Pressing pause on this hasty project to repaint a treasured national memorial will preserve the status quo, prevent irreparable and ongoing harm, and stop Defendants from precluding judicial review by making their actions a *fait accompli*.

There is need for immediate judicial intervention. Every day, the Reflecting Pool is further marred with more blue paint. The Department of the Interior has publicly confirmed that it expects the resurfacing project to be completed by the end of May 2026—approximately three weeks from the date of this filing. Without immediate relief, the government will present the Court with a *fait accompli*: a completed defacing of one of the nation's most significant civic treasures and a permanent stain on the surrounding landscape.  Indeed, that is likely Defendants' strategy: Move quickly and hope no one can stop them, without regard for the law.

That ongoing operation is causing serious and irremediable harm to Plaintiffs. Plaintiff Birnbaum will suffer irreparable harm because he will be deprived immediately and indefinitely of his ability to enjoy the reflecting pool in its historic glory.  "Aesthetic and environmental injuries are typically 'irreparable' because they are 'seldom ... adequately remedied by money damages' and are 'often permanent or at least of long duration.'" *Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, No. 25 Civ. 4316 (RJL), 2026 WL 877779, at *14 (D.D.C. Mar. 31, 2026) (quoting *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 25 (D.D.C. 2009)); *accord, e.g., Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (noting that environmental injuries

17

are often irreparable); *San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.,* 657 F. Supp. 2d 1233, 1241 (D. Colo. 2009) (finding that even temporary harm to the plaintiffs' aesthetics interests were irreparable).

This is plainly the case here. "Every day that the resurfacing proceeds, the historic character of the Reflecting Pool is further and more irreversibly degraded." Birnbaum Decl. ¶ 26. Defendants' actions are "permanently and materially altering" the character of an iconic structure that occupies a "cherished part of [Mr. Birnbaum's] personal life in Washington, D.C." *Id.* ¶ 21, 24. For years, he has found solace in walking around the Lincoln Memorial and the Reflecting Pool, which he considers his "go-to place for walking, reflecting, and taking respite from the demands of my work." *Id.* at ¶ 24. Many other Americans feel a similarly deep connection to the iconic structure, and thousands experience its splendor every day. But, if not stopped, Defendants' actions will destroy the "harmony, solemnity, and dignity of the current memorial landscape," decimating its power and reducing it to the look of a swimming pool. *See id.* at ¶ 24; see also Garland Decl. ¶ 10 ("The change from a dark gray basin to a vivid blue one will undermine the pool's aura of seriousness, its aesthetic honesty, its reflective purity, and its tenor of quality, and replaces its authentic, natural, noble character with a superficial, resort-like aesthetic completely inappropriate to its setting and its function as a serious and treasured national memorial landscape, centerpiece to our nation's capital."). Mr. Birnbaum and countless others will be denied the chance to experience the Reflecting Pool and its surroundings as it has persisted for more than a century, and Mr. Birnbaum's "go-to place" will be fundamentally lost. *See id.* at ¶ 26. That harm is serious, irreparable, and happening today. *See Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 24 (D.D.C. 2009) ("When a procedural violation of NEPA is combined with a showing of environmental or aesthetic injury, courts have not hesitated to find a likelihood of

irreparable injury.").

Second, without immediate relief, Plaintiffs will be irrevocably deprived of their ability to participate in the NHPA and NEPA processes as Congress intended. By design, Section 106 and NEPA reviews must be completed *before* an undertaking proceeds. *See Illinois Com. Comm'n v. I.C.C.*, 848 F.2d 1246, 1261 (D.C. Cir. 1988) (characterizing NEPA and Section 106 as a "'stop, look, and listen' provision[s]"). The whole point is that interested parties and the public can provide input to influence the government's decision-making process. *See* 36 C.F.R. § 800.2(d)(2) (noting that "[t]he views of the public are essential to informed Federal decisionmaking in the section 106 process"). Indeed, these processes fulfill critical democratic values because they ensure public input and accountability *before* the government takes action.[6]

But once the Reflecting Pool is fully resurfaced, Plaintiffs will irrevocably lose their right to participate in deliberations. Indeed, there will be *nothing* for a Section 106 consultations to deliberate about: The alteration will be complete. The consulting parties and the public will have been permanently excluded from the moment when their participation could have made a difference. And the public will have been permanently deprived of the comment opportunity that Congress mandated. This is not a harm that can be remedied by requiring belated consultation after the fact—the statute requires prospective review, and the entire purpose of that review is to shape the agency's decision before physical change occurs.

Similarly, once the resurfacing is completed, there is no role for NEPA review to play. As

---

[6] Denying Plaintiffs their right to participate in the decision-making process is particularly harmful because it denies the agency the benefit of the unique expertise that Mr. Birnbaum and TCLF have to offer. Indeed, Mr. Birnbaum is the author of The Secretary of the Interior's Standard for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes, which is still in effect. Birnbaum Decl. ¶ 19. By failing to provide the required avenue for receiving Plaintiffs' input, the agency deprived itself and the public of vital insight into the character-defining features of the Reflecting Pool, and its decisionmaking suffered as a result.

19

then-Judge Breyer explained, "NEPA is designed to influence the decisionmaking process; its aim is to make government officials notice environmental considerations and take them into account. Thus, when a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered." *Com. of Mass. v. Watt*, 716 F.2d 946, 952 (1st Cir. 1983) (Breyer, J.), *abrogated on other grounds*, *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360 (1989).

Third, the informational harm is likewise irreparable. Through NHPA and NEPA, Congress created mandatory disclosure obligations in connection with public projects. *See* 36 C.F.R. § 800.2(d)(2) ("The agency official must . . . provide the public with information about an undertaking and its effects on historic properties and seek public comment and input."); 42 U.S.C. § 4336(b) (mandating the agency to "issue an environmental impact statement" or "to prepare an environmental assessment" with respect to a proposed agency action). Plaintiffs rely on this information to inform and support their educational and documentary programs on historic landscapes. Birnbaum Decl. ¶ 20. Few historic properties are as well-known in the United States as those on the National Mall, and the public has an overriding interest in learning about their preservation—or their decimation. By skipping the required process, Defendants have denied Plaintiffs information to which they are entitled and that they would have used to educate and advocate for the American public.

Courts have recognized that "where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate." *Democracy Project, Inc. v. United States Dep't of Just.*, 498 F. Supp. 3d 132, 141 (D.D.C. 2020). This is particularly true where the information becomes "stale" as time passes. *See Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020). And

20

insofar as this information is intended to affect decision-making about the Reflecting Pool project, and to influence the public debate more broadly, "the value of the information would be lessened or lost" once the project is completed. *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019). For TCLF, the lack of access to information—particularly when coupled with the harm to its right to participate in the Section 106 process—harms the organization's ability to carry out its mission and advocate for the protection of a sacred cultural landscape. See, e.g., *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding irreparable harm when "new obstacles unquestionably make it more difficult for the [nonprofit plaintiffs] to accomplish their primary mission"); *Open Communities All. v. Carson*, 286 F. Supp. 3d 148, 177 (D.D.C. 2017) ("An organization, to show irreparable harm, must show first that 'the actions taken by the defendant have perceptibly impaired the organization's programs.'").

Accordingly, Plaintiffs will suffer irreparable harm without emergency relief.

## IV.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS PLAINTIFFS

The balance of equities tilts decisively in Plaintiffs' favor.

On one side: if an injunction does not issue, the historic character of a nationally significant landmark will be drastically altered, the participation rights Congress created to protect that resource will be permanently extinguished, Plaintiffs will suffer irreversible harms to their missions and personal enjoyment, and the public will be permanently deprived of its opportunity to participate in the required deliberative process. Meanwhile, Defendants will be rewarded for patently unlawful conduct—violating the law simply because they do not feel like complying with it.  Indeed, nothing could be more unequitable than permitting Defendants to prevail with this kind of outrageous strategy.

21

On the other side: Defendants simply face a delay in the completion of the resurfacing project. Defendants have no legal interest in proceeding with an illegal undertaking. Meanwhile, the project's target completion date of July 4 is not a legal deadline—it is an entirely arbitrary deadline selected by President Trump. A TRO, in particular, will simply press pause and preserve the status quo until this Court has time to consider the case further. These harms are not commensurate.

The public interest also strongly supports relief. First, the public has a direct and profound interest in the preservation of the Lincoln Memorial Reflecting Pool as a historic designed landscape. The pool is one of the most visited sites in the United States, attracting millions of visitors each year. It has been the setting of some of the most consequential moments in American civic history. Congress has declared the cross-axis of the Mall—anchored by the Reflecting Pool—a substantially completed work of civic art whose integrity should be preserved. That public interest does not belong to Plaintiffs (or Defendants) alone; it belongs to every American who visits or will visit the pool.

Second, the public has a direct interest in agencies following the procedural requirements that Congress enacted. The NHPA and NEPA were designed to ensure that federal agencies engage in informed decision-making, consider the views of interested parties, and protect historic and environmental resources before taking irreversible actions. When an agency bypasses those processes, it harms not only the particular parties who had procedural rights in the specific proceeding, but the broader public that Congress intended to protect. The public interest lies in requiring the government to follow the law, not in allowing it to proceed without doing so.

Finally, requiring Defendants to pause the project while conducting the legally required review serves the public interest in accurate and complete decision-making. The Section 106 and

22

NEPA processes exist precisely because Congress recognized that agencies may not, on their own, fully account for the effects of their undertakings on historic and environmental resources. The public's voice—and the expert views of organizations like TCLF—are integral to that process. They should be heard before, not after, the Reflecting Pool is transformed.

## V.    THE COURT SHOULD WAIVE ANY BOND REQUIREMENT

Plaintiffs respectfully request the Court to waive any requirement that Plaintiffs post a bond, or, in the alternative, require only a nominal bond. Rule 65(c) gives the Court "broad discretion to determine the appropriate amount of an injunction bond," including the "discretion to require no bond at all." *N. Am. Building Trades Unions v. Dep't of Def.,* 783 F. Supp. 3d 290, 315 (D.D.C. 2025) (quoting *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020)). "Requiring security in this case would serve no meaningful purpose." *See N. Am. Building Trades Unions*, 783 F. Supp. 3d at 315. Defendants cannot show "any tangible financial harm—let alone quantifiable costs—they would incur as a result of being temporarily restrained" from effecting further change to the Reflecting Pool without first complying with applicable legal requirements. *Id.*; *Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 130 (D.D.C. 2025). Imposing a bond would also "unduly burden Plaintiffs and potentially impair their ability to seek judicial relief, a concern that courts have repeatedly recognized in declining to require bonds in public interest litigation." *N.A. Building Trades Unions*, 783 F. Supp. 3d at 315; *P.J.E.S.*, 502 F. Supp. 3d at 520. Plaintiffs are a nonprofit organization focused on recognition, stewardship, and protection of cultural landscapes and its President and CEO, a long-time public servant. See Birnbaum Decl. ¶¶ 1-5. Requiring a bond would threaten their ability to pursue this case, which raises issues of public importance. Moreover, courts have long dispensed with the bond requirement when a party asserts statutory rights and brings litigation in the public interest. *E.g.,*

*Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002); *Bass v. Richardson*, 338 F. Supp. 478, 491 (S.D.N.Y. 1971); *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971). Because "the risk of financial harm is speculative at best" and a "bond could have a chilling effect on access to justice," this Court should exercise its discretion to decline to impose a bond. *N.A. Building Trades Unions*, 783 F. Supp. 3d at 315; *P.J.E.S.*, 502 F. Supp. 3d at 520.

* * *

It has unfortunately grown increasingly common for the federal government to plow ahead with alterations to our nation's most sacred spaces without following the law. This is not normal. And it is not ok. Plaintiffs respectfully urge the Court to intervene to protect one of the most visible emblems of America's shared heritage at the heart of our capital.

24

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the TRO and preliminary injunction. Plaintiffs also respectfully request that the Court hold an expedited hearing on the motion pursuant to LCvR 65.1(d).

Dated: May 11, 2026

Respectfully submitted,

/s/ Alexander Kristofcak
ALEXANDER KRISTOFCAK*
  (D.D.C. Bar No. NY0717)
JOSEPH MEAD
  (D.D.C. Bar No. 1740771)
NATHANIEL A.G. ZELINSKY
  (D.C. Bar No. 1724093)

WASHINGTON LITIGATION GROUP
1717 K Street NW, Suite 1120
Washington, DC 20006
Phone (202) 521-8734
Fax (202) 521-8745
akristofcak@washingtonlitigationgroup.org

*Admitted only in California and New York; practicing under the supervision of D.C. Bar members*

*Attorneys for Plaintiffs*

25

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION and CHARLES A. BIRNBAUM,<br><br>           *Plaintiffs*,<br><br>  *v.*<br><br>U.S. DEPARTMENT OF THE INTERIOR, DOUG BURGUM, *in his official capacity as Secretary of the Interior*, NATIONAL PARK SERVICE, and JESSICA BOWRON, *in her official capacity as Acting Director of the National Park Service*,<br><br>           *Defendants*. | No. 26 Civ. 1593 |

## [PROPOSED] TEMPORARY RESTRAINING ORDER

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and/or Stay of Agency Action pursuant to 5 U.S.C. § 705, Federal Rule of Civil Procedure 65, and Local Civil Rule 65.1.

Having reviewed Plaintiffs' Complaint, the Memorandum of Law, declarations, and other evidence and argument submitted in support of the Motion and in accordance with Federal Rule of Civil Procedure 65, the Court finds that Plaintiffs have satisfied the requirements for the issuance of a temporary restraining order. The Court further finds that the declarations submitted in support of the Motion clearly show that immediate and irreparable injury will result to the Plaintiffs before the Defendants can be heard in opposition, and that Plaintiffs' counsel took steps to provide notice to Defendants of the motion, necessitating the issuance of this temporary order before Defendants could be heard in opposition.

It is hereby ORDERED that Plaintiffs' motion for a Temporary Restraining Order is GRANTED.

1

It is further ORDERED that Defendants, together with their officers, agents, servants, employees, and attorneys, and anyone acting in concert with them, are ENJOINED from taking further steps to resurface the Lincoln Memorial Reflecting Pool basin or making any further changes to the Reflecting Pool. Unless otherwise ordered by the Court, this temporary restraining order will dissolve in 14 days.

It is further ORDERED that the Defendants take all necessary steps to direct and cause the contractors to cease any further painting or resurfacing of the Lincoln Memorial Reflecting Pool basin or making any further changes to the Reflecting Pool.

It is further ORDERED that the Defendants' counsel shall provide written notice of this Order to all officers, agents, servants, employees, and attorneys of the Defendants, and any other persons working at their direction or in active concert therewith, or subject to the Defendants' control, and who has had any involvement in or authority over the resurfacing of the Lincoln Memorial Reflecting Pool.

It is further ORDERED that the requirement for Plaintiffs to post bond under Federal Rule of Civil Procedure 65(c) is hereby waived because Defendants do not face pecuniary harm from the injunction, requiring one would have the effect of deterring Plaintiffs from their right to judicial review of governmental action, and the public interest requires it.

Dated: May ___, 2026

_____
United States District Judge

2