**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION et al.,<br><br>     *Plaintiffs*,<br><br>  *v.*<br><br>U.S. DEPARTMENT OF THE INTERIOR et al.,<br><br><br>     *Defendants*. | Case No. 26-cv-_____ |

**DECLARATION OF CHARLES A. BIRNBAUM**
**IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER**
**AND/OR PRELIMINARY INJUNCTION**

I, Charles Alan Birnbaum, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct and based on my personal knowledge and upon my review of corporate records:

1.  My name is Charles Alan Birnbaum. I am the Founding President and Chief Executive Officer of The Cultural Landscape Foundation ("TCLF"), as well as a Fellow of the American Society of Landscape Architecture ("FASLA") and a Fellow of the American Academy in Rome ("FAAR"). I have served as Founding President & CEO of TCLF since 1998. Between 1992 and 2007, I served as Coordinator of the Historic Landscape Initiative at the National Park Service. During my tenure at NPS, I authored *The Secretary of the Interior's Standard for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes* (1996), the governing federal framework for the preservation and treatment of historic landscapes. *See* Preservation Guidance - Cultural Landscapes (U.S. National Park Service), https://www.nps.gov/subjects/culturallandscapes/preservation.htm (last accessed May 8, 2026).

1

2.      In my capacity as Founding President and CEO, I am responsible for TCLF's long-term strategic vision and financial security; serving as the chief strategist, public representative, and spokesperson; creating nearly all of the foundation's programming; providing oversight of the *Cornelia Hahn Oberlander International Landscape Architecture Prize*; initiating, organizing, and supervising conferences, symposia, lectures, and tours; and other duties. I promote informed stewardship and sound management of our shared cultural landscape legacy through all of the foundation's initiatives and through my public comments as an expert on the identification, management, and stewardship of cultural landscapes.

3.      TCLF is a non-profit corporation organized under the laws of the District of Columbia, with its principal office in Washington, D.C. Established in 1998, TCLF is exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code.

4.      TCLF advances the importance of the recognition, stewardship, and protection of cultural landscapes including by organizing and presenting professional conferences, educational programs, and publications related to landscape architecture and cultural landscapes; advancing the professional standards and public understanding of cultural landscape management; and advocating for managing change of nationally significant sites and landscapes, including through participation in federal review processes.

5.      TCLF educates and engages the public to make our shared landscape heritage more visible, identify its value, and empower its stewards. TCLF achieves this part of its mission through the ongoing development of its four core programs: *What's Out There*, North America's largest and most exhaustive database of cultural landscapes; *Pioneers of American Landscape Design*, an in-depth multimedia library, inclusive of video oral histories, chronicling the lives of significant landscape architects and allied professionals; *Landslide*, an ongoing collection of

important landscapes and landscape features that are threatened; and *The Cornelia Hahn Oberlander International Landscape Architecture Prize*, a biennial prize in landscape architecture that includes a $100,000 monetary award and two years of public engagement activities.

6.      TCLF regularly participates as a Section 106 consulting party, provides testimony in Commission of Fine Arts ("CFA") and National Capital Planning Commission ("NCPC") processes, and litigates when a project poses a threat to a historically significant cultural landscape. For example, TCLF was an active participant in the Section 106 reviews on the impacts of the Obama Presidential Center in Jackson Park, Chicago between 2015 and 2020. More recently, TCLF is part of Friends of the Plaza, the plaintiff currently suing the San Francisco Recreation and Parks Department regarding their plans to remove the National Register-eligible Embarcadero Plaza's Vaillancourt Fountain, and has opposed the demolition of artist Mary Miss's pioneering work of environmental sculpture by the Des Moines Art Center between 2024 and 2025.

7.      TCLF's *Landslide* database contains a number of D.C. landscapes for which TCLF has advocated, including Hirshhorn Sculpture Garden (lost), Capitol Park (saved), Dumbarton Oaks Park (saved), National Geographic Headquarters' Marabar sculpture (saved), Pershing Park (saved), Tregaron (saved), Banneker Park Tenth Street Overlook (saved), East Potomac Park (at-risk), McMillan Park (at-risk), Oak Hill Cemetery (at-risk), and Pennsylvania Avenue (at-risk).

8.      TCLF has previously participated in CFA, NCPC, National Historic Preservation Act ("NHPA"), and National Environmental Policy Act ("NEPA") review processes as part of TCLF's advocacy for threatened cultural landscapes in D.C. In 2018, TCLF participated in

3

Section 106, NCPC, and CFA processes to review a proposal from the U.S. World War I Centennial Commission to construct a memorial at Pershing Park, arguing against the proposed demolition of the M. Paul Friedberg-designed park and successfully campaigning for its determination of eligibility for listing in the National Register of Historic Places. That effort resulted in the substantial rehabilitation of the Friedberg design, leading to Pershing Park's placement on the "saved" list of the *Landslide* database.

9. TCLF has also participated in Section 106 review processes for the Hirshhorn Sculpture Garden and has provided testimony in CFA proceedings concerning projects affecting D.C.'s civic landscapes, including Pershing Park and the Federal Reserve Building grounds. TCLF is currently a consulting party in the Section 106 processes for the White House Visitor Center and Lafayette Park. TCLF has also requested consulting party status in the Section 106 processes related to projects at East and West Potomac Parks and the Triumphal Arch.

10. TCLF takes legal action to protect threatened cultural sites and historic properties when necessary. *See, e.g.*, *Pres. All. of Minn. v. City of Minneapolis*, No. 27-CV-12-14220 (Minn. Dist. Ct.); *Friends of the Plaza v. City and County of San Francisco*, No. CPF-26-519568 (Cal. Sup. Ct.); *DC Preservation League, et al. v. Board of Trustees of the John F. Kennedy Center for the Performing Arts, et al.*, No. 26 Civ. 981 (D.D.C.).

11. In addition to its participation in the review processes, TCLF's programmatic work also depends on, and is enriched by, the information made available through the federal historic preservation review process. For example, TCLF's digital *Cultural Landscapes Guide to D.C. Modernism* was itself funded in part as a remediation measure arising from a Section 106 process—specifically, as part of the resolution of the Pershing Park undertaking—providing resources for TCLF to produce a public education guide about modernist landscapes in

Washington. When agencies bypass Section 106, as has occurred here, TCLF is deprived not only of the right to participate in the process but also of the information and documentation that would inform and support TCLF's ongoing educational and advocacy programs.

12. TCLF has a longstanding and direct institutional connection to the Lincoln Memorial Reflecting Pool and its surrounding landscape. The Lincoln Memorial Grounds, including the Reflecting Pool, are documented in TCLF's digital *What's Out There Washington DC Guide*, which highlights the McMillan Commission Plan as the guiding framework for the monumental core and the designed landscape relationships between the Lincoln Memorial, the Reflecting Pool, and the Washington Monument.

13. TCLF has also organized, on at least two occasions, free public tours of Washington, D.C.'s civic landscapes that included the Lincoln Memorial Grounds and the Reflecting Pool — first in approximately 2012 and again in approximately 2022. They reflect TCLF's longstanding, active, and programmatic engagement with the Lincoln Memorial Grounds as a significant component of Washington's designed landscape heritage.

14. TCLF's Director of Communications, Nord Wennerstrom, first contacted Tammy Stidham at the National Park Service on April 27, 2026, several days after work on the pool's blue resurfacing became publicly known. In that email, Mr. Wennerstrom wrote: "Since the Reflecting Pool between the Lincoln Memorial and the Washington Monument is listed in the National Register of Historic Places, shouldn't there be a Section 106 review prior to changing the color of the basin, which is a character-defining feature? Any guidance would be appreciated." A true and correct copy of Mr. Wennerstrom's April 27, 2026, email to Ms. Stidham is attached hereto as **Exhibit A**. As of the date of this declaration, Mr. Wennerstrom received no response to that inquiry.

15.     On May 5, 2026, Mr. Wennerstrom sent a second email to Ms. Stidham with the subject line "Request for Section 106 Consulting Party Status." The email stated: "If a Section 106 review is initiated for the painting of the Reflecting Pool on the National Mall, The Cultural Landscape Foundation requests to be a consulting party to that review." A true and correct copy of Mr. Wennerstrom's May 5, 2026, email to Ms. Stidham is attached hereto as **Exhibit B**. As of the date of this declaration, Mr. Wennerstrom has received no response to either email. No Section 106 process has been initiated in which TCLF's consulting party status could be accorded.

16.     On May 7, 2026, Mr. Wennerstrom emailed Kirsten B. Kulis and Jaime Loichinger at the Office of Federal Agency Programs at the Advisory Council on Historic Preservation ("ACHP") to inquire whether a Section 106 review had been initiated for the Reflecting Pool resurfacing.

17.     On May 8, 2026, Jaime Loichinger, Director of the Office of Federal Agency Programs at the ACHP, responded. Ms. Loichinger's email stated: "As we understand, the NPS reviewed this under the terms of its 2008 Nationwide PA. For additional detail, we suggest that you try reaching out to the NPS again." A true and correct copy of the email thread that includes Mr. Wennerstrom's May 7, 2026, email to the ACHP and the May 8, 2026, response from Jaime Loichinger is attached hereto as **Exhibit C**.

18.     TCLF has been directly and concretely injured by Defendants' failure to initiate the Section 106 process for the Reflecting Pool resurfacing. Defendants' decision to proceed without completing required review processes has deprived TCLF of information about the project as well as of its ability to participate in the deliberative process set out in Section 106 whether as a consulting party or a member of the public.

19.     TCLF's expertise is directly and particularly relevant to this undertaking. As the author of *The Secretary of the Interior's Standard for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes*, which is still in effect, I can provide valuable expertise to NPS in assessing effects of proposed changes to historic designed landscapes such as the Lincoln Memorial Reflecting Pool. Had Defendants initiated Section 106 review, TCLF would have sought consulting party status, submitted comments on the effects of the resurfacing on the character-defining features of the Reflecting Pool and the broader Lincoln Memorial Grounds, and engaged in the deliberative process the statute contemplates. Defendants' failure to initiate that process has deprived TCLF of these procedural rights.

20.     Defendants' failure to initiate Section 106 review and to disclose plans, specifications, and documentation about the undertaking has also directly impaired TCLF's ability to carry out its educational and documentary programs. TCLF's digital guides to Washington's designed landscapes, its *What's Out There* entries, and its public educational work rely on the information, including Cultural Landscape Reports, determinations of effect, and Memoranda of Agreement, that the Section 106 process generates and makes publicly available. When agencies bypass Section 106, as has occurred here, TCLF is denied access to documentation that would inform and support its programmatic work concerning the affected historic property.

21.     TCLF will suffer irreparable harm absent a temporary restraining order and a preliminary injunction. The resurfacing of the Reflecting Pool basin with a vivid blue coating is permanently and materially altering the character-defining grey, achromatic appearance that the 1999 CLR identifies as essential to the pool's historic integrity and reflective function. The opportunity for meaningful public consultation, including TCLF's participation in Section 106

7

review, will be permanently foreclosed if the resurfacing is completed before legally required reviews are initiated and completed. Any relief after the resurfacing is completed cannot compensate for the loss of TCLF's ability to fulfill its institutional mission with respect to this nationally significant historic property.

22.    The harm is imminent. Defendants have publicly confirmed that the resurfacing is ongoing and expect completion by the end of May 2026. Absent judicial intervention, the resurfacing will be completed without the legally required Section 106 review.

23.    I submit this declaration not only in my capacity as Founding President and CEO of TCLF, but also as an individual plaintiff. I have personal, direct, and on-going aesthetic and experiential connections to the Lincoln Memorial Reflecting Pool as a historic designed landscape.

24.    The Lincoln Memorial Grounds and the Reflecting Pool have been a cherished part of my personal life in Washington, D.C. During the COVID-19 pandemic, I found particular solace in walking around the Lincoln Memorial and the Reflecting Pool. Since that time, the Lincoln Memorial Grounds and the Reflecting Pool have been my go-to place for walking, reflecting, and taking respite from the demands of my work. In recent years, when I am not traveling, I visit the Lincoln Memorial and the Reflecting Pool approximately once a month. I plan to continue visiting the Lincoln Memorial Grounds and the Reflecting Pool in the future.

25.    My connection to the Reflecting Pool is not only personal but professional. Given my training as a landscape architect with deep experience at NPS, including my authorship of *The Secretary of the Interior's Standard for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes*, I have a heightened appreciation for the specific design qualities that make the Reflecting Pool significant. The grey, achromatic basin of the Reflecting

8

Pool is not simply a background element. It is the source of the pool's profound reflective depth. The Reflecting Pool's basin has remained essentially that same color since it was first installed more than a century ago. The pool's capacity to mirror the sky, the Lincoln Memorial, and the Washington Monument in a seamless and luminous plane is the direct and intended product of that character-defining design choice: the achromatic grey color of the basin causes it recede and allows the monument and memorial it reflects to be the center of attention. In contrast, painting the basin blue would cause it to compete for attention and fundamentally alter the existing harmony, solemnity, and dignity of the current memorial landscape. It would thus transform one of the most powerful landscape experiences in America into something that more closely resembles a commercial swimming pool or a theme park.

26. My aesthetic enjoyment of the Reflecting Pool—as a historic designed landscape whose character I have documented, championed, and personally experienced over many years— is being concretely and continuously harmed by Defendants' ongoing resurfacing of the basin. Every day that the resurfacing proceeds, the historic character of the Reflecting Pool is further and more irreversibly degraded. I will continue to suffer this aesthetic injury unless and until the historic character of the pool is restored.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of May, 2026.

DocuSigned by:

*Charles Birnbaum*
DFC08F76B78B4F2...

Charles A. Birnbaum