# Exhibit H

PROGRAMMATIC AGREEMENT AMONG THE
NATIONAL PARK SERVICE
(U.S. DEPARTMENT OF THE INTERIOR),
THE ADVISORY COUNCIL ON HISTORIC PRESERVATION,
AND THE NATIONAL CONFERENCE OF STATE HISTORIC
PRESERVATION OFFICERS FOR COMPLIANCE WITH SECTION 106
OF THE NATIONAL HISTORIC PRESERVATION ACT

I.      RESPONSIBILITIES, QUALIFICATIONS AND TRAINING            2

II.     CONSULTATION                                             6

III.    STREAMLINED REVIEW PROCESS                               9

IV.     STANDARD REVIEW PROCESS                                  20

V.      NATIONAL HISTORIC LANDMARKS                              21

VI.     INADVERTENT DISCOVERIES                                  21

VII.    EMERGENCY ACTIONS                                        22

VIII.   REVIEW AND MONITORING OF PA IMPLEMENTATION               22

IX.     SUBSEQUENT AGREEMENTS                                    24

X.      DISPUTE RESOLUTION                                       24

XI.     MONITORING AND TERMINATION                               25

XII.    SEVERABILITY                                             25

XIII.   ANTI-DEFICIENCY ACT STATEMENT                            26

This Page Intentionally Blank

**PROGRAMMATIC AGREEMENT AMONG THE
NATIONAL PARK SERVICE
(U.S. DEPARTMENT OF THE INTERIOR),
THE ADVISORY COUNCIL ON HISTORIC PRESERVATION,
AND THE NATIONAL CONFERENCE OF STATE HISTORIC
PRESERVATION OFFICERS FOR COMPLIANCE WITH SECTION 106
OF THE NATIONAL HISTORIC PRESERVATION ACT**

**WHEREAS,** the National Park Service (NPS) plans for, operates, manages, and administers the National Park System (System) and is responsible for identifying, preserving, maintaining, and interpreting the historic properties of the System unimpaired for the enjoyment of future generations in accordance with the 1916 National Park Service Organic Act, the NPS Management Policies (2006), and applicable NPS Directors Orders; and

**WHEREAS,** the operation, management, and administration of the System entail undertakings that may affect historic properties (as defined in 36 CFR Part 800), which are therefore subject to review under Sections 106, 110(f) and 111(a) of the National Historic Preservation Act as amended (NHPA) (16 USC 470 *et seq.*) and the regulations of the Advisory Council on Historic Preservation (ACHP) (36 CFR Part 800); and

**WHEREAS,** the NPS has established management policies, director's orders, standards, and technical information designed for the identification, evaluation, documentation, and treatment of historic properties consistent with the spirit and intent of the NHPA; and

**WHEREAS,** the NPS has a qualified staff of cultural resource specialists to carry out programs for historic properties; and

**WHEREAS,** the purpose of this Programmatic Agreement (PA) is to establish a program for compliance with Section 106 of the NHPA and set forth a streamlined process when agreed upon criteria are met and procedures are followed; and

**WHEREAS,** signature and implementation of this PA does not invalidate park-, Region-, or project-specific memoranda of agreement (MOA) or programmatic agreements negotiated for Section 106 purposes prior to the effective date of this PA; and

**WHEREAS,** Federally recognized Indian Tribes are recognized by the U.S. government as sovereign nations in treaties and as unique political entities in a government-to-government relationship with the United States; and

**WHEREAS,** the NPS has conducted a series of "listening" meetings with Indian Tribes, has requested the input of a number of Native Advisors in the process of preparing this PA, and has held consultation meetings with Federally recognized Indian Tribes, Native Hawaiian organizations, and other parties on the content of the PA; and

1

**WHEREAS**, 36 CFR 800.2 (c)(2)(i)(A) and (B) provide for consultation with Indian Tribes on the same basis as the State Historic Preservation Officer (SHPO) when an undertaking will occur on or affect historic properties on tribal lands; and

**WHEREAS**, in accordance with 36 CFR 800.14(b)(2)(iii), a PA shall take effect on tribal lands only when the designated representative of the tribe is a signatory to the agreement; and

**WHEREAS**, for those parks located partly or wholly within tribal lands, the NPS has invited the applicable Tribal Historic Preservation Officer (THPO) or Indian Tribe to sign this PA as an Invited Signatory; and

**WHEREAS**, the NPS has consulted with the NCSHPO and the ACHP regarding ways to ensure that NPS operation, management, and administration of the Parks provide for management of the Parks' historic properties in accordance with the intent of NPS policies, director's orders and Sections 106, 110, 111, and 112 of the NHPA.

**NOW, THEREFORE**, the NPS, the NCSHPO, the ACHP, and the signatory tribes mutually agree that the NPS will carry out its Section 106 responsibilities with respect to operation, management, and administration of the Parks in accordance with the following stipulations.

## PURPOSE AND NEED

NPS park operations, management, and administration require a large number of low-impact or repetitive activities on a daily basis that have the potential to affect properties listed in or determined eligible for the National Register of Historic Places and require consultation under Section 106. This PA provides an efficient process for compliance with Section 106 for daily NPS park operations, management, and administration activities. It establishes two processes for Section 106 review: a "streamlined" review process for designated undertakings that meet established criteria and a "standard" review process for all other undertakings. This PA also provides programmatic procedures and guidance for other activities related to the Section 106 compliance process, including identification of resources, consultation, and planning.

The NPS shall ensure the following measures are implemented.

## I.     RESPONSIBILITIES, QUALIFICATIONS, AND TRAINING

The following sections list the responsibilities and required qualifications for those individuals responsible for implementing this PA.

2

## A.    Responsibilities

1.    Director, National Park Service

The Director has policy oversight responsibility for the agency's historic preservation program.  The Director, through the Deputy Director for Operations, executes this PA for the NPS and provides policy level oversight within the NPS to ensure that stipulations of the PA are met.

2.    Associate Director for Cultural Resources

The Associate Director for Cultural Resources (ADCR) provides national leadership for policy implementation through establishing standards and guidance for managing cultural resources within the Parks.  The ADCR works with the NPS regions and parks to ensure and support compliance with the stipulations of this PA and provides accountability to the signatories of this PA with regard to its implementation.  The ADCR is responsible for working with Regions and Parks to develop and fund training needs related to Section 106 and the implementation of the PA.  The ADCR in cooperation with the regions and parks, is responsible for issuing a guidance document for this agreement within 12 months of its execution.  At the time of execution of this PA, the ADCR also holds the title of Federal Preservation Officer (FPO).

3.    Regional Directors

The Regional Director is the line manager for all Superintendents within his/her region. The Regional Director is responsible for policy oversight, strategic planning, and direction for parks and programs within the region and reports to the Director through the NPS Deputy Director for Operations.  Review and support of Park and Superintendent implementation of this PA and training to achieve Section 106 compliance is the responsibility of the Regional Director.

4.    Regional Section 106 Coordinators

The Regional Section 106 Coordinators work with parks and other NPS offices to provide support for Section 106 compliance and implementation of this PA.  The Regional Section 106 Coordinators provide guidance materials and technical assistance for implementing the PA and assist the parks to meet the training, reporting, and consultation requirements of the PA.

5.    Superintendents

Superintendents are the responsible agency officials as defined in 36 CFR 800.2(a) for purposes of Section 106 compliance and the implementation of this PA.

Each Superintendent shall do the following within his/her park:

3

a.   Designate a Park Section 106 Coordinator and a Cultural Resource Management (CRM) Team meeting the necessary qualifications;

b.   Develop and maintain relationships with Federally recognized Indian Tribal governments and Native Hawaiian organizations (if applicable);

c.   Develop and maintain relationships with SHPOs/THPOs;

d.   Ensure early coordination among the Section 106 Coordinator, the CRM Team, and other park and regional staff, concessioners, park partners, neighboring communities, groups affiliated with park resources, and others in the planning of projects and activities that may affect historic properties;

e.   Ensure that Section 106 consultation with the SHPO/THPO and other consulting parties is initiated early in the planning stages of any given undertaking, when the widest feasible range of alternatives is available for consideration;

f.   Ensure that the Park Section 106 Coordinator, CRM Team Members and the park cultural resources staff receives the NHPA training needed to carry out their responsibilities.  Provide opportunities for other involved staff to receive NHPA training as funding and opportunities permit.

6.   Park Section 106 Coordinator

The Park Section 106 coordinator provides day-to-day staff support for Section 106 activities and serves as liaison among park personnel, the NPS Regional Office, NPS Centers, and others involved in undertakings.  The coordinator makes recommendations to the Superintendent regarding the appropriate course of action under this PA, including whether a project constitutes a Section 106 undertaking.

7.   Cultural Resource Management (CRM) Team

The CRM Team shall provide expertise and technical advice to the Superintendent and the Park Section 106 Coordinator for purposes of Section 106 compliance and implementation of this PA.

B.   **Qualifications**

1.   Park Section 106 Coordinator

The Superintendent shall designate at least one (1) person to act as the park's Section 106 Coordinator, whose Section 106 responsibilities are specified, as appropriate.   The designee may be chosen from the park staff, other NPS parks, NPS archeological and preservation centers, and the NPS Regional Office.  The Park Section 106 Coordinator shall have an appropriate combination of professional training and/or experience to effectively carry out the responsibilities of the position.

4

2.    Cultural Resource Management (CRM) Team

The Superintendent shall designate a CRM Team with expertise to fulfill and implement the requirements of this PA, whose Section 106 responsibilities are specified, as appropriate.

    a.    Subject matter experts chosen must be appropriate to the resource types found in the park. Therefore, the number of individuals who comprise the CRM Team is not static and will be appropriate to include all necessary disciplines. Multi-disciplinary reviews of proposed undertakings are recommended.

    b.    CRM Team members may be on the park staff or in other parks, or from NPS Regional Offices, NPS Centers, Federally recognized Indian Tribes, Native Hawaiian organizations, or elsewhere in the public or private sector.

    c.    CRM Team members who are federal employees shall meet the qualifications for the applicable discipline as defined in Appendix E to NPS-28: Cultural Resource Management Guideline. CRM Team members who are representing Federally recognized Indian Tribes may be traditional cultural authorities, elders, and others experienced in the preservation of tribal culture. All other CRM team members, who are not federal employees or representing a Federally recognized Indian Tribe, must meet the Professional Qualification Standards in the Secretary of the Interior's Standards and Guidelines for Archeology and Historic Preservation.

## C.    Training

Periodic training on Section 106 compliance issues and the provisions of this PA is needed to maintain an understanding of the requirements of each. Such training may be accessed through the NPS, the ACHP, SHPOs/THPOs, Indian Tribes, Native Hawaiian organizations, other Federal or state agencies or private industry. Training may be in a classroom setting, electronic media, meetings, or other formats that allow for the conveyance of information. The NPS Washington Office, in consultation with the NPS parks, regions, and training centers, will work with the ACHP and NCSHPO to establish options for training in accordance with this PA, within 12 months from the time of execution of this PA.

1.    All Superintendents and Section 106 coordinators will be notified of the opportunity to receive training on the provisions of this programmatic agreement once it has been made available by the NPS Washington Office. The NPS ADCR will work with the Regional 106 coordinators to accomplish this training throughout the Regions and parks within 12 months of its availability.

2.    Superintendents will report on Section 106 training received by Superintendents and park staff as part of the biennial report (Section VIII.B of this agreement).

## II.    CONSULTATION

### A.    Consultation with Federally Recognized Indian Tribes and, THPOs, and Native Hawaiian Organizations

Government-to-government consultation with Federally recognized Indian Tribes and consultation with Native Hawaiian organizations shall occur at the Superintendent level and be initiated during planning and prior to undertaking an activity, program or project that may affect historic properties of significance to Federally recognized Indian tribes or Native Hawaiian organizations.  Maintaining an on-going consultative relationship with THPOs and/or staff of Federally recognized Indian Tribes and Native Hawaiian organizations is essential.

1.    Consultation on Undertakings off Tribal Lands

Superintendents shall identify, compile a list of, and consult with Federally recognized Indian Tribes, THPOs and Native Hawaiians that are known to have aboriginal lands within the park boundaries, assert an interest in historic properties within the park boundaries, or have lands or interest in lands adjacent to the park.

a.    Such consultation will be in accordance with 36 CFR 800.2(c)(2)(ii), NPS Director's Order 75A:  Public Engagement and Public Involvement, and with Sections III and IV of this PA.

b.    Each Superintendent, with the assistance of park and Regional Office ethnographers, will be responsible for identifying aboriginal lands within the park boundary, working cooperatively with the appropriate Federally recognized Indian Tribes and Native Hawaiian organizations.

c.    Superintendents, in consultation with the Park Section 106 Coordinator and the CRM Team, shall establish a process and develop consultation agreements, where appropriate, that provide for early coordination between the park and Federally recognized Indian tribes, THPOs, and/or Native Hawaiian organizations in identification and evaluation of historic properties and the planning of projects and activities that may affect historic properties.

d.    Identification and evaluation of historic properties on aboriginal lands must be based upon consultation with the appropriate traditionally associated communities.

2.    Consultation on Undertakings on Tribal Lands

For those undertakings that either occur on tribal lands or will otherwise have the potential to affect historic properties on tribal lands, including cumulative impacts from collectively significant actions taking place over a period of time, the Superintendent shall consult with that tribe on the same basis as he or she consults with the SHPO.

a.    Where the Tribe has assumed the SHPO's responsibility for Section 106 pursuant to Section 101(d)(2) of the NHPA, the Superintendent shall consult with the THPO in lieu of the SHPO, except as provided for in Section 101(d)(2)(D)(iii).

b.    Where the Tribe has not assumed the SHPO's responsibility for Section 106, the Superintendent shall consult with the Tribe's designated representatives in addition to and on the same basis as the SHPO. The Tribe shall have the same rights of consultation and concurrence as the SHPO.

3.    Applicability of this PA on Tribal Lands

When a park is located partly or wholly within the boundaries of tribal lands, and the tribe has not signed this PA as an Invited Signatory, any undertaking that may occur on those tribal lands shall require consultation with the Tribe and/or THPO in accordance with 36 CFR Part 800, and the provisions of this PA are not applicable.

A tribe may sign this PA by written notification to the Director of such intent, signed by the THPO, Indian tribe, or a designated representative of the tribe. Once such a written and signed notification is received by the Director, the provisions of this PA will be applicable to undertakings occurring on those lands where a park is located partly or wholly within the boundaries of that particular tribe's tribal lands.

4.    Development of Agreements to Facilitate Government-to-Government Consultation with Federally recognized Indian Tribes and Consultation with Native Hawaiian Organizations

Development of consultation protocols, memoranda of agreement and programmatic agreements is encouraged. Such agreements may be negotiated between Superintendents and Federally recognized Indian Tribes, THPOs, or Native Hawaiian organizations and may be independent of or supplement this PA. For example, such agreements may be specific to a project, plan, or park activity, or may set forth specific consultation protocols between the park and a specific tribe or group of Native peoples. Superintendents will provide an informational copy of all agreements to the Regional Section 106 Coordinator and to the ACHP and appropriate SHPO/THPO in accordance with 36 CFR 800.2(c)(2)(ii)(E).

**B.    Consultation with SHPOs**

Consultation with SHPOs on projects reviewed in accordance with the Standard Review Process will occur in accordance with the procedures set forth in Section IV of this PA. Consultation with SHPOs on implementation of this PA will occur biennially in accordance with Section VIII of this PA.

**C.    Consultation with Local Governments and Applicants for Federal Assistance, Licenses, Permits, and Other Approvals**

Where appropriate, the Superintendent shall actively seek the views and comments of local governments and certified local governments. Those seeking Federal assistance, licenses, permits, or other approvals are entitled to participate as a consulting party as defined in 36 CFR 800.2(c)(4) and will be consulted, as applicable.

**D.    Consultation with the Public**

Superintendents will consult with interested members of the public.

**E.    General Consultation Provisions**

1.    Section 110 Inventory of Historic Properties

The parks implement a program to identify, evaluate, and, when appropriate, nominate historic properties to the National Register of Historic Places in accordance with Section 110(a)(2)(d) of the NHPA. Research and testing of all types of historic properties for purposes of identification and evaluation must be limited to the minimum necessary to obtain the required inventory and evaluative information. Early coordination on the identification and evaluation of historic properties should be undertaken with Federally recognized Indian Tribes or Native Hawaiian organizations, as appropriate, utilizing tribal knowledge and expertise wherever applicable. Knowledge and data from appropriate sources of expertise should be utilized, including SHPOs, local governments, Indian Tribes, Pacific Islanders, and national and local professional and scientific organizations. Inventory records should be periodically reviewed and updated, as necessary, to ensure data on historic properties, including condition information, is current, and any previous evaluations of significance remain accurate.

2.    Information Sharing:  Historic Property Inventories

Parks, NPS Regional Offices, NPS Centers, and SHPOs will share information with each other regarding inventories of historic properties and historic contexts developed, as well as other reports and research results related to historic properties in the parks, whenever such studies become available. In addition, parks, NPS Regional Offices, and NPS Centers will make such information available to interested Federally recognized Indian Tribes, THPOs, and Native Hawaiian organizations. Federally recognized Indian Tribes who are signatories to this PA will, likewise, make such information available to NPS parks and Regional Offices, as appropriate. Information will be shared with the understanding that sensitive information will be withheld by the recipient of the information from public disclosure pursuant to Section 304 of NHPA and other applicable laws. Procedures for information sharing and format for information (i.e. electronic, hard copy, etc.) should be agreed upon between the parties.

3.      Notification of Park Section 106 Coordinator

The National Park Service will provide contact information on Section 106 coordinators to Indian Tribes, SHPOs/THPOs, and Native Hawaiian organizations for each park through the Regional Office from the Regional 106 Coordinator within six months of this PA and updated biennially.

4.      Review and comment on guidance and training documents

The ADCR will consult with the ACHP and NCSHPO in the development of training materials and guidance for this PA.

## F.      Development of Agreements to Facilitate Consultation

Development of consultation protocols, memoranda of agreement, and programmatic agreements is encouraged. Such agreements may be negotiated between Superintendents and organizations or governments and may be independent of or supplement this PA. For example, such agreements may be specific to a project, plan, or park activity, or may set forth specific consultation protocols between the park and a specific group, state, or local government. Superintendents will provide an informational copy of all agreements to the Regional Section 106 Coordinator and to the ACHP and appropriate SHPO/THPO in accordance with 36 CFR 800.2(c)(2)(ii)(E).

## III.    STREAMLINED REVIEW PROCESS

Where the Park Section 106 Coordinator determines the following criteria are met for a proposed undertaking, no further consultation is required unless otherwise specifically requested by the SHPO/THPO, Federally recognized Indian Tribe(s) or Native Hawaiian organization(s), or the ACHP.

## A.      Criteria for Using the Streamlined Review Process

All of the following criteria must be met in order to use the Streamlined Review Process:

1.      The proposed undertaking must be an activity eligible for streamlined review, listed in Section III.C of this PA. These undertakings shall be known as "streamlined activities" for purposes of reference and replace the term "nationwide programmatic exclusions" set forth in the 1995 Programmatic Agreement between the NPS, the ACHP, and the NCSHPO; and

2.      Identification and evaluation of all types of historic properties within the project area of potential effect (APE) must have been previously undertaken, sufficient to assess effects on those resources (with the exception of V.C (16)). Identification and evaluation of historic properties of religious and cultural significance to Indian tribes and Native Hawaiian organizations must be based upon consultation

9

with those entities.  All properties within the APE must have previously been evaluated for eligibility to the National Register of Historic Places and the SHPO/THPO must have concurred with the eligibility determination.  Inventory records should be periodically reviewed and updated, as necessary, to ensure data on historic properties, including condition information, is current, and any previous evaluations of significance remain accurate; and

3.    The Section 106 Coordinator, in consultation with appropriate members of the CRM Team must have reviewed the project and certified that the effects of the proposed undertaking on historic properties on or eligible for the National Register will ***not be adverse*** based on criteria in 36 CFR 800.5, including consideration of direct, indirect, and cumulative effects.  The Effect Finding must be "No Historic Properties Affected" or "No Adverse Effect".

## B.    Streamlined Review Process

1.    *Evaluate Whether the Proposed Undertaking is Eligible for Streamlined Review:* The Park Section 106 Coordinator, in consultation with appropriate members of the CRM Team, determines whether the proposed undertaking is an activity listed as an undertaking eligible for streamlined review in Section III.C of this PA.  If not, compliance for the undertaking must be accomplished through the Standard Review Process, outlined in Section IV of this PA.

2.    *Identify the Undertaking's Area of Potential Effect (APE):*  The Park Section 106 Coordinator, in consultation with members of the CRM Team with expertise in the appropriate discipline(s), determines the project's APE, taking into account direct, indirect, and cumulative effects.

3.    *Identify Historic Properties within APE:*  The Park Section 106 Coordinator, in consultation with members of the CRM Team with expertise in the appropriate discipline(s), identifies the location, number, and significance of historic properties within the APE.  If properties are located within the APE that have not yet been documented or evaluated for eligibility for the National Register of Historic Places, or if the SHPO/THPO has not yet concurred with the eligibility determination, compliance for the undertaking must be accomplished through the Standard Review Process, outlined in Section IV of this PA.

4.    *Evaluate Effect of Undertaking on Historic Properties in APE:*  The Park Section 106 Coordinator, in consultation with members of the CRM Team with expertise in the appropriate discipline(s), evaluates the effect of the proposed undertaking and cumulative effects on historic properties, applying the Criteria of Adverse Effect set forth in 36 CFR 800.5(a)(1)

5.    *Document Streamlined Review Process:*  If, after following steps one through four (1-4) listed above, the Park Section 106 Coordinator determines no historic properties are within the APE, or the proposed undertaking would result in a

10

determination of "no historic properties affected" or "no adverse effect", no further consultation is required. The Park Section 106 Coordinator shall document the determination as follows:

  a. The Streamlined Review process will be documented using the NPS "Assessment of Actions Having an Effect on Cultural Resources" form, or another appropriate format. Parks are encouraged to use Servicewide automated project planning and tracking systems, such as the NPS Planning, Environment and Public Comment (PEPC) system, to track and document Section 106 compliance activities.

  b. Documentation will include the comments of each member of the CRM Team involved in the review process and the signature of the Superintendent. Electronic signatures are acceptable.

  c. Documentation will be permanently retained by the Park Section 106 Coordinator for review by consulting parties and to facilitate the preparation of the Annual Report.

  d. Annual Report: An annual report of all undertakings reviewed using the Streamlined Review process will be prepared by the Park Section 106 Coordinator, using existing and readily available data sources and reporting systems such as the NPS Planning, Environment and Public Comment (PEPC) system, for transmittal to the SHPO/THPO.

## C. Undertakings Eligible for Streamlined Review

1. <u>Preservation Maintenance and Repair of Historic Properties</u>: The Streamlined Review Process is intended to be used for:

- Mitigation of wear and deterioration of a historic property to protect its condition without altering its historic character;
- Repairing when its condition warrants with the least degree of intervention including limited replacement in-kind;
- Replacing an entire feature in-kind when the level of deterioration or damage of materials precludes repair; and
- Stabilization to protect damaged materials or features from additional damage.

Use of the Streamlined Review Process is limited to actions for retaining and preserving, protecting and maintaining, and repairing and replacing in-kind, as necessary, materials and features, consistent with the Secretary of the Interior's Standards for the Treatment of Historic Properties (Standards) and the accompanying guidelines.

Emergency stabilization, including limited replacement of irreparably damaged features or materials and temporary measures that prevent further loss of historic

material or that correct unsafe conditions until permanent repairs can be accomplished, may use the Streamlined Review Process. For archeological sites and cultural landscapes, the Streamlined Review Process may also be used for work to moderate, prevent, or arrest erosion.

If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team. When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

The Streamlined Review Process may be used for routine repairs necessary to continue use of a historic property, but it is not intended to apply to situations where there is a change in use or where a series of individual projects cumulatively results in the complete rehabilitation or restoration of a historic property. If an approved treatment plan exists for a given historic property (such as a historic structure report, cultural landscape report, or preservation maintenance plan), the proposed undertaking needs to be in accordance with that plan. This streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a.    Removal of non-historic debris from an abandoned building.
b.    Cleaning and stabilizing of historic structures, features, fences, stone walls, plaques, and cannons using treatment methods that do not alter or cause damage to historic materials.
c.    Repainting in the same color as existing, or in similar colors or historic colors based upon an approved historic structure report, cultural landscape report, or a historic paint color analysis.
d.    Removal of non-historic, exotic species according to Integrated Pest Management principles when the species threatens cultural landscapes, archeological sites, or historic or prehistoric structures.
e.    Energy improvements limited to insulation in the attic or basement, and installation of weather stripping and caulking.
f.    In-kind repair and replacement of deteriorated pavement, including, but not limited to, asphalt, concrete, masonry unit pavers, brick, and stone on historic roads, paths, trails, parking areas, pullouts, etc.
g.    Repair or limited in-kind replacement of rotting floorboards, roof material, or siding. Limited in-kind replacement refers to the replacement of only those elements of the feature that are too deteriorated to enable repair, consistent with the Standards.
h.    In-kind replacement of existing gutters, broken or missing glass panes, retaining walls, and fences.

2.    <u>Rehabilitation and/or Minor Relocation of Existing Trails, Walks, Paths, and Sidewalks</u>: The Streamlined Review Process may be used for undertakings proposed on existing non-historic trails, walks, paths, and/or sidewalks that are

12

located within previously disturbed areas and do not exceed the depth of the previous disturbance. The Streamlined Review Process may also be used for undertakings proposed on existing historic trails, walks, paths, and/or sidewalks, provided that the proposed undertaking is conducted in accordance with an approved treatment plan (such as a historic structure report, cultural landscape report, or preservation maintenance plan).

If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team. When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

This streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a. In-kind regrading, graveling, repaving, or other maintenance treatments of all existing trails, walks and paths within existing disturbed alignments.

b. Minor realignment of trails, walks, and paths where the ground is previously disturbed as determined by a qualified archeologist.

c. Changing the material or color of existing surfaces using materials that are recommended in an approved treatment plan or in keeping with the cultural landscape.

d. Construction of water bars following the recommendations of an approved treatment plan or in keeping with the cultural landscape.

3. <u>Repair/Resurfacing/Removal of Existing, Roads, Trails, and Parking Areas</u>:

The Streamlined Review Process may be used as follows:

a. Existing roads, trails, parking areas, and associated features that have been determined not eligible for the National Register in consultation with the SHPO/THPO, may be repaired or resurfaced in-kind or in similar materials as long as the extent of the project, including staging areas, is contained within the existing surfaced areas. The repair or resurfacing cannot exceed the area of the existing road surface and cannot exceed the depth of existing disturbance.

b. Existing roads, trails, parking areas, and associated features, that have been determined eligible for the National Register in consultation with the SHPO/THPO, may be repaired or resurfaced in-kind. The project, including staging areas, cannot exceed the area of the existing surface and cannot exceed the depth of existing disturbance.

c. Existing surfaced areas may be expanded or new surfaces constructed if the extent of new surfacing can be demonstrated to occur on land that has been disturbed by prior excavation or construction and has been shown not to contain buried historic properties. New or expanded surface may not be

13

an addition to, or continuation of, existing surfaces that are listed in or eligible for the National Register and all project activities, including staging areas, must be located in non-historic areas to be eligible for streamlined review.

d.    Existing surfaced areas may be removed if the surfaced area is not a historic property, it is not located within a historic property and all project activities, including staging areas, will occur on land that has been disturbed by prior excavation or construction and has been shown not to contain buried historic properties.

4.    <u>Health and Safety Activities:</u>  The Streamlined Review Process may be used for health and safety activities that do not require the removal of original historic elements or alteration of the visual character of the property or area.

If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team.  When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

This streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a.    Sampling/testing historic fabric to determine hazardous content, e.g. lead paint, asbestos, radon.

b.    Limited activities to mitigate health and safety problems that can be handled without removal of historic fabric, surface treatments, or features that are character-defining elements, or features within previously disturbed areas or areas inventoried and found not to contain historic properties.

c.    Testing of soil and removal of soil adjacent to buried tanks, provided the project does not exceed the area of existing disturbance and does not exceed the depth of existing disturbance, as determined by a qualified archeologist.

d.    Removal of oil or septic tanks within previously disturbed areas or areas inventoried and found not to contain historic properties.

e.    Removal of HAZMAT materials within previously disturbed areas or areas inventoried and found not to contain historic properties.

f.    Safety activities related to black powder regulations.

g.    Replacement of septic tanks and systems in previously disturbed areas, or areas inventoried and found not to contain historic properties.

h.    Common pesticide treatments.

i.    Removal of both natural and anthropogenic surface debris following volcanic activity, tropical storms, hurricanes, tornados, or similar major weather events, provided removal methods do not include ground disturbance or otherwise cause damage to historic properties.

14

5.      <u>Routine Grounds Maintenance</u>:  The Streamlined Review Process may be used for routine grounds maintenance activities.  If an approved treatment plan exists for a given historic property (such as a historic structure report, cultural landscape report, or preservation maintenance plan), the proposed undertaking needs to be in accordance with that plan.

If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team.  When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

This streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a.      Grass replanting in same locations with approved species.
b.      Woodland and woodlot management (including tree trimming, hazard tree removal, thinning, routine removal of exotic species that are not a significant component of a cultural landscape, stump grinding).
c.      Maintaining existing vegetation on earthworks, trimming trees adjacent to roadways and other historic roads and trails.
d.      Routine maintenance of gardens and vegetation within cultural landscapes with no changes in layout or design.
e.      Routine grass maintenance of cemeteries and tombstones with no tools that will damage the surfaces of stones (i.e. weed whips).
f.      Trimming of major specimen trees needed for tree health or to address critical health/safety conditions.
g.      Routine roadside and trail maintenance and cleanup with no ground disturbance.
h.      Planting of non-invasive plant species in non-historic areas.
i.      Removal of dead and downed vegetation using equipment and methods that do not introduce ground disturbance.
j.      Replacement of dead, downed, overgrown, or hazard trees, shrubs, or other vegetation with specimens of the same species.
k.      Replacement of invasive or exotic landscape plantings with similar non-invasive plants.
l.      Routine lawn mowing, leaf removal, watering, and fertilizing.
m.      Routine orchard maintenance and pruning.

6.      <u>Battlefield Preservation and Management</u>:  The Streamlined Review Process *may be used only if* the park has approved planning documents (General Management Plan, cultural landscape report, treatment plan) that specify preservation and management protocols for the subject battlefield.

15

If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team.  When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

Consistent with that plan(s), activities include:

a.   Maintenance and preservation work limited to retaining, protecting, repairing, and replacing in-kind materials and features that contribute to the National Register significance of the battlefield landscape.

b.   Earthworks maintenance to prevent erosion and ensure preservation of existing profile, based on current and accepted practices identified in "Sustainable Military Earthworks Management" found on the NPS Cultural Landscape Currents website.

c.   Removal of hazard trees with no ground disturbance and with use of stump grinding provided the grinding is limited to the diameter of the stump and a depth of no greater than 6 inches.

d.   Repairing eroded or damaged sections of earthworks in-kind following archeological documentation and recordation in appropriate NPS inventory and management databases resulting in complete, accurate, and reliable records for those properties.

e.   Maintaining a healthy and sustainable vegetative cover.

7.   Hazardous Fuel and Fire Management:  The Streamlined Review Process *may be used only if* the park has an approved fire management plan or forest management plan.

If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team.  When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

Following completion of activities under this section, post-burn inspection and monitoring should be conducted by a qualified archeologist to ensure no archeological sites were impacted or previously unknown sites revealed.

Consistent with the approved fire management plan or forest management plan, this streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a.   Removal of dead and downed vegetation, outside of historic districts, cultural landscapes, and archeological sites, using equipment and methods that do not introduce ground disturbance beyond documented natural or historic disturbance.

16

b. Removal of dead and downed vegetation, as well as trees and brush located within historic properties, if the vegetation does not contribute to the significance of the historic property and equipment and methods are used that do not introduce ground disturbance beyond documented natural or historic disturbance.

c. Forest management practices, including thinning of tree stands, outside of historic districts, cultural landscapes, and archeological sites, using equipment and methods that do not introduce ground disturbance beyond documented natural or historic disturbance.

d. Restoration of existing fire line disturbances, such as hand lines, bulldozer lines, safety areas, helispots, and other operational areas.

e. Slope stabilization, to include reseeding with native seeds, replanting with native plants and/or grasses, placement of straw bales, wattles, and felling of dead trees when the root ball is left intact and in situ.

8. <u>Installation of Environmental Monitoring Units</u>: The Streamlined Review Process may be used for the placement of small-scale, temporary or permanent monitoring units, such as weather stations, termite bait stations, water quality, air quality, or wildlife stations, in previously disturbed areas, as determined by a qualified archeologist, or areas inventoried and found not to contain historic properties. Borings must be limited to pipes less than 2 inches in diameter and surface samples to less than 12 inches in size and minimal in number.

9. <u>Maintenance or Replacement of Non-Historic Utility Lines, Transmission Lines, and Fences</u>: If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team. When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

This streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a. Maintenance or replacement of buried linear infrastructure in previously disturbed areas. The area of previous disturbance must be documented by a qualified archeologist and must coincide with the route of the infrastructure in its entirety.

b. Replacement of non-historic materials, provided the undertaking will not impact adjacent or nearby historic properties and is not located in a historic property, or visible from an above-ground historic property.

c. Maintenance or replacement of infrastructure, such as old water distribution systems, that has been determined to be not eligible for the National Register, in consultation with the SHPO/THPO.

d. Maintenance of above-ground infrastructure.

17

e.    Replacement of above-ground infrastructure provided the undertaking is not located in a historic property or visible from an above-ground historic property.

f.    Enhancement of a wireless telecommunications facility, including the updating of mechanical equipment, provided the activities do not involve excavation nor any increase to the size of the existing facility.

10.    Erection of Signs, Wayside Exhibits, and Memorial Plaques:  If an approved treatment plan exists for a given historic property (such as a historic structure report, cultural landscape report, or preservation maintenance plan), the proposed undertaking needs to be in accordance with that plan.  If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team.  When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

This streamlined activity includes the following undertakings, as well as others that are comparable in scope, scale, and impact:

a.    Replacement of existing signage in the same location with similar style, scale and materials.

b.    New signs that meet NPS standards, e.g. at entrance to the park or related to the park's interpretive mission, provided the sign is not physically attached to a historic building, structure, or object (including trees) and the sign is to be located in previously disturbed areas or areas inventoried and found not to contain historic properties.

c.    Replacement of interpretive messages on existing signs, wayside exhibits, or memorial plaques.

d.    Small developments such as paved pads, benches, and other features for universal access to signs, wayside exhibits, and memorial plaques in previously disturbed areas or areas inventoried and found not to contain historic properties.

e.    Temporary signage for closures, repairs, detours, safety, hazards, etc. in previously disturbed areas or areas inventoried and found not to contain historic properties.

f.    Memorial plaques placed within established zones that allow for such placement.

11.    Culvert Replacement:  The Streamlined Review Process may be used when culvert replacement will occur within existing cut and fill profiles, and:

a.    The existing culvert and/or associated road, rail bed, or cultural landscape has been determined not eligible for the National Register, either individually or as a contributing element to a historic district or cultural landscape, in consultation with the SHPO/THPO; or

18

      b.     The existing culvert is less than 50 years old.

12.     <u>Reburial of Human Remains and Other Cultural Items Subject to the Native American Graves Protection and Repatriation Act (NAGPRA)</u>:  The Streamlined Review Process may be used for the reburial of human remains and other cultural items subject to NAGPRA.   The Streamlined Review Process may only be used when:

      a.     The reburial is in previously disturbed areas and does not introduce ground disturbance beyond documented disturbance; or

      b.     The reburial is in previously inventoried areas found to not contain historic properties.

Any reburial in NPS-administered areas must be in conformance with NPS policies on cemeteries and burials including cultural resource policies.

13.     <u>Meeting Accessibility Standards in Historic Structures and Cultural Landscapes</u>: The Streamlined Review Process may only be used for the following undertakings intended to meet accessibility standards:

      a.     Reconstruction or repair of existing wheel chair ramps and sloped walkways provided the undertaking does not exceed the width or depth of the area of previous disturbance.

      b.     Upgrading restroom interiors in historic structures within existing room floor area to achieve accessibility, unless the historic features and/or fabric of the restroom contribute to the historic significance of the structure.

14.     <u>Mechanical, Electrical and Plumbing Systems</u>:  The Streamlined Review Process may be used as follows for activities related to mechanical, electrical, and plumbing systems.  Such systems may include HVAC systems, fire detection and suppression systems, surveillance systems, and other required system upgrades to keep park lands and properties functional and protected.

      a.     Park areas, landscapes, buildings, and structures that have been determined not eligible for the National Register in consultation with the SHPO/THPO, may undergo installation of new systems or repair/ upgrading of existing systems in accordance with the Streamlined Review Process.

      b.     Properties that have been determined eligible for the National Register in consultation with the SHPO/THPO may undergo limited upgrading of mechanical, electrical, and plumbing systems.  However, the Streamlined Review Process may not be used for the installation of new systems or complete replacement of these systems.  If proposed activities include the removal of original historic elements or alter the visual character or the property's character-defining materials, features, and spaces, then the Streamlined Review Process may not be used.

19

c.    If the project activities include ground disturbance, archeological monitoring may be appropriate throughout the ground disturbing activities, in accordance with any recommendation of the CRM Team. When monitoring is recommended, members of any appropriate Federally recognized Indian Tribes or Native Hawaiian organizations may be invited to participate in monitoring.

15.    <u>Acquisition of Lands for Park Purposes</u>:  The Streamlined Review Process may be used for the acquisition of land for park purposes, including additions to existing parks.  The second criterion for use of the Streamlined Review Process (identification and evaluation of all types of historic properties within the project APE; see Section III.A.2) does not apply to this activity, provided the acquisition does not include any further treatment or alteration of properties, since access to land for inventory and evaluation prior to NPS acquisition may be limited.  Any known or potential historic properties on the land acquired should be protected from demolition by neglect.  Pursuant to 36 CFR 800.5(a)(2)(vi), demolition by neglect constitutes an adverse effect.  If any undertakings are proposed in conjunction with the acquisition that have the potential to affect historic properties, the Streamlined Review Process may not be used.

16.    <u>Leasing of Historic Properties</u>:  The Streamlined Review Process may be used provided all treatment of historic properties proposed in relation to the leasing action is consistent with undertakings eligible for Streamlined Review, set forth in Section III.C of this PA.  The Streamlined Review Process may not be used where there is a change of use or where a series of individual projects cumulatively results in the complete rehabilitation or restoration of a historic property.

## D.    Adding to List of Undertakings Eligible for Streamlined Review

Any proposed additions or revisions to the list of undertakings eligible for streamlined review must be developed through a region-, state- or park-specific Programmatic Agreement and pursuant to 36 CFR 800.14(b).  The Regional Director or Superintendent, as appropriate, will develop such agreements with SHPOs/THPOs, in consultation with Federally recognized Indian Tribes and the ACHP or others, as appropriate.  If such an agreement is developed by the Superintendent, s/he will notify the Regional Director.  Regional Directors will report the development of supplemental, region-, state-, or park-specific programmatic agreements to the Director on an annual basis.  The NPS FPO will maintain records on supplemental agreements and provide annual notification of any such agreements to all signatories to this agreement.

## IV.    STANDARD REVIEW PROCESS

All undertakings that do not qualify for streamlined review as described in Section III above, will be reviewed in accordance with 36 CFR Part 800.  Superintendents are responsible for compliance with these regulations.  Compliance may also be accomplished through park- and/or project-specific programmatic agreements.  Specific activities required will be undertaken by the

20

Park Section 106 Coordinator, in consultation with appropriate members of the CRM Team. Parks are encouraged to use Servicewide automated project planning and tracking systems, such as the NPS Planning, Environment and Public Comment (PEPC) system, to track and document Section 106 compliance activities and to make such automated systems accessible to compliance partners, including SHPOs/THPOs, Federally recognized Indian Tribes, Native Hawaiian organizations, and/or the ACHP. If a park executes a MOA or PA with consulting parties to resolve adverse effects, the Superintendent will provide an informational copy of the agreement to the Regional Section 106 Coordinator.

## V.    NATIONAL HISTORIC LANDMARKS

The NHPA provides heightened protection for designated National Historic Landmarks (NHLs) through Section 110(f) and the NHPA's implementing regulations (36 CFR 800.10). Specifically, the NHPA requires that Federal agencies shall, to the maximum extent possible, undertake planning and actions necessary to minimize harm to any NHL that may be directly and adversely affected by an undertaking.

Where the other criteria as listed in Section III.A are met, proposed undertakings that may affect a designated NHL may follow the Streamlined Review Process. Where preliminary planning activities indicate that a proposed undertaking has the potential to have an adverse effect on an NHL, prior to initiating a formal consultation process, the Superintendent will initiate an internal review process in accordance with NPS Management Policies to determine alternatives to avoid or minimize the adverse effects and to assess the possibility of impairment.

## VI.    INADVERTENT DISCOVERIES

In the event that historic properties are inadvertently encountered during an undertaking for which review has been previously conducted and completed under Section III or Section IV of this PA, or through other events such as erosion or animal activity, the Superintendent will notify the SHPO/THPO, Federally Recognized Indian Tribe(s), and or Native Hawaiian organization, as appropriate, within 48 hours, or as soon as reasonably possible. The Superintendent in consultation with the Section 106 Coordinator and the appropriate members of the CRM Team, will make reasonable efforts to avoid, minimize, or mitigate adverse effects on those historic properties in consultation with the SHPO/THPO, Federally recognized Indian Tribe (s), and/or Native Hawaiian organization (s), as appropriate. If human remains or other cultural material that may fall under the provisions of NAGPRA are present, the Superintendent will comply with NAGPRA and ARPA. The Superintendent will ensure that any human remains are left in situ, are not exposed, and remain protected while compliance with NAGPRA, ARPA, or other applicable federal, state, and/or local laws and procedures is undertaken.

21

## VII.    EMERGENCY ACTIONS

Emergencies are those actions deemed necessary by the Superintendent as an essential and immediate response to a disaster or emergency declared by the President, a tribal government, or the Governor of a State, or another immediate threat to life or property.  Emergency actions are only those actions required to resolve the emergency at that time and they are limited to undertakings that will be started within thirty (30) days after the emergency has been declared. Such emergency actions will be consistent with the NPS Environmental Safeguards Plan for All-Hazards Emergencies and any other approved servicewide emergency response plans.  The Superintendent will notify the SHPO/THPO within 24 hours of the declared emergency or as soon as conditions permit.

## VIII.    REVIEW AND MONITORING OF PA IMPLEMENTATION

The purpose of the PA review and monitoring process is to ensure NPS protection of historic properties in its stewardship.  This is accomplished through the review of undertakings that were completed during the reporting period, review of programmed undertakings, review of implementation of the PA, and review of completion of training requirements.

### A.    Superintendents Biennial Review and Monitoring Meeting

In order to foster cooperative relations, each Superintendent will, at a minimum, invite consulting parties to a review meeting every two years (biennial), with the first meeting initiated within six months of the signing of this PA by all parties.  If all parties agree that such a meeting is not necessary at that time, the meeting may be waived.  However, Superintendents shall remain responsible for initiating biennial meetings in subsequent years.  More frequent meetings may be appropriate based on specific park circumstances and therefore an alternative meeting schedule may be established, if mutually agreed upon by the parties.

1.    Meetings may be conducted in any mutually agreeable location and/or format, including in- person, video conferencing or teleconferencing.

2.    The primary invitees to each park's biennial review and monitoring meeting will include the applicable SHPO/THPO, Federally recognized Indian Tribes, and Native Hawaiian organizations with an interest in that park's properties. Superintendents may also consider inviting other interested parties, including Pacific Islanders, concessioners, lessees, friends groups, historic societies, or gateway communities, as appropriate.

3.    Superintendents may instead choose to meet individually with some parties, particularly those that have strong interest in specific historic properties.

4.    Attendance and meeting minutes will be recorded and distributed to all invited parties after the conclusion of the meeting.

5.   Specific discussion items may include the following:

    a.   Any documentation pursuant to this PA.

    b.   Any inventories of historic properties developed in the previous two years, or opportunities for future inventory and research, as well as other reports and research results related to historic properties.

    c.   Programmed undertakings that are scheduled, or are likely to be scheduled, for the next two fiscal years.

    d.   Provisions of this PA as well as any project- or program-specific Memoranda of Agreement or Programmatic Agreements.

    e.   Training received by park staff during the reporting period and opportunities for cooperative training arrangements.

    f.   Names of and contact information for the Park Section 106 Coordinator and the CRM Team Members.

## B.   Superintendents Reporting to NPS Regional Directors

In order to inform park program review and potential ACHP evaluation of PA implementation, Superintendents will report biennially to Regional Directors on implementation of the PA. The Biennial Report shall include the streamlined review data prescribed in Section III B of this PA, training completed and basic data demonstrating compliance with the provisions of this PA as outlined in the guidance document for this agreement (Section I.A.2). ACHP, SHPOs, or THPOs may request hard copies of biennial reports.

## C.   Park Section 106 Program Review by NPS Regional Directors, SHPOs, THPOs, and the ACHP

1.   The Regional Director may, at his/her discretion, initiate a review of a park's implementation of this PA. The ACHP, either at its own discretion, or upon request of a Federally recognized Indian Tribe, SHPO/THPO, or Native Hawaiian organization, may at any time raise with the appropriate Regional Director any programmatic or project matters where they wish the Regional Director to review a Park Superintendent's Section106 decisions. The Regional Director will consult with the ACHP, and the Regional Director shall provide a written response to the ACHP, and where applicable, the SHPO or THPO, that documents the outcome of the consultation and the resolution. The Regional Director has the option to suspend a park's use of this PA, and subsequently reinstate it as appropriate.

2.   Documentation of NPS Section106 reviews not already provided to SHPOs, THPOs, and the ACHP will be available for review by the ACHP and the appropriate SHPO/THPO upon request. Individual SHPOs/THPOs who wish to review this documentation are responsible for specifying scheduling, frequency, and types of undertakings of concern to them.

23

**D.    NPS Regional Directors Reporting to the Director of the NPS**

Regional Directors will report biennially to the Director on implementation of this PA within his/her region. Each Regional Biennial Report will be submitted within six (6) months following receipt of Park Biennial Reports by the Regional Director as required in Section VIII.B of this PA. A hardcopy of the biennial reports will be sent to the ACHP and upon request from a SHPO or THPO.

## IX.    SUBSEQUENT AGREEMENTS

A.    Upon execution of this PA, Superintendents are encouraged to evaluate their park's programs and discuss with SHPOs/THPOs, Federally recognized Indian Tribes, Native Hawaiian organizations, and/or the ACHP ways to develop supplemental programmatic agreements for park undertakings that would otherwise require numerous individual requests for comments.

B.    Development of programmatic agreements specific to a project, plan, or park may be negotiated between Superintendents and SHPOs/THPOs, Federally recognized Indian Tribes, Native Hawaiian organizations, the ACHP, and/or other consulting parties where appropriate, pursuant to 36 CFR 800.14(b), and may be independent of or supplement this PA. Superintendents will provide an informational copy of all agreements to the Regional Section 106 Coordinator.

C.    Memoranda of agreement developed to resolve adverse effects for specific projects shall be negotiated between Superintendents and SHPOs/THPOs, Federally recognized Indian Tribes, Native Hawaiian organizations, and/or the ACHP, pursuant to 36 CFR 800.6(c), and shall be independent of this PA  Superintendents will provide an informational copy of all agreements to the Regional Section 106 Coordinator.

## X.    DISPUTE RESOLUTION

A.    Should disputes arise, the Superintendent, SHPO/THPO, and/or the ACHP will consult with the objecting parties to resolve the objection.  All work that is the subject of the dispute will stop until the dispute is resolved in accordance with the procedures in this section.  If the dispute cannot be resolved, all documentation relevant to the dispute will be forwarded to the parties named above.  If the SHPO/THPO objects to a Park Superintendent's decision, the information will be forwarded to the Regional Director.  If the National Park Service objects to the SHPO/THPO's opinion, the information will be forwarded to the ACHP.  If the Regional Director cannot resolve a SHPO/THPO objection, the Regional Director will forward to the ACHP relevant documentation not previously furnished to the ACHP and notify the Director of the dispute. Within thirty (30) days after receipt of all pertinent documentation, the ACHP will either:

24

1.     Provide the Regional Director with a recommendation, with an information copy provided to the Director, which the Regional Director will take into account in reaching a final decision regarding the dispute; or

2.     Notify the Regional Director that it will comment to the Director pursuant to the provisions of 36 CFR 800.7 and proceed to comment. Any ACHP comment provided in response to such a request will be taken into account by the NPS with reference to the subject of the dispute.

B.     In the event the ACHP does not respond within thirty (30) days of receipt of all pertinent documentation, the Regional Director may proceed with his or her recommended resolution.

C.     At the request of any individual, agency, or organization, the ACHP may provide the NPS with an advisory opinion regarding the substance of any finding, determination, or decision made in accordance with this PA or regarding the adequacy of the NPS' compliance with Section 106 and this PA.

## XI.    MONITORING AND TERMINATION

A.     The NPS will convene a meeting of the signatories to this PA within two (2) years of execution of the PA and as needed thereafter, to review implementation of the terms of this PA and determine whether revisions or amendments are needed. Meetings may be conducted in any mutually agreeable location and/or format, including in-person, video conferencing, or teleconferencing. If revisions or amendments are needed, the parties will consult in accordance with 36 CFR 800.14.

B.     This PA may be amended when such an amendment is agreed to in writing by all signatories. When major revisions are proposed to NPS policies that will affect the manner in which the NPS carries out its Section 106 responsibilities, the signatories shall consult to determine whether an amendment to this PA is needed. Any amendments will be effective on the date a copy signed by all of the signatories is filed with the ACHP.

C.     Any party to this PA may terminate it by providing ninety (90) days notice to the other parties, provided that the parties will consult during the period prior to termination to seek agreement on amendments or other actions that would avoid termination. Termination by any Federally recognized Indian Tribe signatory will be limited to termination of this PA on the tribal lands of the subject tribe. In the event of termination, the NPS will comply with 36 CFR Part 800 with regard to individual undertakings otherwise covered by this PA.

## XII.    SEVERABILITY

A.     If any section, subsection, paragraph, sentence, clause, or phrase in this PA is, for any reason, held to be unconstitutional or invalid or ineffective, such decision shall not affect the validity or effectiveness of the remaining portions of this PA.

B.      If any section, subsection, paragraph, sentence, clause, or phrase in this PA is, for any reason, held to be unconstitutional or invalid or ineffective, the signatories shall consult to determine whether an amendment to this PA is needed.


## XIII.   ANTI-DEFICIENCY ACT STATEMENT

The stipulations of this Agreement are subject to the provisions of the Anti-Deficiency Act (31 U.S.C. 1341 (1998). If compliance with the Anti-Deficiency Act alters or impairs NPS ability to implement the stipulations of this Agreement, NPS will consult in accordance with the dispute resolution, amendment or termination stipulations as specified in Sections X and XI of this PA.


ADVISORY COUNCIL ON HISTORIC PRESERVATION

BY:_____ DATE:___11/14/08___
CHAIRMAN

NATIONAL PARK SERVICE

BY:___Mary A. Bomar_____ DATE:___11/14/08___
DIRECTOR

NATIONAL CONFERENCE OF STATE HISTORIC PRESERVATION OFFICERS

BY:___Jay D. Vogt_____ DATE: 11-14-2008
PRESIDENT

26