**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION et al., <br><br>      *Plaintiffs,* <br><br>     *v.* <br><br> U.S. DEPARTMENT OF THE INTERIOR et al., <br><br>      *Defendants.* | No. 26 Civ. 1593 |

## <u>SUPPLEMENTAL DECLARATION OF CHARLES A. BIRNBAUM</u>

I, Charles Alan Birnbaum, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct and based on my personal knowledge:

1.    I am the Founding President and Chief Executive Officer of The Cultural Landscape Foundation ("TCLF") and the author of the *Secretary of the Interior's Standards for Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes* (1996) (the "Standards"), https://irma.nps.gov/DataStore/DownloadFile/514832, which I developed during my tenure as Coordinator of the Historic Landscape Initiative at the National Park Service from 1992 to 2007. This declaration supplements my earlier declaration in this case.

2.    On May 16, 2026, I visited the Lincoln Memorial Reflecting Pool to observe the condition of the basin floor as the ongoing coating project proceeds. This was my most recent visit to the property.

3.    During that visit, I personally observed the following:

    a) The coating that has been applied to the basin floor is not uniform. Different sections of the basin floor display visibly different shades of blue. The

1

variation is significant enough to be readily apparent to a visitor standing in a viewer superior position at the western edge of the basin.

b) The application is mottled, with areas of darker and lighter coloration distributed unevenly across the surfaces that have been coated.

c) Approximately 75% of the basin floor appears to have been coated to date; substantial portions of the basin floor remain visibly uncoated, exposing the underlying gray concrete substrate installed during the 2010–2012 rehabilitation.

4.     The conditions I personally observed are consistent with the conditions reported in *Reflecting Pool Repairs Appear Uneven and Behind Schedule, Officials Say*, by David A. Fahrenthold and Maxine Joselow, published in The New York Times on May 12, 2026. A true and correct copy of this article is attached hereto as **Exhibit D**. That reporting describes that internal Department staff have observed "uneven application of the tinted waterproofing" leaving the pool "mottled in varying shades of blue."

5.     I took photographs of the basin floor during my May 16, 2026, visit. True and correct copies of these photos are attached hereto as **Exhibit E**.

6.     I am aware of Defendants' representation that "the pool basin will be dark and achromatic" ECF No. 12 at 12. Based on what I personally observed on May 16, 2026, the condition of the basin floor now bears no resemblance to that description. The surfaces currently coated in what appears to be the final coating are not achromatic, are not consistent with the historic character or design of the property, and are significantly different from the color of the basin prior to the resurfacing. Accordingly, the color treatment being applied to the Reflecting

Pool will significantly diminish my aesthetic enjoyment of the Reflecting Pool in the ways I described in my May 9, 2026, declaration.

7.      I am also aware of Defendants' representation that "a new coating could be applied over the completed project that would change the color of the concrete surface from American Flag Blue to another color. This could be done by applying a new coat of epoxy primer and tinted polyurea coating." ECF No. 12-1 at 15. Based on my professional experience in the treatment and management of historic designed landscapes, that representation is incomplete and concerning in several respects.

8.      *First*, the casual suggestion that the color of the basin can simply be changed at a later date treats the property as if it were the wall of a house or an ordinary swimming pool rather than a National Register-listed historic resource. It is not. This is why the appropriate treatment of a historic property—particularly a National Register-listed cultural landscape with documented character-defining features—requires careful, deliberate study before any significant alteration is undertaken. *See* Standards at 14.

9.      *Second*, primer and tinted epoxy are not the same materials as the tinted gray concrete substrate that the National Park Service installed during the 2010–2012 rehabilitation, and they will not behave in the same way physically, chemically, or aesthetically over time. The 2010–2012 substrate was engineered specifically to maintain and enhance the basin's character-defining reflective and achromatic qualities. *See* Press Release: AMERICA'S GREAT OUTDOORS: Salazar Announces Successful Renovation of Lincoln Memorial Reflecting Pool (Aug. 7, 2012), https://www.doi.gov/news/pressreleases/AMERICAS-GREAT-OUTDOORS-Salazar-Announces-Successful-Renovation-of-Lincoln-Memorial-Reflecting-Pool (noting that NPS used "[s]pecially-designed tinted concrete" due to its "appearance and reflectivity").

Industrial epoxy coatings are a fundamentally different material system. Adding additional layers of primer and tinted epoxy on top of the layers now being applied does not restore the substrate that NPS chose after extensive study during the last renovation; it further departs from it.

10. *Third*, I am not aware of any indication in the public record that testing was conducted on a sample of the basin to determine how the coating systems now being applied would interact with the underlying concrete substrate before the large-scale project began. The interaction of industrial waterproofing chemistry with the underlying concrete is not something that can be assumed to be benign or reversible without study. Without testing and analysis, there is no assurance that the resurfacing is reversible.

11. For these reasons, Defendants' assurance that the basin can simply be changed over at a future date does not cure the injury that is increasing as the project proceeds. To the contrary, each additional day of application introduces additional coating material and additional inconsistency in the materials and workmanship that contribute to the property's integrity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of May, 2026.

DocuSigned by:

*Charles Birnbaum*

DFC08F76B78B4F2...

Charles A. Birnbaum

4