# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION, et al.<br><br>    *Plaintiffs*,<br><br>       v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et al.,<br><br>    *Defendants*. | No. 1:26-cv-01593<br><br>Hon. Carl J. Nichols |

**BRIEF OF *AMICUS CURIAE* U.S. REPRESENTATIVE LANCE GOODEN IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO PLAINTIFFS'  MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Kevin F. King (D.C. Bar No. 1012403)
  *Counsel of Record*
Paul J. Ray (D.C. Bar No. 1022396)
Matthew Glover (D.C. Bar No. 1034209)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
kking@cov.com

*Counsel for Amicus Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST  OF *AMICUS CURIAE* ................................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT .............................................. 2

I.      Plaintiffs Have Failed to Establish Irreparable Harm Sufficient to Warrant
        Preliminary Injunctive Relief ................................................................................. 3

        A.      The Irreparable-Harm Standard Is More Demanding Than the Standing
                Inquiry ........................................................................................................ 3

        B.      Plaintiffs' Alleged Aesthetic Harm Is Neither Certain Nor Great ........................ 4

II.     The Court Should Exercise Its Equitable Discretion to Deny Relief, Rather Than
        Transforming Every Routine Maintenance Decision Into a Matter for Early
        Judicial Intervention ............................................................................................... 9

        A.      Preliminary Injunctions Are Extraordinary Remedies, Not Routine Ones ............. 9

        B.      The Federal Government's Maintenance Obligations Are Vast—And
                Courts Should Not Micromanage Them ................................................................. 11

CONCLUSION ............................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Alley Cat Allies, Inc. v. U.S. Nat'l Park Service*,
No. 25-cv-04269, 2026 WL 221343 (D.D.C. Jan. 28, 2026)..................................................4, 7

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
121 F.4th 1314 (D.C. Cir. 2024)....................................................................................................3

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959)......................................................................................................................3

*Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*,
344 F. Supp. 3d 158 (D.D.C. 2018).............................................................................................3

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006).........................................................................................2, 3, 7, 10

*Colorado Wild Horse v. Jewell*,
130 F. Supp. 3d 205 (D.D.C. 2015).............................................................................................4, 8

*Comm. of 100 on Federal City v. Foxx*,
87 F. Supp. 3d 191 (D.D.C. 2015)................................................................................................5

*Duncan's Point Lot Owners Ass'n, Inc. v. FERC*,
522 F.3d 371 (D.C. Cir. 2008)....................................................................................................11

*EPIC v. DOJ*,
15 F. Supp. 3d 32 (D.D.C. 2014)..................................................................................................4

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000)....................................................................................................................10

*Friends of Animals v. U.S. Bureau of Land Mgmt.*,
232 F. Supp. 3d 53 (D.D.C. 2017)................................................................................................3

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975)......................................................................................................9

*Fund For Animals v. Norton*,
281 F. Supp. 2d 209 (D.D.C. 2003)...........................................................................................4, 8

*Habitat for Horses v. Salazar*,
745 F. Supp. 2d 438 (S.D.N.Y. 2010).........................................................................................4, 8

*Metro. Dist. Comm'n v. Codex Corp.*,
395 Mass. 522 (1985) ...................................................................................................................8

*Munaf v. Geren*,
   553 U.S. 674 (2008)...........................................................................................................2, 9

*\*Nat'l Parks Conservation Ass'n v. Semonite*,
   282 F. Supp. 3d 284 (D.D.C. 2017) ...........................................................4, 6, 7, 10

*Sampson v. Murray*,
   415 U.S. 61 (1974)..................................................................................................................3

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ........................................................................................9, 10

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)...........................................................................................................10

*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) ......................................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................................................9

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ...................................................................................2, 3, 7

iii

**INTEREST OF *AMICUS CURIAE***[1]

Representative Lance Gooden is a Member of the U.S. House of Representatives representing Texas's 5th congressional district.  Representative Gooden serves on the House Committee on the Judiciary and its Subcommittee on the Administrative State, Regulatory Reform, and Antitrust.  In that capacity, Representative Gooden has a direct institutional interest in the proper scope of judicial review of executive-branch maintenance and management decisions under the Administrative Procedure Act and similar statutes.  Representative Gooden likewise has an institutional interest in preserving the extraordinary nature of preliminary injunctive relief, including the requirement for irreparable harm, so that the judiciary does not micromanage the Executive Branch's day-to-day stewardship of federal property.

Representative Gooden takes no position on the ultimate merits of Plaintiffs' statutory claims. His concern is narrower: Plaintiffs have not demonstrated the imminent, irreparable harm that equitable principles demand before a court grants extraordinary preliminary injunctive relief.

Undersigned counsel conferred with counsel for Plaintiffs and Defendants and is authorized to state that both Plaintiffs and Defendants consent to the filing of this brief.

---

[1] No party or party's counsel authored this brief in whole or in part.  Moreover, no party or party's counsel made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than *amicus* or undersigned counsel made such a monetary contribution.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This case presents the question whether a subjective disagreement over the shade of a waterproofing sealant applied to the Lincoln Memorial Reflecting Pool—a subsurface material that will sit below the waterline—constitutes the kind of "certain and great" irreparable harm that warrants emergency judicial intervention.  The answer, under settled precedent, is no.

Two overarching points support that conclusion.  *First*, Plaintiffs have not satisfied the stringent standard for irreparable harm.  To obtain preliminary injunctive relief, a plaintiff must show that the alleged harm is "certain and great," "actual and not theoretical," and "of such imminence that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (emphasis omitted) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  Plaintiffs' alleged harms fail that test at every turn: they are speculative—premised on an inaccurate characterization of a not yet completed renovation project—and rest on subjective aesthetic preferences that courts have repeatedly held are insufficient to justify preliminary injunctive relief.

*Second*, equitable discretion counsels against Plaintiffs' request for preliminary relief.  A preliminary injunction is "an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations omitted).  The federal government maintains a broad range of monuments, parks, and historic structures, and it makes countless operational decisions—about paint, landscaping, scaffolding, signage, and the like—in the ordinary course of managing those public spaces.  If a subjective disagreement over the shade of a sealant is sufficient to trigger emergency judicial intervention, few if any routine maintenance decisions would be safe from litigation.  The Court has discretion in deciding whether to grant or deny preliminary injunctive relief, and it should exercise that authority in a way that preserves

meaningful limits on the availability of such relief.  Plaintiffs' arguments, in contrast, would open the floodgates.

## ARGUMENT

### I.    Plaintiffs Have Failed to Establish Irreparable Harm Sufficient to Warrant Preliminary Injunctive Relief.

#### A.    The Irreparable-Harm Standard Is More Demanding Than the Standing Inquiry.

Even when an aesthetic interest might satisfy Article III's injury-in-fact requirement,[2] a plaintiff seeking a preliminary injunction must satisfy a far more demanding test.  As another judge of this Court has recognized, "there is a wide and apparent gap between the two standards." *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 65 (D.D.C. 2017). "[P]arties seeking a preliminary injunction … must clear a 'high standard' and demonstrate that their injury is 'both certain and great.'"  *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1332 (D.C. Cir. 2024) (quoting *England*, 454 F.3d at 297–98).  The harm "must be actual and not theoretical," and the movant must show that the "injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *England*, 454 F.3d at 297 (quoting *Wis. Gas*, 758 F.2d at 674).

A showing of irreparable injury "is the *sine qua non* for obtaining a preliminary injunction," it "is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence."  *Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (citations omitted).  And "the basis of injunctive relief in the federal courts has always been irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959)).

---

[2] *Amicus* takes no position on whether Plaintiffs have established Article III standing.

Critically, irreparable harm must be assessed from an objective standpoint, rather than dictated by a particular plaintiff's subjective views about the certainty and gravity of his or her injury. *See EPIC v. DOJ*, 15 F. Supp. 3d 32, 44–45 (D.D.C. 2014). A plaintiff's personal disagreement with the government's aesthetic choices—however sincerely held—does not, by itself, clear this high bar. Moreover, a minor diminution, rather than elimination, of aesthetic enjoyment does not give rise to irreparable harm. Just as "there is 'no enforceable right to observe a particular number of animals,'" *Colorado Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 219–20 (D.D.C. 2015) (quoting *Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438, 448 (S.D.N.Y. 2010)); *see also Alley Cat Allies, Inc. v. U.S. Nat'l Park Service*, No. 25-cv-04269, 2026 WL 221343, at *13 (D.D.C. Jan. 28, 2026), there is no enforceable right to view monuments, parks, or other public sites in ways that maximize one's enjoyment of them.

Procedural harm standing alone is insufficient. As another judge of this Court held in *National Parks Conservation Ass'n v. Semonite*, "[p]rocedural harm arising from a [National Environmental Policy Act ("NEPA")] violation coupled 'with irreparable aesthetic injuries' *can* constitute irreparable harm," but where "plaintiffs have not established *irreparable* aesthetic injuries . . . procedural harm standing alone is insufficient to constitute irreparable harm." 282 F. Supp. 3d 284, 290 (D.D.C. 2017) (first emphasis added) (quoting *Fund For Animals v. Norton,* 281 F. Supp. 2d 209, 222 (D.D.C. 2003)). Plaintiffs' National Historic Preservation Act and NEPA procedural claims, even if ultimately proven to be meritorious, cannot carry the irreparable-harm burden by themselves.

## B.     Plaintiffs' Alleged Aesthetic Harm Is Neither Certain Nor Great.

Applying these principles, Plaintiffs cannot demonstrate the "certain and great" irreparable harm required to justify preliminary injunctive relief. Their claims fail on multiple, independent grounds.

1.    ***Plaintiffs' factual premise is incorrect.***  Plaintiffs' motion is built on the assertion that the Reflecting Pool is being painted "vivid blue" and will look like a "resort" or "swimming pool." TRO Mot., ECF 2, at 3, 5.  But the Government has represented in a sworn declaration that the final surface will be a dark, low-chroma blue, intentionally selected to maintain the Reflecting Pool's reflective qualities.  *See* Griess Decl., ECF 12-1, ¶¶ 21–23; Ex. G at 3–5; Ex. J at 2.  Plaintiffs' characterization of the outcome as something akin to a hotel swimming pool is thus, at best, premature speculation about a potential future injury.

To the extent Plaintiffs claim an injury based on the *current* appearance of the Reflecting Pool, while renovations are underway (as opposed to the appearance of the Reflecting Pool once the renovations are complete), their claims would open a new and problematic doctrinal front.  So far as *amicus* is aware, no court has ever recognized aesthetic objections to the temporary, interim appearance of a public space during construction as an adequate basis for preliminary injunctive relief.[3]  *Cf. Committee of 100 on Federal City v. Foxx*, 87 F. Supp. 3d 191, 204 (D.D.C. 2015) ("a temporary closure of a park or recreation area [does not] constitute irreparable harm for purposes of a preliminary injunction").  Accepting such claims would give anyone who occasionally visits a public space the ability to superintend the process by which routine maintenance and renovation projects are carried out, and would entangle federal courts in technical disputes about project-

---

[3] The apparent absence of authority allowing such claims makes sense, because temporary aesthetics are not a reason to alter the course of maintenance and renovation projects.  Those projects by their very nature temporarily disrupt the visual appearance of the work site, in the service of a longer-term benefit once the project is complete.  Put differently, the purpose of a construction project is not to ensure the aesthetics of the site *during construction*; otherwise, no one would ever renovate their home.  Scaffolding on the Capitol dome, for example, detracts from its "aura of seriousness, its aesthetic honesty, . . . and its tenor of quality," TRO Mot. at 5, yet that was no basis to halt necessary repairs on the structure.

management decisions.  Serving as a *de facto* construction foreman is not part of the Court's traditional role.

      **2.**      ***The alleged harm is speculative because the project is incomplete.***  The final appearance of the Reflecting Pool—and in particular the color as it appears to visitors and the extent to which the surface reflects light—cannot be judged until the project is completed and the pool is refilled with water.  *See, e.g.*, Griess Decl. ¶¶ 34–35, 45 & Ex. J at 2.[4]

      The D.C. Circuit and judges of this Court have found aesthetic injuries too speculative to support preliminary relief where the ultimate visual impact is uncertain.  The plaintiffs in *Semonite*, for example, sought to enjoin construction of electrical transmission lines along the James River in Virginia.  *See* 282 F. Supp. 3d at 286.  At the time the court considered the plaintiffs' preliminary injunction motion, only one part of the project was imminent: construction of "underwater foundations" that would "extend a mere seven feet above the river—roughly the height of a person standing on a boat."  *Id.* at 288–89.  The court held that plaintiffs' objections regarding the foundations were not sufficiently "great" to establish irreparable harm because (1) it was unclear "whether [the foundations would] even be visible from a number of the historical sites in the region," (2) any interference with the plaintiffs' "recreational and aesthetic interests" would be no greater than that caused by "the various ferries and ships already traversing the river," and (3) there was "ample time" to litigate plaintiffs' concerns in the ordinary course.  *Id.* at 289.  Claims about how visitors would react to the construction were, the court explained, "speculative at best."  *Id.* at 291.  The same reasoning applies here with even greater force:  the subsurface sealant at issue will sit beneath the waterline, the sealant may not be visible from many parts of the surrounding

---

[4] This characteristic distinguishes the present case from others in which the nature of the completed project and its effects on the plaintiff(s) are clear and undisputed.

area, and its ultimate effect on the Reflecting Pool's appearance will depend on how light interacts with the water—something that cannot be evaluated until the project is complete.

**3.    *A minor diminution in aesthetic enjoyment does not constitute irreparable harm.***
Even were Plaintiffs correct that the new sealant will give the Reflecting Pool a perceptibly different hue, a change in sealant color does not sufficiently vitiate their enjoyment of the Reflecting Pool to warrant a preliminary injunction.  There is no question that Plaintiffs (and the public at large) will continue to have the ability to frequent the Reflecting Pool, enjoying its tranquility, simplicity, and beauty.  *Amicus* understands that, once completed, the renovations challenged here will not reduce access to the Reflecting Pool or any nearby facilities, and likewise will not block any sightlines to the Reflecting Pool from the surrounding area.  The *only* thing that will change is, at most, the hue of the material at the bottom of the Reflecting Pool—a distinction many visitors will never notice.

Even taking Plaintiffs' position at face value—that the "correct" shade is gray rather than dark blue—a disagreement over the precise shade of a sealant that sits below the waterline does not rise to the level of severity contemplated by the D.C. Circuit's irreparable-harm standard. While *amicus* does not question Plaintiffs' claim that their personal preference is for a dark gray sealant, nor that this preference is a strong one, the operative question is whether an aesthetic injury resulting from the difference between dark gray and dark navy is objectively "certain and great." *Chaplaincy*, 454 F.3d at 297 (quoting *Wisc. Gas Co.*, 758 F.2d at 674).  The answer is "no," for the same reasons as in *Semonite*.

*Alley Cat Allies*, 2026 WL 221343, also illustrates the point.  The *Alley Cat Allies* plaintiffs sought to enjoin the National Park Service from temporarily closing portions of a recreational trail to facilitate a nearby construction project.  *See id.* at *1.  The plaintiffs used sites along the trail to

feed and care for feral cats, and they alleged that the closures would impede the feeding program and prevent them from "observing and enjoying" the cats. *Id.* The court nevertheless declined to grant preliminary injunctive relief. As the court observed, the plaintiffs failed to show irreparable harm because the challenged trail closures affected only half of the feeding sites and preserved the plaintiffs' ability to observe most (although not all) of the cats in the area. *See id.* at *12–13 (noting that "a sufficient number" of cats would remain viewable to "satisfy Plaintiffs' [members'] interest in observing and enjoying them" (alteration in original) (quoting *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 219–20 (D.D.C. 2015))). Mere diminution in the number of cats in the viewing areas did not qualify as irreparable harm because there is "no enforceable right to observe a particular number of animals." *Id.* at *13 (quoting *Habitat for Horses*, 745 F.Supp.2d at 448).

By the same token, there is no enforceable right to view the Reflecting Pool in a way that maximizes a particular plaintiff's personal enjoyment of it. Even if the renovation project will make the Reflecting Pool a less attractive destination for Plaintiffs, and even if they will not be able to experience what they believe is the full range of its proper aesthetic appeal, those minor losses of enjoyment at the margin simply are not serious enough to justify emergency judicial intervention. And even if Plaintiffs' subjective experience of the Reflecting Pool would be significantly altered by the new sealant, they have offered no evidence or argument that the difference in experience would be *objectively* great, as is required for preliminary relief.

The Massachusetts Supreme Judicial Court's decision in *Metropolitan District Commission v. Codex Corp.*, 395 Mass. 522 (1985), is also instructive. There, the court vacated a preliminary injunction that had prohibited construction of a fence because the "only irreparable harm" asserted consisted of "the 'aesthetic injury . . . ' that passersby [would] sustain in seeing the fence." *Id.* at 526. The court "question[ed] whether the alleged concern of any passersby . . .

would be either harm or irreparable" and characterized it as "a passing concern at most." *Id.* Although the Reflecting Pool differs from a fence on private land in several ways, the same basic concept is relevant here: objections to the shade of a subsurface sealant, viewed through water, are at most a passing concern—not the kind of "certain and great" injury that warrants the extraordinary remedy of preliminary injunctive relief.

Finally, it is important to place Plaintiffs' claims in the context of the broader National Mall. The Reflecting Pool has always been an integral part of the larger Mall landscape, and visitors experience the Pool as such. Regardless of the modest change to the color of the Pool's subsurface sealant, the Mall will continue to offer visitors ample—indeed, superabundant— opportunities for enjoyment, recreation, and contemplation. If the loss of "a small percentage" of an animal population does not constitute irreparable harm, *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975), neither does a modest change to one aesthetic detail of one feature of the Mall landscape. *See also Fund for Animals v. Mainella*, 294 F. Supp. 2d 46, 58 (D.D.C. 2003) (no irreparable harm from "limited" bear hunt that would not "significantly reduce the black bear population").

## II. The Court Should Exercise Its Equitable Discretion to Deny Relief, Rather Than Transforming Every Routine Maintenance Decision Into a Matter for Early Judicial Intervention.

### A. Preliminary Injunctions Are Extraordinary Remedies, Not Routine Ones.

Even setting aside Plaintiffs' failure to establish irreparable harm, the Court should exercise its equitable discretion to deny preliminary relief. "A preliminary injunction is 'an extraordinary and drastic remedy.'" *Munaf*, 553 U.S. at 689–90 (quoting 11A Wright & Miller, *Federal Practice & Procedure* § 2948 (2d ed. 1995)). It should be entered "only upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). And it is "never awarded as of right." *Id.* at 24; *see also Sherley v. Sebelius*, 644 F.3d 388, 398

(D.C. Cir. 2011) (same).  These principles carry significant weight when the requested injunction would draw the court into ongoing supervision of a federal agency's routine maintenance decisions.

Courts of equity "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  And they retain equitable discretion to deny injunctive relief even where the plaintiff is likely to succeed on the merits.  In *Weinberger*, the Supreme Court reversed an injunction halting Navy operations that violated the Clean Water Act, stating that the "grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."  *Id.* at 313.

*Semonite* illustrates this principle in an analogous context.  There, the court exercised its discretion to deny a preliminary injunction even though "the plaintiffs ha[d] made a powerful argument on the merits," because they had failed to demonstrate irreparable harm.  282 F. Supp. 3d at 288.  As the court explained, "failure to show any irreparable harm is [] grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Id.* (alteration in original) (quoting *Chaplaincy*, 454 F.3d at 297).  The same result is warranted here.

The Supreme Court sounded a similar note of caution in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, where it affirmed that "a district court in a Clean Water Act citizen suit properly may conclude that an injunction would be an excessively intrusive remedy, because it could entail continuing superintendence of the permit holder's activities by a federal court—a process burdensome to court and permit holder alike."  528 U.S. 167, 193 (2000).

That concern applies here with particular force:  an injunction requiring the National Park Service to halt the maintenance project and submit to ongoing judicial supervision of its sealant color choices would be precisely the kind of "excessively intrusive remedy" the Supreme Court cautioned against.

**B.     The Federal Government's Maintenance Obligations Are Vast—And Courts Should Not Micromanage Them.**

The National Park Service manages hundreds of park units encompassing tens of millions of acres.  The agency makes countless day-to-day maintenance and operational decisions:  what color to paint buildings, where to place temporary barriers, what fonts and materials to use on signage, how often and how high to cut grass, where to erect scaffolding and how long to leave it in place, and so on.  *Cf. WildEarth Guardians v. Jewell*, 738 F.3d 298, 312 (D.C. Cir. 2013) (recognizing that "[t]he NEPA process involves an almost endless series of judgment calls" (quoting *Duncan's Point Lot Owners Ass'n, Inc. v. FERC*, 522 F.3d 371, 376 (D.C. Cir. 2008))).

If a subjective disagreement over the shade of a sealant is sufficient to warrant emergency judicial intervention during the construction process, there is no logical limiting principle.  Every landscaping decision, every signage redesign, every coat of paint on a historic structure becomes a potential candidate for a temporary restraining order.  That is not what the equitable tradition contemplates.[5]

The Reflecting Pool project at issue here is, at its core, a maintenance endeavor intended to address persistent leaks—approximately 25 million gallons of water lost annually—and deteriorating concrete.  *See* Griess Decl. ¶ 13.  Preferences regarding an aesthetic component—the

---

[5] To be sure, there may be construction or other projects involving federal property that go beyond routine maintenance and may be appropriately subject to judicial review and potential injunctive relief.  The Court need not identify that dividing line because it is clear that upkeep of the Reflecting Pool does not cross it.

choice of dark blue over dark gray for a subsurface sealant—are, in the absence of other concrete, real-world harms (such as increased costs to visitors or risks to their safety), aesthetic harms *in vacuo*. Such harms, standing alone, are too insubstantial to justify a discretionary exercise of the Court's equitable powers.

## CONCLUSION

There are undoubtedly circumstances in which aesthetic harms would satisfy the demanding test for preliminary injunctive relief. But this case does not involve the sort of serious, concrete, and imminent harms necessary to fall within that category. For that reason and the others given above, the Court should deny Plaintiffs' motion for a temporary restraining order and preliminary injunction.

Respectfully submitted,

*/s/ Kevin F. King*

Kevin F. King (D.C. Bar No. 1012403)
  *Counsel of Record*
Paul J. Ray (D.C. Bar No. 1022396)
Matthew Glover (D.C. Bar No. 1034209)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
kking@cov.com

*Counsel for Amicus Curiae*

May 20, 2026

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, an electronic copy of the foregoing *Amicus Curiae* brief was filed with the Clerk of Court for the United States District Court for the District of Columbia using the Court's CM/ECF system and was served electronically by the Notice of Docket Activity upon registered CM/ECF participants.

Respectfully submitted,

 /s/ *Kevin F. King*
Kevin F. King (D.C. Bar No. 1012403)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
kking@cov.com