**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE CULTURAL LANDSCAPE
FOUNDATION *et al.*,

                *Plaintiffs*,

    *v.*

U.S. DEPARTMENT OF THE INTERIOR *et al.*,

                *Defendants*.

No. 26 Civ. 1593

**FIRST AMENDED
COMPLAINT**

## INTRODUCTION

1.      The Lincoln Memorial Reflecting Pool (the "Reflecting Pool") in Washington, D.C., is one of the most iconic designed landscapes in the world. Completed in 1924 on the central axis of the National Mall, it has defined the visual and experiential character of the nation's capital for over a century. The Reflecting Pool's profound reflective quality—achieved through deliberate design choices, including the dark color of its basin—creates the sweeping mirror image of the Lincoln Memorial and the Washington Monument that millions of visitors experience every year.

2.      The dark grey, achromatic basin was not incidental to the design. It *was* the design. The 1999 National Park Service Cultural Landscape Report for the Lincoln Memorial Grounds specifically identifies the dark-tiled basin as a character-defining feature of the historic landscape, noting that "the dark color of the tile created the illusion of greater depth and a more profound reflection."[1]

---

[1] U.S. Department of the Interior, *Cultural Landscape Report, West Potomac Park, Lincoln Memorial Groups* at 33 (Aug. 1999), https://npshistory.com/publications/linc/clr-lincoln-memorial-grounds.pdf [https://perma.cc/DHN3-7NYQ] ("1999 CLR").

3.      But all that changed when Defendants engaged a swimming pool contractor to resurface the Reflecting Pool, changing the color and material of the underwater basin with a blue epoxy/polyurea coating.

4.      Shockingly, Defendants started altering the historic character of the Reflecting Pool without following Congressionally mandated procedures. Of particular importance, Section 106 of the National Historic Preservation Act ("NHPA") requires agencies to engage in a process of consultation *before* making changes to historic properties. Indeed, Congress passed the NHPA in 1966 to forestall precisely this kind of unconsidered, wanton destruction of historic properties.

5.      The Reflecting Pool and its surrounding landscape are listed in the National Register of Historic Places as part of the National Mall Historic District. Accordingly, before making any changes to the Reflecting Pool, Defendants were obligated to follow the Section 106 procedures. This includes consulting with various interested parties such as experts and nonprofit organizations with relevant expertise that provide input on proposed changes.

6.      In response to pressure from the White House and agency leadership, Defendants undertook this resurfacing without conducting the standard Section 106 review. Instead, Defendants conducted a "streamlined" review which is reserved for "in-kind" replacements and repairs of historic properties that do not alter their historic character. ECF No. 12-11 at 11. But as Defendants' own analysis showed, the project did *not* "[r]eplace historic features or elements in kind" and instead "[a]dd[ed] non-historic features/elements to a historic structure," "[a]lter[ed] or remove[d] features/elements of a historic setting or environment," and "[a]dd[ed] non-historic features/elements . . . to a historic setting or cultural landscape," and was thus "not eligible" for streamlined review. ECF No. 12-10 at 3, 5.

7.      Because Defendants bypassed the standard Section 106 process, no consulting parties have been notified, engaged, or given an opportunity to participate and provide their expertise. This latest desecration of the reflecting pool is part of a pattern—epitomized most notably by the rush to destroy the East Wing of the White House—in which this Administration willfully disregards legal limits established by Congress.

8.      Defendants also flouted the requirements of the National Environmental Policy Act ("NEPA"), which requires agencies to consider the effect on the environment before undertaking projects with a potential environmental impact. Defendants have incorrectly asserted an exemption from NEPA for "routine" maintenance, ECF No. 12-9, even as President Trump keeps reminding us that this is a transformational project that will make the pool look "more beautiful" than it ever did.[2]

9.      Because of the resurfacing, the historic character of the Reflecting Pool has been fundamentally altered.  The pool is visibly different today than it was before Defendants undertook this project. Exacerbating the injury, immediately after Defendants purported to finish resurfacing and refilling the pool, an algal bloom took over. Defendants took a number of haphazard steps to deal with the algae, and within days the blue liner applied to the bottom of the pool began fraying and peeling. Multiple dead ducks have been reported in the pool and its immediate vicinity.

10.     The persistent problems with the pool are the product of Defendants' rushed and poorly conceived plans. And every day that Defendants forge ahead without following the procedures required by law, Plaintiffs and others are deprived of information and ability to

---

[2] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 9, 2026, at 17:43 ET), https://truthsocial.com/@realDonaldTrump/posts/116376930602843706 [https://perma.cc/32MR-U5NK].

participate in the review process that Congress provided for by law. The Court should step in and require Defendants to comply with the laws they have bypassed.

11.    Plaintiffs—a leading nonprofit organization dedicated to education about and promoting informed stewardship of historic designed landscapes and one of the foremost national authorities on national policies for managing change at and the treatment of cultural landscapes— seek declaratory and injunctive relief requiring Defendants to halt further resurfacing of the Reflecting Pool basin, to disclose and provide to Plaintiffs all plans and documentation relating to the undertaking so that Plaintiff The Cultural Landscape Foundation ("TCLF") may participate as a consulting party in the Section 106 review, and to complete that deliberative process before any further alteration of the basin proceeds.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

13.    Venue is proper in this District under 28 U.S.C. § 1391(e). The Reflecting Pool is located in this District, a substantial part of the events and omissions giving rise to these claims occurred here, and Defendants are agencies, officers, or employees of the United States acting in their official capacities.

## PARTIES

14.    Plaintiff THE CULTURAL LANDSCAPE FOUNDATION is a nonprofit, tax-exempt organization established in 1998 with its principal place of business in Washington, D.C. TCLF's mission is to connect people to places by educating and engaging the public to make our shared landscape heritage more visible, identify its value, and empowering its stewards. TCLF pursues that mission through its four core programs: its *What's Out There* database, North

America's largest and most exhaustive database of cultural landscapes; *Pioneers of American Landscape Design*, an in-depth multimedia library chronicling the lives of significant landscape architects and educators; *Landslide*, an ongoing collection of important landscapes and landscape features that are threatened; and *The Cornelia Hahn Oberlander International Landscape Architecture Prize*, a biennial prize in landscape architecture with a $100,000 monetary award.

15.     In addition, TCLF engages in advocacy and engages with governments on proposed projects that affect cultural landscapes. As part of this effort, TCLF has an established practice of participating as a consulting party in Section 106 proceedings for significant, designed cultural landscapes. It has previously requested and obtained consulting party status in Section 106 proceedings related to historic properties in the National Mall area, including the White House Visitor Screening Facility and Lafayette Park.

16.     TCLF has inquired with the National Park Service about the Reflecting Pool resurfacing project and requested consulting party status in any Section 106 proceeding relating to the project.

17.     Defendants' failure to initiate and conduct the standard Section 106 process before commencing the basin resurfacing and their ongoing refusal to disclose information about the undertaking deprives TCLF of its ability to participate and engage in the deliberative processes that comprise Section 106: to be notified as a prospective consulting party and/or member of the public; to petition to become a consulting party; and—whether as a formal consulting party or as a member of the public—to receive and review plans and documentation regarding the undertaking and its effects on the historic property and to submit expert comments on the historic significance of the character-defining feature at issue. That deprivation directly impairs TCLF's

ability to fulfill the core advocacy and stewardship functions that constitute its organizational mission and constitutes a concrete, ongoing injury.

18.     Plaintiff CHARLES A. BIRNBAUM, FASLA, FAAR, is the founder, President, and CEO of TCLF and resides in the Washington, D.C. metropolitan area. From 1992 to 2007, Mr. Birnbaum served as coordinator of the National Park Service's Historic Landscape Initiative, and during this time he authored *The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes* (1996) (the "*Landscape Guidelines*"), the governing federal framework for the preservation and treatment of historic landscapes, including the Lincoln Memorial Grounds and the Reflecting Pool. He is a recognized national authority on the identification, documentation, and management of change of significant historic designed landscapes. Since this lawsuit was initially filed, Mr. Birnbaum has visited the Reflecting Pool multiple times, which has been a materially worse experience due to Defendants' alteration of the historic structure.

19.     Mr. Birnbaum has visited the National Mall and the Reflecting Pool on numerous occasions, both in his professional capacity and for personal enjoyment. The Lincoln Memorial Grounds and the Reflecting Pool have been a cherished part of his personal life in Washington, D.C. During the COVID-19 pandemic, he found particular solace in walking around the Lincoln Memorial and the Reflecting Pool. Since that time, the Lincoln Memorial Grounds and the Reflecting Pool have been his go-to place for walking, reflecting, and taking respite from the demands of his work. In recent years, when he is not traveling, he visits the Lincoln Memorial and the Reflecting Pool approximately once a month and plans to continue visiting them with at least the same frequency in the future.

20.     Due to his training as a landscape architect with deep experience at NPS, including his authorship of the *Landscape Guidelines*, Mr. Birnbaum has a heightened appreciation for the specific design qualities that make the Reflecting Pool significant: the grey-tinted, achromatic concrete basin of the Reflecting Pool as the source of the pool's profound reflective depth. The resurfacing of the basin in a blue epoxy/polyurea coating has materially degraded Mr. Birnbaum's aesthetic experience. Mr. Birnbaum's aesthetic enjoyment of the Reflecting Pool—as a historic designed landscape whose character he has documented, championed, and personally appreciated over many years—has been concretely harmed by Defendants' alteration of its character-defining features and the resulting defects, including uneven coloration, chipped paint, and rapid accumulation of algae. He will continue to suffer this aesthetic injury unless and until the historic character of the pool is restored.

21.     Defendant U.S. DEPARTMENT OF THE INTERIOR ("DOI") is a federal agency headquartered in Washington, D.C. The Department of the Interior oversees the National Park Service, which manages the National Mall and Memorial Parks, including the Lincoln Memorial Grounds and the Reflecting Pool. The Department of the Interior's spokesperson has publicly confirmed that the basin resurfacing project is being carried out under its authority.

22.     Defendant DOUG BURGUM is the Secretary of the Interior. He is sued in his official capacity. President Trump has publicly stated that he worked with Secretary Burgum on the Reflecting Pool resurfacing project. The Secretary is responsible for the supervision of public business related to the National Park Service, including the management of the Reflecting Pool and the Lincoln Memorial Grounds.

23.     Defendant NATIONAL PARK SERVICE ("NPS") is a bureau within the Department of the Interior, headquartered in Washington, D.C. NPS administers the National

Mall and Memorial Parks, of which the Lincoln Memorial Grounds, including the Reflecting Pool, are a part. NPS is the federal Agency Official responsible for compliance with Section 106 of the National Historic Preservation Act for undertakings affecting historic properties within its jurisdiction.

24.    Defendant JESSICA BOWRON is the Acting Director of the National Park Service. She is sued in her official capacity. The NPS Director is responsible for the supervision, management, and control of National Park System units, including the National Mall and Memorial Parks.

## LEGAL BACKGROUND

25.    In relevant part, the NHPA provides: "The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State . . . prior to the approval of the expenditure of any Federal funds on the undertaking . . . shall take into account the effect of the undertaking on any historic property." 54 U.S.C. § 306108.

26.    An "undertaking" under Section 106 means any "project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including . . . those carried out by or on behalf of a federal agency; . . . those carried out with Federal financial assistance;" and "those requiring a Federal permit, license, or approval." 54 U.S.C. § 300320(1)-(3); 36 C.F.R. § 800.16(y). An agency's physical resurfacing of a historic property it manages and funds with federal resources is an undertaking.

27.    A "historic property" is "any prehistoric or historic district, site, building, structure, or object included on, or eligible for inclusion on, the National Register" of Historic Places. 54 U.S.C. §§ 300308, 300311. The National Mall Historic District, which includes the

Lincoln Memorial Grounds and the Reflecting Pool, is a listed property on the National Register of Historic Places.

28.     The obligation to "take into account" the effect on historic property requires the agency to follow the mandatory consultative process set forth in the regulations at 36 C.F.R. Part 800. That process requires the Agency Official to: initiate the Section 106 process and identify consulting parties, *id.* § 800.3; identify historic properties that may be affected by the undertaking, *id.* § 800.4; assess adverse effects, *id.* § 800.5; and, where adverse effects exist, attempt to resolve them through consultation, *id.* § 800.6. The public must be provided information about the undertaking and its effects on historic properties and given an opportunity for comment and input before the undertaking proceeds. *Id.* § 800.2(d)(2). Throughout this process, the Agency Official is subject to documentation requirements that are designed to "enable any reviewing parties to understand" any "determination, finding, or agreement" under the regulations. *Id.* § 800.11(a).

29.     Critically, organizations with a demonstrated interest in the effects of an undertaking on historic properties—like TCLF—may participate as consulting parties in the Section 106 process. *Id.* § 800.2(c)(5). The Agency Official "shall consider all written requests of individuals and organizations to participate as consulting parties and, in consultation with the [State or Tribal Historic Preservation Officers] and any Indian tribe upon whose tribal lands an undertaking occurs or affects historic properties, determine which should be consulting parties." *Id.* § 800.3(f)(3).

30.     Additionally, because "[t]he views of the public are essential to informed Federal decisionmaking in the section 106 process," the Agency Official "shall seek and consider the

9

views of the public" and must "provide the public with information about an undertaking and its effects on historic properties and seek public comment and input." *Id.* §§ 800.2(d)(1)-(2).

31.     The Section 106 process must be completed "prior to the approval of the expenditure of any Federal funds on the undertaking." 54 U.S.C. § 306108; *see also* 36 C.F.R. § 800.1(c) ("The agency official must complete the section 106 process 'prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license.'").

32.     Pursuant to 36 C.F.R. § 800.14(b), an agency may establish a "programmatic agreement" to govern certain repetitive activities, such as "routine management activities."

33.     In 2008, NPS signed the *Programmatic Agreement Among the National Park Service (U.S. Department of the Interior), the Advisory Council on Historic Preservation, and the National Conference of State Historic Preservation Officers for Compliance with Section 106 of the National Historic Preservation Act* (the "2008 PA"), ECF No. 12-11. It established a "streamlined" review process for certain undertakings such as preservation, maintenance, and repair of historic properties. For projects that qualify for streamlined review, no consultation is generally required under Section 106. *Id.* at 9.

34.     Under the 2008 PA, "[u]se of the Streamlined Review Process is limited to actions for retaining and preserving, protecting and maintaining, and repairing and replacing *in-kind*, as necessary, materials and features, consistent with the Secretary of the Interior's Standards for the Treatment of Historic Properties (Standards) and the accompanying guidelines." *Id.* at 11 (emphasis added). The specific examples cited include "Repainting *in the same color as existing, or in similar colors or historic colors* based upon an approved historic structure report, cultural landscape report, or a historic paint color analysis." *Id.* at 12 (emphasis added).

35.     The National Environmental Policy Act (NEPA) "ensures that the agency and the public are aware of the environmental consequences of proposed projects." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 177 (2025). Like NHPA, NEPA's procedural requirements "helps agencies to make better decisions and to ensure good project management." *Id.*

36.     NEPA requires every agency to issue an Environmental Impact Statement for any proposed agency action that has "a reasonably foreseeable significant effect on the quality of the human environment." 42 U.S.C. § 4336(b)(1). If the proposed agency action "does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," then the agency must prepare an Environmental Assessment "set[ting] forth the basis of such agency's finding of no significant impact or determination that an environmental impact statement is necessary." *Id*. § 4336(b)(2).

37.     In specific limited circumstances, an agency may determine that a proposed action falls within a "categorical exclusion[]" and therefore is exempt from the obligation to prepare an environmental assessment or environmental impact statement. *Id.* § 4336(a)(2). A categorical exclusion is "a category of actions that a Federal agency has determined normally does not significantly affect the quality of the human environment." *Id.* § 4336e(1); *see also* 43 C.F.R. § 46.210 (setting forth Department of Interior's categorical exclusions); Notice of Adoption of Categorical Exclusions Under Section 109 of the National Environmental Policy Act, 90 Fed. Reg. 24644, 24645 (June 11, 2025) (adopting additional categorical exclusions for National Park Service). Even if a proposed action would otherwise fall within a categorical exclusion, Defendants may not invoke a categorical exclusion if the proposed action would have significant impacts on "park . . . lands" or "on properties listed, or eligible for listing, on the National Register

of Historic Places." 43 C.F.R. § 46.215(b), (f).  "If a proposed action does not meet the criteria for any of the listed Departmental categorical exclusions or any of the individual bureau categorical exclusions, then the proposed action must be analyzed in an environmental assessment or environmental impact statement." 43 C.F.R. § 46.205(a).

38.     Agency compliance with the NHPA and NEPA is reviewable through the Administrative Procedure Act ("APA"). *See Nat'l Tr. for Historic Pres. v. Blanck*, 938 F. Supp. 908, 915-16 (D.D.C. 1996), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999) (citing 5 U.S.C. § 706). Under the APA, a court shall "hold unlawful and set aside agency action" taken "without observance of procedure required by law," "in excess of statutory jurisdiction, authority, or limitations," or that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(D), (C), (A).

## FACTUAL BACKGROUND

### *The Reflecting Pool as a Historic Designed Landscape*

39.     The Lincoln Memorial Reflecting Pool has been one of the defining features of the nation's capital for over a century. It is one of the most iconic structures in the United States, and is an integral part of "one of the important axes in the nation, one that aligns several key national symbols including the U.S. Capitol Building, the Washington Monument, the World War II Memorial, and the Lincoln Memorial."[3] Congress has declared that "the great cross-axis of the Mall . . . [including the axis] from the United States Capitol to the Lincoln Memorial" is "a substantially completed work of civic art" whose integrity should be preserved. Commemorative Works Clarification and Revision Act of 2003, Pub. L. No. 108-126 §202, 117 Stat. 1348.

---

[3] National Park Service, Environmental Assessment, Rehabilitation of the Lincoln Memorial Reflecting Pool 1-5 (2009), https://npshistory.com/publications/linc/reflecting-pool-rehab-ea-2009.pdf [https://perma.cc/2CCA-BS5G].

40.     The Reflecting Pool and the area around it is "one of the most popular destinations in the country, having served as the backdrop to some of our nation's most historic events."[4] Millions of visitors from all over the world walk along, gaze into, and/or photograph the Reflecting Pool each year. The pool is the site of the 1963 March on Washington, where the Reverend Dr. Martin Luther King Jr. delivered his "I Have a Dream" speech, among the most consequential moments in American civic history.

41.     The Reflecting Pool is a man-made reflecting basin approximately 2,000 feet in length and 160 feet in width, located on the central axis of the National Mall between the Lincoln Memorial to the west and the Washington Monument to the east. Designed as a central element of the McMillan Commission's plan for the Mall, the pool was constructed between 1919 and 1924.

42.     The Reflecting Pool and its surrounding landscape—including the double rows of elm trees, the granite coping, the Rainbow Pool to the east, and the stepped approaches—are listed on the National Register of Historic Places as components of the National Mall Historic District.

43.     The visual and aesthetic character of the Reflecting Pool derives principally from its function as a mirror. As the 1999 National Park Service Cultural Landscape Report for the Lincoln Memorial Grounds explains, the waterproofing base developed for the pool's basin— consisting of an asphalt-coated membrane, slate, and concrete tile—was specifically chosen through trial and error for its dark coloration. *See* 1999 CLR at 33. The dark color of the tile "created the illusion of greater depth and a more profound reflection." *Id.* The grey, achromatic basin is not a utilitarian feature of the Reflecting Pool but a deliberate design choice integral to

---

[4] *Id.* at iii.

the pool's historic character and function. The 1999 CLR identifies it as a character-defining feature of the historic landscape.

*The Basin Resurfacing*

44.     On November 26, 2025, President Trump posted a video of the Reflecting Pool on Truth Social with the following message: "This is the Lincoln Memorial Reflecting Pool before Secretary of the Interior Doug Burgum and I fix it. Study it hard because you won't be seeing this Biden filth and incompetence much longer!"[5]

45.     On or about March 27, 2026, National Park Service prepared a form "Assessment of Actions Having an Effect on Historic Properties" regarding the proposal to resurface the Reflecting Pool with a blue polyurea liner. *See* ECF No. 12-10. The form indicated that the project would "[a]dd non-historic features/elements to a historic structure," "[a]lter or remove features/elements of a historic setting or environment," "[a]dd non-historic features/elements . . . to a historic setting or cultural landscape," and would *not* "[r]eplace historic features/elements in kind." *Id.* at 3. The form also explained that

> While normally not eligible for Streamlined Review due to the change to an epoxy coating, given the direction provided by NPS-WASO, DOI, and White House leadership coupled with the timeline required to complete compliance, there is no option other than to select Streamlined Review. No Streamlined Activity clearly aligns with this undertaking.

*Id.* at 5. The assessment also noted that "Consultation with the DC-[State Historic Preservation Office] would probably result in non-concurrence with an agency official proposed finding of No Adverse Effect. Significant and timely consultation would be required to reach consensus with the SHPO." *Id.*

---

[5] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 26, 2025, 11:56AM), https://truthsocial.com/@realDonaldTrump/posts/115617052659110736 [https://trumpstruth.org/statuses/34025].

46.    Beginning sometime in mid-April 2026, without any notice or reviews, Defendants commenced a project to resurface the basin of the Reflecting Pool with a blue coating.

47.    President Trump announced the project at an April 23, 2026, Oval Office event, stating that he had been working on the project with Secretary Burgum and that the resurfacing contractor was, in his description, "unbelievable at doing swimming pools."[6] Trump stated he had originally wanted turquoise "like in the Bahamas" but was persuaded by the contractor to choose a color called "American flag blue." *Id.* He indicated his intent to have the project complete by July 4, 2026, in time for the nation's 250th anniversary celebration. *Id.*

48.    President Trump initially stated that the project would cost about $1.8 million and take about a week to complete.[7]

49.    According to public reporting, the project was awarded via a $6.9 million no-bid contract to Atlantic Industrial Coatings, which had performed work at President Trump's Trump National Golf Club in Sterling, VA.[8] The administration invoked an exemption for urgent situations to bypass ordinary government contract rules. *Id.* The purported urgency is that President Trump "wanted it changed for the country's birthday party on July 4." *Id.*

50.    The cost of the no-bid contract ultimately ballooned to close to $15 million.[9]

---

[6] Forbes Breaking News, *Trump Goes On Ten-Minute Rant About Plan For Lincoln Memorial Reflecting Pool 'Beautification'* (YouTube, Apr. 23, 2026), https://www.youtube.com/watch?v=D_Fn5fxW55s [https://perma.cc/K42L-C9UZ].

[7] Diario AS, *Trump Full Visit To Reflecting Pool Works In Lincoln's Memorial Leaves Explosive Remarks* (YouTube, May 8, 2026), https://www.youtube.com/watch?v=4c40jxv6yb4 [https://perma.cc/M4NT-H4Z3].

[8] *See* David A. Fahrenthold & Luke Broadwater, *The No-Bid Contract That Is Turning Washington's Reflecting Pool Blue*, N.Y. Times (May 8, 2026), https://www.nytimes.com/2026/05/08/us/politics/reflecting-pool-trump-contract.html?unlocked_article_code=1.hVA.dnZ2.sbncrTFWnY-Y&smid=url-share.

[9] Peter Charalambous, *Reflecting Pool Renovations to Cost More Than $16 Million*, ABC News (June 19, 2026), https://abcnews.com/US/reflecting-pool-renovations-cost-16-million/story?id=134024265 [https://perma.cc/AY4T-67VY].

51.     Upon information and belief, before awarding the contract to Atlantic Industrial Coatings, the administration approached the company that worked on previous renovations of the Reflecting Pool, Sika Corporation. Sika Corporation turned down the project because two requirements made it "unfeasible" according to Sika: that the pool bottom be blue, and that the project be complete by July 4, 2026.[10]

52.     The goal of the project was not to preserve the Reflecting Pool, but to transform it. On May 7, 2026, President Trump gave an interview where he criticized the historic reflecting pool structure because, in his view, "the color was never good, it had a grey stone underneath." Diario AS, *supra.*  As the President explained, the resurfacing was intended to make the reflecting pool "look far more beautiful than it did in 1922."[11] The change in color was not driven by routine maintenance or repair considerations—and certainly not historic preservation concerns—but instead reflected the President's personal choices.[12]

53.     On May 1, 2026, President Trump posted an AI-generated image of himself, Vice President JD Vance, Secretary of State Marco Rubio, Secretary of the Interior Doug Burgum, and a woman, swimming in the Reflecting Pool.[13]

---

[10] *See* Abigail Roedersheimer, Isabelle Khurshudyan, & Sunlen Serfaty, *Exclusive: Firm That Worked on Past Reflecting Pool Renovation Passed on Trump Project After Deeming it 'Unfeasible'*, CNN (June 25, 2026), https://www.cnn.com/2026/06/25/politics/reflecting-pool-firm-renovation-unfeasible [https://perma.cc/QAM8-KK9H].

[11] Heather Richards & Rylan DiGiacomo-Rapp, *Trump's Reflecting Pool Spruce-Up Fails to Charm Preservationists*, Politico (April 28, 2026), https://www.politico.com/news/2026/04/28/trumps-reflecting-pool-spruce-up-fails-charm-preservationists-00895457.

[12] *See* Forbes Breaking News, *Trump Goes On Ten-Minute Rant About Plan For Lincoln Memorial Reflecting Pool 'Beautification'* (YouTube, Apr. 23, 2026), https://www.youtube.com/watch?v=D_Fn5fxW55s.10.

[13] Donald J. Trump (@realDonaldTrump), Truth Social (May 1, 2026, 11:03 PM), https://truthsocial.com/@realDonaldTrump/posts/116502756484361615 [https://trumpstruth.org/statuses/38131].



54.    On or about June 7, 2026, Defendants purported to have "complete[d]" the resurfacing of the pool and filled it with water. *See* ECF No. 18.

55.    At the project's conclusion, Defendants boasted about their transformation of the Reflecting Pool.[14] President Trump explained that the pool was resurfaced with a "sophisticated material, industrial strength, that could last for 100 years."[15]

---

[14] *See, e.g.*, Rapid Response 47 (@rapidresponse47), X (June 9, 2026, at 8:41 PM), https://x.com/RapidResponse47/status/2064447910906089667    [https://perma.cc/2RFH-KPH8] (stating that the renovation made the pool "more beautiful"); Donald J. Trump (@realDonaldTrump),    Truth    Social    (June    3,    2026,    at    3:12    PM), https://truthsocial.com/@realDonaldTrump/posts/116687762927075610 [https://trumpstruth.org/statuses/39069] (stating that "This will be the first time since the day it was built, 1922, that it has worked, and worked wonderfully, indeed!") ;
[15] Donald J. Trump (@realDonaldTrump), Truth Social (June 5, 2026, at 11:26 AM), https://truthsocial.com/@realDonaldTrump/posts/116698196665878804 [https://trumpstruth.org/statuses/39107].

56.     However, shortly after Defendants filled the Reflecting Pool with water and declared the project finished, problems emerged. First, a significant green algal bloom overtook the pool. Defendants apparently responded by pouring chemicals into the pool and undertaking other mitigation efforts to kill the algae.[16] Then the blue coating Defendants affixed to the bottom of the Reflecting Pool started peeling away in chunks.[17]



[16] *See* Rachel Treisman, *Algae Clouded Trump's Vision for the Reflecting Pool. But Scientists Aren't Surprised*, NPR (June 19, 2026), https://www.npr.org/2026/06/19/nx-s1-5863044/dcreflecting-pool-algae-green-trump [https://perma.cc/WC9D-BHB3].

[17] Michelle Del Rey & James Powel, *Lincoln Memorial Reflecting Pool Paint Peeling Off: See Images*, USA Today (June 18, 2026), https://www.usatoday.com/story/news/nation/2026/06/18/lincoln-memorial-reflecting-poolpaint-peeling-off-see-photos/90614066007/ [https://perma.cc/SDE3-9UY4].



57.    On June 17, 2026, Plaintiff Birnbaum visited the Reflecting Pool and observed the pool filled with algae. He observed workers piping pool water into a nearby drain, as depicted in this photograph:



58.     Several dead ducklings have been found in the vicinity of the Reflecting Pool.[18]

59.     The issues with the pool were the predictable consequence of Defendants' decision to bypass the consultative process required by law and which must occur before the government can alter our nation's most sacred spaces. Through this process, experts, including Plaintiffs, could have advised NPS and DOI about the potential risks of the project.[19]

---

[18] Dana Hedgpeth & Maura Judkis, *A Dead Duck Was Seen in the Reflecting Pool. Then Two More Were Found Nearby.*, Wash. Post (June 22, 2026), https://www.washingtonpost.com/dc-md-va/2026/06/22/dead-duck-was-seen-reflecting-pool-then-two-more-were-found-nearby/ [https://perma.cc/U9N3-5MD5].

[19] *See, e.g.*, Alice Gibbs, *Is the Lincoln Memorial Reflecting Pool Floor Already Peeling?*, Newsweek (June 19, 2026), https://www.newsweek.com/lincoln-memorial-reflecting-pool-floor-starts-peeling-4-possible-reasons-12094294 [https://perma.cc/HTR5-3BJC] (quoting marine biologist Christopher Lowe as stating that "the new dark surface . . . could create 'perfect conditions for algae to bloom'" and professor emeritus of civil and mineral engineering, R. Douglas Hooton, and the chair of Aquatic Council, LLC, Tim Auerhahn, discussing potential reasons for the peeling paint, including installation errors and product selection).

60.     In the wake of the pervasive issues with the new coating, Defendants announced that additional work will be performed on the pool after the July 4, 2026, holiday. *See* ECF No. 22-1 at 2.

61.     The resurfacing has dramatically transformed the character-defining grey, achromatic appearance of the Reflecting Pool basin. Due to his well-honed and acute understanding and perception of landscape architecture, designed landscapes, and landscape features, the transformation has been shocking and upsetting to Mr. Birnbaum and diminished his enjoyment of the Reflecting Pool and how it relates to and reflects its associated setting.

*Defendants' Failure to Conduct Required Reviews*

62.     Defendants have undertaken the resurfacing of the Reflecting Pool and the subsequent remediation without following the processes required by law.

63.     To date, no Section 106 consultation has been publicly initiated in connection with the Reflecting Pool basin resurfacing and the subsequent remediation. No determination of effect on the National Mall Historic District has been made available. No consulting parties have been identified, notified, or engaged. No public information about the undertaking and its effects on the historic property has been provided, and no opportunity for public comment has been offered, before work began or since.

64.     The NPS typically posts planning documents about its projects for public review on its Planning, Environment & Public Comment ("PEPC") website. *See* National Park Service, Planning,      Environment      &      Public      Comment,      https://parkplanning.nps.gov/ [https://perma.cc/45WA-3BVW]. For example, for the previous renovation of the Reflecting Pool, PEPC contains approximately 20 documents, including meeting notices, meeting notes, environmental assessment documents, submissions to the U.S. Commission of Fine Arts, and

submissions to the National Capital Planning Commission, programmatic agreements, and memorandums of agreement among the consulting parties. *See* National Parks Service, Rehabilitate Lincoln Reflecting Pool and Rehabilitate Surrounding Area, https://parkplanning.nps.gov/documentsList.cfmprojectID=26512 [https://perma.cc/GXM5-R6L7].

65.    To date, no planning documents related to the current Reflecting Pool resurfacing and the subsequent remediation have been posted by NPS on the PEPC website.

66.    TCLF has affirmatively contacted Defendants to seek information about whether a Section 106 review was initiated. Specifically, on April 27, 2026, TCLF emailed Tammy Stidham, NPS's Associate Regional Director for Lands and Planning, to inquire about the Reflecting Pool resurfacing project.

67.    TCLF has also affirmatively requested consulting party status in any Section 106 proceeding relating to the Reflecting Pool basin resurfacing. Specifically, on May 5, 2026, TCLF emailed Tammy Stidham to request being a consulting party. Defendants have not responded to those inquiries.

68.    TCLF subsequently contacted NPS on June 22, 2026, to inquire about any Section 106 review for the additional remediation work announced recently.

69.    Ultimately, Plaintiffs learned in the context of this litigation that NPS invoked the 2008 PA as the basis for forgoing standard Section 106 review. *See* ECF No. 12-10. However, as NPS's own assessment reflects, the Reflecting Pool basin resurfacing plainly does not qualify for the streamlined review process. *See id.* at 5. Indeed, NPS specifically found that the project would *not* "[r]eplace historic features/elements *in kind*," *id.* at 3 (emphasis added), a requirement for streamlined projects under the 2008 PA, ECF No. 12-11 at (explaining that the streamline review

is "limited to actions for retaining and preserving, protecting and maintaining, and repairing and replacing *in-kind*" (emphasis added)). Instead, NPS found that the project would "[a]dd non-historic features/elements to a historic structure, "[a]lter or remove features/elements of a historic setting or environment," and "[a]dd non-historic features/elements . . . to a historic setting or cultural landscape." ECF No. 12-10 at 3. It is not clear what, if any, reviews Defendants conducted for the subsequent remediation work that is planned after the July 4, 2026, holiday.

70.     On April 28, 2026, the District of Columbia State Historic Preservation Office (DC SHPO) sent a letter to NPS regarding the project after hearing about it from news reports. *See* ECF No 12-12. In the letter, the DC SHPO expressed its belief that the project did not qualify for streamlined review because that process is only appropriate for "in-kind" replacement work that does not alter the historic character of the property. *Id.* at 2.

71.     TCLF's participation as a consulting party would bring to the Section 106 process directly relevant institutional expertise. Plaintiffs have a demonstrated and documented interest in the Reflecting Pool as a historic designed landscape and expertise in the assessment of effects on historic designed landscapes of the type at issue here.

72.     Defendants' failure to initiate Section 106 consultation has denied TCLF the opportunity to obtain information about the project and to participate and contribute its expertise before the historic character of the pool is permanently altered.

73.     Defendants have also failed to follow other processes that they have historically followed before making fundamental changes to the Reflecting Pool. For example, the Commission of Fine Arts (CFA) has been involved with changes to the Reflecting Pool since it was first constructed. The CFA is a federal agency that advises on "statues, fountains, and monuments erected under the authority of the Federal Government," 40 U.S.C. § 9102(a)(2), and

reviews federal agency projects that, among other things, contemplate "modifying an existing park or public space" or making "modifications or additions to an existing building or site on federal or D.C. government property." U.S. Commission of Fine Arts, Project Review, https://www.cfa.gov/project-review [https://perma.cc/G8QW-KBSF]. More than 100 years ago, President Harding ordered federal agencies to submit "the designs of statues, fountains and monuments, and all important plans for parks and all public buildings" to the CFA for "advice as to the merits."[20] Consistent with this command and longstanding practice, Defendants sought and obtained approval for design elements during the 2010 rehabilitation of the Reflecting Pool,[21] and for other changes to the surrounding area.[22] Yet Defendants have failed to submit their recent

---

[20] Exec. Order No. 3524 (1921); *see also* 45 C.F.R. § 2101.1 ("The Commission of Fine Arts (referred to as the 'Commission') functions pursuant to statutes of the United States and Executive Orders of Presidents.").

[21] *See*, U.S. Commission of Fine Arts, CFA 18/MAR/10-2 (Mar. 26, 2010), https://www.cfa.gov/records-research/project-search/cfa-18mar10-2 [https://perma.cc/ZG7Q-FJVK]; U.S. Commission of Fine Arts, CFA 18/FEB/10-2 (Feb. 18, 2010), https://www.cfa.gov/records-research/project-search/cfa-18feb10-2 [https://perma.cc/BUP6-86NZ].

[22] *See, e.g.,* U.S. Commission of Fine Arts, CFA 21/SEP/23-a, https://www.cfa.gov/records-research/project-search/cfa-21-sep-23-0 [https://perma.cc/7HB6-CUGP] (approving temporary access ramps to main chamber of Lincoln memorial); U.S. Commission of Fine Arts, CFA 16/JUL/09-2 (July 24, 2009), https://www.cfa.gov/records-research/project-search/cfa-16jul09-2 [https://perma.cc/F4VU-HK4B] (requiring additional design development for landscape around Reflecting Pool, including raising "concerns about the design of the existing Elm Walks and proposed walkways along the Reflecting Pool—including the treatment of paving and its edges, as well as associated furniture such as lights, benches, and trash receptacles"); U.S. Commission of Fine Arts, CFA 18/SEP/08-3 (Sept. 26, 2008), https://www.cfa.gov/records-research/project-search/cfa-18sep08-3 [https://perma.cc/6LNA-AWVE] (criticizing plan for nearby temporary security barriers that would "have a visual impact that detracts from the beauty of the Lincoln Memorial and its setting"); U.S. Commission of Fine Arts, CFA 19/MAY/05-1 (May 25, 2005), https://www.cfa.gov/records-research/project-search/cfa-19may05-1 [https://perma.cc/6VGU-DFJR] ("Commission members have recommended that the bollards should be a simple and uncomplicated design that does not complete with the columns of the Memorial; they look forward to reviewing further studies of the material, shape, and color of the bollards"); U.S. Commission of Fine Arts, CFA 20/NOV/03-1 (Dec. 1, 2003), https://www.cfa.gov/records-research/project-search/cfa-20nov03-1 [https://perma.cc/Q2NL-FAZB] (weighing in on paving material for plaza outside Lincoln Memorial); U.S. Commission of Fine Arts, CFA 16/OCT/03-2 (Oct. 24, 2003),

24

proposed changes to the Reflecting Pool to the CFA for review or approval. Instead, upon information and belief, Defendants informed the CFA that the scope of the Reflecting Pool project was limited to repairs in kind.

74.     Similarly, Defendants have failed to undertake any of the steps required by NEPA. NEPA requires that an agency consider the effect of its actions on the environment. Unless a categorical exclusion (CE) applies, the agency must prepare and publicly release an Environmental Assessment (EA) to determine if there will be significant environmental impacts from the federal action. Even if a categorical exclusion applies, the agency must consider whether an extraordinary circumstance nonetheless requires an EA. *See* 43 C.F.R. § 46.215.

75.     Defendants invoked the CE for "routine maintenance and repair" and determined that an extraordinary circumstance does not apply. ECF No. 12-9 at 3-4. This determination was plainly erroneous; there was nothing "routine" about this transformative project. Furthermore, Defendants wrongly determined that no extraordinary circumstance applies despite the impact of the project on a park and a historic property. *See* 43 C.F.R. § 46.215(b), (f). This failure to consider the environment comes despite the apparent risk inherent in adding industrial-grade paint to more than 300,000 square feet of the basin surface, touching millions of gallons of water.

---

https://www.cfa.gov/records-research/project-search/cfa-16oct03-2 [https://perma.cc/FP8S-QFYG] (requesting mockup of lighting scheme for Lincoln Memorial); U.S. Commission of Fine Arts, CFA 20/FEB/03-4 (Mar. 4, 2003), https://www.cfa.gov/records-research/project-search/cfa-20feb03-4 [https://perma.cc/QHY6-YM56] (approving a plaque commemorating Martin Luther King, Jr.'s "I Have a Dream" speech on the steps of the Lincoln Memorial on the condition that certain changes to letter size and spacing are met).

### COUNT ONE
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), (D)**
**(Violation of National Historic Preservation Act, Section 106)**

76. Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs.

77. The Administrative Procedure Act authorizes courts to hold unlawful and set aside agency action found to be "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). It also authorizes courts to compel agency action "unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

78. The Reflecting Pool basin resurfacing on or about mid-April 2026 and the subsequent remediation work (the "Reflecting Pool Project" or the "Project") is final agency action because it represents the consummation of NPS's decision-making process regarding the impact of the Reflecting Pool Project on the historic character of the Reflecting Pool. Legal consequences flow from the commencement of the Project because it is an undertaking within the meaning of the NHPA and because Section 106 of the NHPA requires the agency to follow certain procedures before an undertaking. Defendants' failure to conduct Section 106 review before commencing the Reflecting Pool project is thus subject to judicial review under the APA. 5 U.S.C. § 704.

79. The Reflecting Pool is part of the National Mall Historic District, listed on the National Register of Historic Places. It is therefore "historic property" within the meaning of 54 U.S.C. § 300308 and 36 C.F.R. § 800.16(*l*).

80. The Reflecting Pool Project is an "undertaking" within the meaning of 54 U.S.C. § 300320 and 36 C.F.R. § 800.16(y): it is a project carried out by or on behalf of Defendants and

funded with federal resources, on federal property managed by a federal agency. President Trump

expressly stated that the resurfacing was done with "the help of Secretary of the Interior Doug

Burgum, and his entire Department."[23]

81.    The Reflecting Pool Project does not qualify for streamlined review under NPS's

2008 PA. *See* ECF No. 12-10 at 5 (NPS stating that the Project is "not eligible for Streamlined

Review"). Accordingly, Defendants were required to follow the standard Section 106 review

process. And for good reason: This type of massive change to a historic property cries out for

public review and input.

82.    Section 106 required Defendants, prior to commencing the Project, to initiate and

complete the consultation process prescribed by 36 C.F.R. Part 800. That process required, at

minimum: notifying the public and consulting parties, including TCLF; providing plans and

documentation about the undertaking to the public and consulting parties; assessing whether the

resurfacing would cause adverse effects; affording the public and consulting parties a reasonable

opportunity to comment; and, if adverse effects were found, working with consulting parties to

resolve them before proceeding. 54 U.S.C. § 306108; 36 C.F.R. §§ 800.2–800.6.

83.    The Reflecting Pool Project constitutes an adverse effect on the National Mall

Historic District within the meaning of 36 C.F.R. § 800.5(a)(1). The dark grey, achromatic basin

is a character-defining feature of the historic property, as established by the 1999 Cultural

Landscape Report. The resurfacing of the pool with a blue epoxy/polyurea coating materially

alters that character-defining feature, permanently changing the color, material, and reflective

---

[23] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 24, 2026, 5:08 PM), https://truthsocial.com/@realDonaldTrump/posts/116461727359731405 [https://trumpstruth.org/statuses/38044].

quality of the basin in a manner that degrades the historic character and integrity of the pool and the broader landscape.

84.    Defendants commenced the Project without initiating or completing the standard Section 106 consultation process. The public and consulting parties were not notified. No plans or documentation were disclosed to prospective consulting parties or the public before work began. No assessment of effect was conducted and made available for review. No opportunity for comment was provided. Defendants have not disclosed any Section 106 documentation to date and have not responded to TCLF's affirmative inquiries seeking confirmation that any review occurred.

85.    Defendants' determination that the Project qualified for streamlined review was arbitrary and capricious or in violation of law, because the current project does not meet the requirements for streamlined review. Accordingly, that determination must be set aside.

86.    Exacerbating the problem, Defendants failed to obtain approval from, or consult with, the U.S. Commission of Fine Arts, which has been involved in the design elements of the Reflecting Pool and surrounding landscape for more than a century.

87.    Defendants' failure to initiate and complete the standard Section 106 process before commencing the Reflecting Pool Project was an action taken without observance of procedure required by law, in excess of statutory authority, and not in accordance with the NHPA, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

88.    Plaintiffs have been injured and will continue to be injured by Defendants' violations. TCLF has been deprived of its right to obtain information about the scope and nature of the project and to participate in the deliberative process mandated by Congress as either a consulting party or a member of the public. Had Defendants followed the Section 106 process,

28

TCLF would have been able to submit expert comments on the effects of the resurfacing on the character-defining features of the Reflecting Pool, the Lincoln Memorial Grounds, and the National Mall Historic District; and to participate in the deliberative process that Section 106 mandates before the undertaking proceeds. That ongoing deprivation directly impairs TCLF's ability to fulfill the core advocacy and stewardship functions that define its organizational mission. Mr. Birnbaum has suffered and continues to suffer a direct and ongoing aesthetic injury: the resurfacing of the historic grey basin in blue epoxy and polyurea coating has materially and perceptibly degraded the aesthetic experience of the Reflecting Pool that he has long visited and enjoyed.

**COUNT TWO**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), (D)**
**(Violation of National Environmental Policy Act)**

89.    Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs.

90.    The Administrative Procedure Act authorizes courts to hold unlawful and set aside agency action found to be "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). It also authorizes courts to compel agency action "unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

91.    The Reflecting Pool Project is final agency action because it represents the consummation of NPS's decision-making. *See* 5 U.S.C. § 704; 42 U.S.C. § 4336(a)(1).

92.    There is no categorical exclusion that applies to the Reflecting Pool Project. Defendants' determination that the project was mere "routine maintenance" was plainly wrong.

Moreover, extraordinary circumstances apply that render the exclusion inapplicable. *See* 43 C.F.R. § 46.215(b), (f).

93.     Defendants were required to issue either an Environmental Impact Statement or Environmental Assessment before undertaking the resurfacing. 42 U.S.C. § 4336(b); 43 C.F.R. § 46.205(c). Defendants failed to do so.

94.     Defendants' failure to complete the process required by NEPA before commencing the Reflecting Pool Project was a final agency action taken without observance of procedure required by law, in excess of statutory authority, arbitrary and capricious, and not in accordance with NEPA, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

95.     Plaintiffs have been injured and will continue to be injured by Defendants' violations.

**PRAYER FOR RELIEF**

Wherefore, good cause having been shown, Plaintiffs respectfully request that this Court:

a. Declare that Defendants' commencement and continued execution of the Reflecting Pool Project without initiating and completing the Section 106 consultation process and without an Environmental Impact Statement or Environmental Assessment violates the National Historic Preservation Act, the National Environmental Policy Act, and the Administrative Procedure Act;

b. Set aside any authorization, determination, or agency decision approving or implementing the Reflecting Pool Project that was issued without completion of the Section 106 and NEPA reviews;

c.  Enjoin Defendants from taking any further steps to alter the Reflecting Pool until Defendants have completed a lawful Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review as prescribed by 42 U.S.C. § 4336;

d.  Order Defendants to conduct the Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review as prescribed by 42 U.S.C. § 4336;

e.  Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412(b) and other applicable law; and

f.  Grant such other and further relief as this Court deems just and proper.

Dated: July 2, 2026                               Respectfully submitted,

/s/ Alexander Kristofcak
ALEXANDER KRISTOFCAK
   (D.C. Bar No. 90045623)
JOSEPH MEAD
   (D.C. Bar No. 1740771)
NATHANIEL A.G. ZELINSKY
   (D.C. Bar No. 1724093)
WASHINGTON LITIGATION GROUP
1717 K Street NW, Suite 1120
Washington, DC 20006
Phone (202) 521-8734
Fax (202) 521-8745
akristofcak@washingtonlitigationgroup.org


*Attorneys for Plaintiffs*