# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE CULTURAL LANDSCAPE
FOUNDATION, et al.,

                         *Plaintiffs*,

      v.

U.S. DEPARTMENT OF THE INTERIOR,
et al.,

                         *Defendants*.

Civil Action No. 1:26-cv-01593-CJN

Hon. Carl J. Nichols

## DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    I.      Factual and procedural history.............................................................................. 2

    II.     Legal background.................................................................................................. 4

         A.      National Historic Preservation Act ........................................................ 4

         B.      National Environmental Policy Act......................................................... 5

         C.      Administrative Procedure Act.................................................................. 6

LEGAL STANDARD......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.      Plaintiffs fail to establish an injury in fact............................................................ 8

         A.      Charles Birnbaum has not suffered an Article III injury ........................... 8

         B.      The Foundation has not suffered an Article III injury .............................. 12

    II.     Plaintiffs lack standing to seek certain forms of relief ........................................ 15

CONCLUSION................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Am. Legion v. Am. Humanist Ass'n*,
    588 U.S. 29 (2019)...................................................................................................... 10

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 .................................................................................................................. 7

*City of Alexandria, Virginia v. Slater*,
    198 F.3d 862 (D.C. Cir. 1999)..................................................................................... 4

*Cowtown Found., Inc. v. U.S. Dep't of Agric.*,
    638 F. Supp. 3d 1 (D.D.C. 2022)................................................................................. 6

*Ctr. for Biological Diversity v. Bernhardt*,
    490 F. Supp. 3d 40 (D.D.C. 2020)............................................................................. 14

*Ctr. for Biological Diversity v. Env't Prot. Agency*,
    861 F.3d 174 (D.C. Cir. 2017)................................................................................... 11

*Ctr. for Biological Diversity v. Env't Prot. Agency*,
    937 F.3d 533 (5th Cir. 2019) ..................................................................................... 12

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)...................................................................................................... 6

*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011)............................................................................. 15, 16

*Diamond v. Charles*,
    476 U.S. 54 (1986)...................................................................................................... 11

*Dine Citizens Against Ruining Our Env't v. Bernhardt*,
    923 F.3d 831 (10th Cir. 2019) ..................................................................................... 5

*\*Env't Def. Fund v. FERC,*
    2 F.4th 953 (D.C. Cir. 2021)............................................................................ 9, 10, 11

*\*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................................................ 10, 13, 14

*Food & Water Watch v. FERC*,
    28 F.4th 277 (D.C. Cir. 2022)...................................................................................... 9

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015).............................................................................. 13, 14

*Found. on Econ. Trends v. Lyng*,
    943 F.2d 79 (D.C. Cir. 1991)..................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)................................................................................................ 8, 12

*Gulf Coast Maritime Supply, Inc. v. United States*,
  867 F.3d 123 (D.C. Cir. 2017)...................................................................................... 7

*Hecate Energy LLC v. FERC*,
  126 F.4th 660 (D.C. Cir. 2025).................................................................................... 15

*Karst Envt. Educ. & Prot., Inc. v. EPA*,
  475 F.3d 1291 (D.C. Cir. 2007)..................................................................................... 6

*Knapp Med. Ctr. v. Hargan*,
  875 F.3d 1125 (D.C. Cir. 2017)..................................................................................... 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................................... 6

*Marsh v. Oregon Natural Resources Council*,
  490 U.S. 360 (1989)...................................................................................................... 6

*Oklahoma v. FCC*,
  933 F.3d 728 (D.C. Cir. 2019)...................................................................................... 4

*People for Ethical Treatment of Animals, Inc. v. Perdue*,
  464 F. Supp. 3d 300 (D.D.C. 2020).............................................................................. 7

*PPG Inds., Inc. v. United States*,
  52 F.3d 363 (D.C. Cir. 1995)........................................................................................ 6

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*,
  605 U.S. 168 (2025)...................................................................................................... 5

*Sierra Club v. FERC*,
  827 F.3d 59 (D.C. Cir. 2016)........................................................................................ 9

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)...................................................................................................... 13

*Slate v. Pub. Def. Serv. for the D.C.*,
  31 F. Supp. 3d 277 (D.D.C. 2014)................................................................................ 2

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...................................................................................................... 8

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)........................................................................................................ 6

*\*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)...................................................................................................... 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................................... 15

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
   761 F. Supp. 3d 97 (D.D.C. 2025) ................................................................. 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ................................................................................ 8, 10

*Weiss v. Sec'y of U.S. Dep't of Interior*,
   459 F. App'x 497 (6th Cir. 2012) ................................................................. 16

**Statutes**

16 U.S.C § 470f ............................................................................................. 4

42 U.S.C. § 4332(2)(C) .................................................................................. 5

42 U.S.C. § 4336 ........................................................................................... 5

42 U.S.C. § 4336(a)(2) ................................................................................... 5

42 U.S.C. § 4336(b)(1) ................................................................................... 5

42 U.S.C. § 4336(b)(2) ................................................................................... 5

5 U.S.C. § 706(2)(A) ...................................................................................... 6

54 U.S.C. § 300320 ........................................................................................ 4

54 U.S.C. § 306108 ........................................................................................ 4

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 6

**Regulations**

36 C.F.R. § 800.14 ......................................................................................... 4

36 C.F.R. § 800.14(b) ..................................................................................... 5

36 C.F.R. § 800.2(c) ....................................................................................... 4

36 C.F.R. § 800.2(c)(5) ................................................................................. 13

36 C.F.R. § 800.2(d)(1)-(2) ........................................................................... 13

36 C.F.R. § 800.3 ...................................................................................... 4, 13

36 C.F.R. § 800.4 ........................................................................................... 4

36 C.F.R. § 800.5 ........................................................................................... 4

36 C.F.R. § 800.6 ........................................................................................... 4

36 C.F.R. Part 800 ......................................................................................... 4

43 C.F.R. § 46.205 ......................................................................................... 5

43 C.F.R. § 46.205(a) ..................................................................................... 6

43 C.F.R. § 46.205(f) ................................................................................................................. 6

**INTRODUCTION**

Plaintiff Charles Birnbaum visits the Lincoln Memorial Reflecting Pool once a month, and he says that the Reflecting Pool's "uneven coloration, chipped paint, and rapid accumulation of algae" "concretely harm[s]" his "aesthetic experience." *See* Dkt. No. 23 ("Pls. Am. Compl.") ¶ 20. In his view, this is all that's needed for an Article III injury, and this purported harm allows him to challenge the National Park Service's ("Park Service") decision to resurface the bottom of the Reflecting Pool. But Plaintiff has no legally protected interest in avoiding views that he finds "shocking and upsetting." *See id.* ¶ 61. If such an abstract and generalized grievance amounted to an Article III injury, millions of D.C. residents could challenge nearly any government action that affects the appearance of nearly any federal government property.

The organizational Plaintiff, the Cultural Resources Foundation (the "Foundation"), does no better on standing. It alleges a procedural injury based on the Park Service's failure to consult with it under the National Historic Preservation Act ("NHPA"). But it does not tie that purported procedural right to any concrete interest, and a procedural right itself does not confer Article III standing.

At a minimum, Plaintiffs lack standing to pursue certain forms of relief. For example, they seek an injunction that would bar Defendants from taking any steps to alter the Reflecting Pool until they conduct what Plaintiffs view as a lawful consultation under the NHPA and review under National Environmental Policy Act ("NEPA"). But it's hard to see how banning NPS from changing the Reflecting Pool would redress Plaintiff Birnbaum's alleged eyesore injury. It is equally unclear how the Court's ordering Defendants to conduct additional NHPA consultation and NEPA review would redress any purported harm because Plaintiffs fail to connect those procedures to any concrete action that could redress their harm. And Plaintiffs do not ask the

1

Court to order Defendants to do anything beyond gesturing toward additional procedure without tethering it to any real-world impact.

The Court should dismiss Plaintiffs' amended complaint, Dkt. No. 23, for lack of subject-matter jurisdiction.

## BACKGROUND

### I.    Factual and procedural history

The Lincoln Memorial Reflecting Pool sits on the National Mall in Washington, D.C., between the Lincoln Memorial and the Washington Monument, about 2,000 feet long and 160 feet wide.[1]  Pls. Am. Compl. ¶ 41.  The Reflecting Pool's mirrorlike surface, Plaintiffs say, is its defining visual feature.  *Id*. ¶ 43.  The material and color of the bottom of the Reflecting Pool have varied over time—originally an "asphalt-coated membrane," and later "grey-tinted . . . concrete"—but have achieved the same reflective result.  *Id*. ¶¶ 1, 20, 43.

In March 2026, the Park Service decided to resurface the basin of the Reflecting Pool with an "American flag blue" polyurea liner.  *Id*. ¶¶ 3, 46, 47.  The Park Service completed, as relevant here, National Historic Preservation Act ("NHPA") and National Environmental Policy Act ("NEPA") reviews before reaching this decision.  *See id*. ¶¶ 69, 75; *see also* Ex. 1 (Assessment of Effects) at 1, Ex. 2 (Categorical Exclusion) at 1.[2]  In the NHPA review, the Service concluded that the proposed treatment was "consistent with the historic character and design intent of the site," "maintain[ed] the [Reflecting Pool's] essential visual function and appearance, and "preserv[ed] the [Reflecting Pool's] character-defining features."  Ex. 1 at 5.  As

---

[1] For purposes of this motion, Plaintiffs' well-pleaded allegations are taken as true.

[2] The Court can consider these documents because they are "referenced in the [c]omplaint and are central to the plaintiff's claims, or are a matter of public record."  *Slate v. Pub. Def. Serv. for the D.C.*, 31 F. Supp. 3d 277, 288 (D.D.C. 2014).

such, the Park Service decided to engage in a "streamlined" review process and forgo public comment. *See id.* Similarly, the Park Service documented its compliance with NEPA, concluding that the project consisted merely of "repair and waterproofing of the existing pool . . . and would not expand the pool footprint, remove granite coping stones, or add permanent new structures." Ex. 2 at 3. Thus, the Park Service applied a categorical exclusion for "[r]outine maintenance and repairs to cultural resource sites, structures, utilities and grounds" that "would not adversely affect the cultural resource." *Id.* at 5.

Work began on the resurfacing project in mid-April 2026. *See* Pls. Am. Compl. ¶ 46. Plaintiffs brought suit and sought emergency injunctive relief on May 11. Dkt. No. 1, 2. After full briefing, the Court held oral argument on Plaintiffs' emergency motion. *See* Minute Order dated May 21, 2026. On June 3, Defendants advised the Court that the resurfacing project was complete. Dkt. No. 18. Plaintiffs thereafter withdrew their motion for emergency relief. Dkt. No. 19.

On July 2, 2026, Plaintiffs filed an Amended Complaint. They challenge the "Reflecting Pool Project," which they define as "[t]he Reflecting Pool basin resurfacing on or about mid-April 2026 and the subsequent remediation work." Pls. Am. Compl. ¶ 78. They allege that Defendants failed to satisfy the NHPA (Count One) and NEPA (Count Two) before commencing the Reflecting Pool Project.

Plaintiffs request (among other things) that the Court "[e]njoin Defendants from taking any further steps to alter the Reflecting Pool" until Defendants complete a lawful NHPA process and NEPA review. *Id.* at 31. Plaintiffs also ask the Court to "[o]rder Defendants to conduct" a lawful NHPA process and NEPA review. *Id.*

3

II.    **Legal background**

A.    **National Historic Preservation Act**

Section 106[3] of the NHPA is "essentially a procedural statute" that does not impose substantive standards but "requires that agencies 'take into account the effect of [an] undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register [of Historic Places].'" *City of Alexandria, Virginia v. Slater*, 198 F.3d 862, 871 (D.C. Cir. 1999) (alteration in original) (citing 16 U.S.C. § 470f) (1999).[4]  The NHPA defines an undertaking as any "project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency."  54 U.S.C. § 300320.

The Advisory Council on Historic Preservation's ("Council") regulations govern federal agency compliance with Section 106.  *See* 36 C.F.R. Part 800 (2025).  The regulations set forth a four-step process: (1) initiation (36 C.F.R. § 800.3); (2) identification of historic properties potentially affected (§ 800.4); (3) assessment of any effects, including adverse effects (§ 800.5); and (4) efforts to resolve any adverse effects (§ 800.6); *see United Keetoowah Band of Cherokee Indians in Oklahoma v. FCC*, 933 F.3d 728, 745 (D.C. Cir. 2019).  In its full form, the Section 106 process can involve consultation with the Council, state historic preservation offices, tribal historic preservation offices, representatives of local government, and members of the public.  36 C.F.R. § 800.2(c).

In lieu of the consultation process set forth in 36 C.F.R. Part 800, Subpart B., an agency may use an available program alternative.  *See* 36 C.F.R. § 800.14.  For example, an agency official may negotiate a programmatic agreement that allows the agency to apply a streamlined

---

[3] This brief uses the term "NHPA review" to refer to the Section 106 compliance and consultation process set forth at 54 U.S.C. § 306108 and 36 C.F.R. Part 800.

[4] 16 U.S.C § 470f has been recodified to 54 U.S.C. § 306108 as of December 19, 2014.

4

review process for qualifying undertakings. *Id.* § 800.14(b). "When a governing programmatic agreement is in place, compliance with the procedures in that agreement satisfies the agency's NHPA Section 106 responsibilities for all covered undertakings." *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 846 (10th Cir. 2019). Here, the Park Service relied on a programmatic agreement to satisfy its NHPA obligations. *See* Pls. Am. Compl. ¶ 69.

### B.   National Environmental Policy Act

NEPA focuses governmental and public attention on potential environmental effects from any proposed "major Federal actions." 42 U.S.C. § 4332(2)(C). Like the NHPA, NEPA imposes "no *substantive* constraints on the agency's ultimate decision," but is a "*purely procedural*" statute—the agency's "only obligation is to prepare an adequate report." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168, 180 (2025). To satisfy NEPA, agencies prepare an environmental review document. 42 U.S.C. § 4336. An agency prepares an environmental impact statement for a proposed action "that has a reasonably foreseeable significant effect on the quality of the human environment," *id.* § 4336(b)(1), or an environmental assessment for a proposed action "that does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," *id*. § 4336(b)(2).

An agency may also determine that an environmental document is not required if certain exceptions apply, including if an action falls into a categorical exclusion. *Id.* § 4336(a)(2). Categorical exclusions are "a category of actions that . . . normally do not significantly affect the quality of the human environment." 43 C.F.R. § 46.205. If an action meets the criteria for a categorical exclusion, NPS need not prepare an environmental assessment or environmental

impact statement. 43 C.F.R. § 46.205(a), (f) . Here, the Park Service concluded that a categorical exclusion applied. *See* Pls. Am. Compl. ¶ 74.

### C. Administrative Procedure Act

Because the NHPA and NEPA do not provide a private right of action, the APA governs judicial review. *See Karst Envt. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). The APA authorizes a reviewing court to "hold unlawful and set aside" final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989). The APA generally prohibits specific relief because "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Inds., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995).

### LEGAL STANDARD

Before a court can reach the merits of a case, it must determine whether the plaintiff has properly invoked the court's jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). This necessarily includes determining whether the plaintiff has established standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). And because federal courts are presumed to lack jurisdiction, once challenged, "the party asserting federal jurisdiction . . . has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

Federal Rule of Civil Procedure 12(b)(1) provides defendants with the appropriate vehicle for challenging a plaintiff's standing and the court's subject-matter jurisdiction. *See. e.g.*, *Cowtown Found., Inc. v. U.S. Dep't of Agric.*, 638 F. Supp. 3d 1, 6 (D.D.C. 2022). In such

cases, "the Court must treat 'the undisputed facts within or outside the pleadings as true,' and draw 'all reasonable inferences' in the plaintiff's favor." *People for Ethical Treatment of Animals, Inc. v. Perdue*, 464 F. Supp. 3d 300, 307 (D.D.C. 2020) (quoting *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017)) (citation omitted). But the court must "disregard any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Maritime Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017). If a "federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006).

## ARGUMENT

Neither Plaintiff has shown an injury in fact: the individual Plaintiff's theory of aesthetic harm relies on unpleasant sights and fails under offender-observer precedent, and the organizational Plaintiff relies on a purported procedural right that's not tethered to any concrete interest.

On remedy, Plaintiffs lack standing to seek injunctive relief because preventing Defendants from maintaining the Reflecting Pool would not remedy Plaintiffs' alleged eyesore injury and because that request is an impermissible follow-the-law injunction. Plaintiffs likewise lack standing to seek specific relief that orders Defendants to conduct what Plaintiffs think is a lawful NHPA consultation and NEPA review. Additional process in a vacuum—divorced from any concrete changes to the Reflecting Pool—would not redress Plaintiffs' purported injuries. And Plaintiffs understandably have not asked the Court to order the Park Service to make any specific changes to the Reflecting Pool.

## I.    Plaintiffs fail to establish an injury in fact

To have Article III standing, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  Plaintiffs here fail on all fronts.  Mr. Birnbaum alleges injuries that are neither "actual or imminent" nor "concrete and particularized," but are instead premised on conjectural and highly subjective "aesthetic" harms. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). And the Foundation alleges only the deprivation of "procedural right[s] *in vacuo*" which, untethered from a concrete allegation of harm, do not suffice for standing.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).  For these reasons alone, their claims must be dismissed.

### A.    Charles Birnbaum has not suffered an Article III injury

Plaintiffs fail to establish standing by way of the Foundation's Founding President and CEO, Charles Birnbaum, because D.C. Circuit precedent forecloses their aesthetic harm theory. A plaintiff can allege injury in fact if he "use[s] the affected area" and is someone "for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth*, 528 U.S. at 183 (citation omitted).  Conversely, the "psychological consequence . . . produced by observation of conduct with which [one] disagrees . . . is not an injury sufficient to confer standing." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982).

To have standing based on aesthetic harms, Plaintiffs must show that "[their] specific aesthetic interests" are harmed, by describing their particular "use[] and enjoy[ment] [of] the

land" beyond "mere incidental viewership," and they must further identify how they will have to "alter [their] behavior" as a result of the defendant's conduct. *Env't Def. Fund v. FERC* (*EDF*), 2 F.4th 953, 969–70 (D.C. Cir. 2021). Thus, the D.C. Circuit has found standing existed where a plaintiff alleged that construction of a pipeline over property where he frequently fished, boated, and hunted would diminish his ability to do those things. *Sierra Club v. FERC*, 827 F.3d 59, 66 (D.C. Cir. 2016); *see also Food & Water Watch v. FERC*, 28 F.4th 277, 283–84 (D.C. Cir. 2022) (finding standing where construction would cause noise and pollution that would impair "financial value" and "peaceful enjoyment" of nearby property). But the D.C. Circuit has also concluded that a plaintiff lacked standing to vindicate an aesthetic interest when she did "not even allege that she c[ould] see the new [construction] from her property," which was more than "half a mile" away, and attested only that "she must look at an 'eyesore' several times per week when driving past." *EDF*, 2 F.4th at 968–70. The D.C. Circuit found "nothing in the existing case law to suggest that a person who incidentally views something unpleasant has suffered an injury-in-fact for purposes of standing." *EDF*, 2 F.4th at 970.[5]

Here, Plaintiffs allege that Mr. Birnbaum visits the Reflecting Pool on a monthly basis "for walking, reflecting, and taking respite from the demands of his work," and that, due to his training as a landscape architect, he has a "heightened appreciation for the specific design qualities that make the Reflecting Pool significant." Pls. Am. Compl. ¶¶ 19, 20. Thus, so Plaintiffs say, Mr. Birnbaum's "aesthetic enjoyment of the Reflecting Pool . . . has been concretely harmed by Defendants' alteration of its character-defining features and the resulting defects, including uneven coloration, chipped paint, and rapid accumulation of algae." *Id*. ¶¶ 19,

---

[5] Defendants do not concede that cases finding standing based on aesthetic harm were correctly decided and preserve the right to argue otherwise. However, Defendants recognize that such cases are binding on the district court.

20; *see also id.* ¶ 61 ("the transformation has been shocking and upsetting to Mr. Birnbaum and diminished his enjoyment of the Reflecting Pool").  Notwithstanding these changes, Mr. Birnbaum plans to continue visiting the Reflecting Pool on at least a monthly basis going forward.  *Id.* ¶ 19.

Just like the plaintiff in *EDF*, the thrust of Mr. Birnbaum's alleged harm is his viewership of an "eyesore."  *Compare EDF*, 2 F.4th at 970; Pls. Am. Compl. ¶ 20.  Mr. Birnbaum has not alleged that his behavior has changed in any way—indeed, he alleges that he will continue to visit the Reflecting Pool on a monthly basis—and he has not said that his ability to walk, reflect, and take respite from the demands of his work is any different than it was before the challenged project.  *Compare EDF*, 2 F.4th at 969-70; Pls. Am. Compl. ¶ 19.  There's no allegation of harm to person or property value, nor any allegation that Mr. Birnbaum can see the Reflecting Pool from his home.  At bottom, Mr. Birnbaum can still visit and walk around the Reflecting Pool just like before.  His alleged harm is thus insufficiently concrete for purposes of standing.

For purposes of a motion to dismiss, the Court must take as true Mr. Birnbaum's allegations that he is shocked and upset by the resurfacing of the Reflecting Pool.  *See* Pls. Am. Compl. ¶ 61.  But such an injury is purely *psychic* in nature, which does not suffice for standing. *See Valley Forge*, 454 U.S. at 485.  Mr. Birnbaum's alleged distress about the project—no matter how deeply felt—is the sort of "general legal, moral, ideological, or policy objection to a particular government action" that "Article III standing screens out."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  This "'offended observer' theory of standing has no basis in law," *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80 (2019) (Gorsuch, J., concurring), because "[t]he presence of a disagreement, however sharp and acrimonious it may

10

be, is insufficient by itself to meet Art. III's requirements," *Diamond v. Charles*, 476 U.S. 54, 62 (1986).  That is all Mr. Birnbaum has.

This case is unlike those in which a court found standing based on a plaintiff's desire to see something.  For example, the D.C. Circuit considered a case where the plaintiff's members alleged an interest in searching for certain beetles and butterflies and a decision by the Environmental Protection Agency posed a "demonstrable risk" to those insects.  *Ctr. for Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 183 (D.C. Cir. 2017).  The court relied on language from *Lujan* that the "desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing," and concluded that the plaintiff had alleged an injury in fact.  *Id*.  But here, Mr. Birnbaum has not been deprived of the ability to observe or do something—it's not as though the Park Service has clear-cut a forest he used to visit or imperiled a songbird for which he has a special affinity.  Rather, he asserts an interest in *not* observing something he dislikes.

If anything, the plaintiff in *EDF* (who also lacked standing) had a stronger case for standing than Mr. Birnbaum.  She alleged that she would drive past the "eyesore" at issue "several times per week," while Mr. Birnbaum visits only "approximately once a month."  *Compare EDF*, 2 F.4th at 970 *with* Pls. Am. Compl. ¶ 19.  The plaintiff in *EDF* alleged that she lived half a mile away from the challenged project and that the construction did not keep with the character of her neighborhood, while Mr. Birnbaum makes no such allegations about proximity or impact to where he lives (other than that he lives in the "Washington, D.C. metropolitan area").  *Compare EDF*, 2 F.4th at 970 *with* Pls. Am. Compl. ¶ 18.  Ms. Steck was at least likely to see the challenged pipeline and metering station as a matter of course, while Mr. Birnbaum has to seek out the purportedly offensive sight he would prefer not to observe.

11

"A person cannot manufacture standing by voluntarily setting aside potential aesthetic interests (like viewing a pristine expanse of ocean) to pursue an incompatible interest (like viewing oil spills)." *Ctr. for Biological Diversity v. Env't Prot. Agency*, 937 F.3d 533, 541 (5th Cir. 2019). If Mr. Birnbaum does not like the way the Reflecting Pool looks, he can avert his gaze to the Lincoln Memorial during his monthly visits. The capacious definition of injury in fact that Plaintiffs appear to press would confer standing on anyone who dislikes the appearance of any feature on federal property. Extending the language in *Lujan* to confer standing here would conflate concrete injuries with psychological ones and threaten to expand Article III beyond recognition.

Lastly, just like in Plaintiffs' original complaint, Mr. Birnbaum attempts to trace his alleged harm to the appearance of a work in progress. Plaintiffs' own allegations reflect that the Park Service intends to repair issues with the new coating. *See* Pls. Am. Compl. ¶ 60. Although Plaintiffs apparently seek to enjoin this repair work, *see id*. at 31, there is no reason to think that, left to its own devices, the Park Service intends for the finished product to have a peeling liner, uneven coloration, chipped paint, and algae blooms. So once again, Mr. Birnbaum's concerns about a finished product that may not meet his personal design preferences are based on speculation and are too hypothetical to confer jurisdiction. *Friends of the Earth*, 528 U.S. at 180–81. Mr. Birnbaum has not established standing through his alleged aesthetic injury.

## B.    The Foundation has not suffered an Article III injury

Plaintiffs fail to establish standing for the Foundation because they allege only abstract, procedural harms. An organization like the Foundation can demonstrate standing either "on its own behalf," which is called "organizational standing," or "on behalf of its members," which is called "associational standing." *Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d

12

97, 111–12 (D.D.C. 2025) (citations omitted).  Plaintiffs allege only that the Foundation's

inability to "participate and engage" in the NHPA review that the Park Service completed in

March 2026 "directly impair[ed] [its] ability to fulfill the core advocacy and stewardship

functions that constitute its organizational mission."  Pls. Am. Compl. ¶ 17.

To have standing on its own, an organization must show that the defendant's conduct

"directly affected and interfered with [its] core business activities." *All. for Hippocratic Med.*,

602 U.S. at 395.  "[T]he omission of a procedural requirement does not, by itself, give a party

standing to sue." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 921 (D.C. Cir. 2015)

(citation omitted).  Rather, "[d]eprivation of a procedural right without some concrete interest

that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article

III standing." *Id.* (citation omitted).  "[A]n organization's abstract concern with a subject that

could be affected by an adjudication does not substitute for the concrete injury required by

Art[icle] III." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (citation omitted).

Here, all Plaintiffs allege is that, because the Park Service complied with the NHPA by

applying a streamlined review process (consistent with an existing programmatic agreement), the

Foundation lost the opportunity to ask to be a consulting party and submit comments.[6]  Thus, so

Plaintiffs say, the Park Service impaired its "ability to fulfill the core advocacy and stewardship

functions that constitute its organizational mission."  Pls. Am. Compl. ¶ 17.  But even if the Park

Service had an obligation to conduct the full Section 106 consultation process (and it didn't, see

---

[6] By way of background, the Foundation is not guaranteed consulting party status: it could have requested such status, but its participation as such would be left to the discretion of the Park Service.  *See* 36 C.F.R. § 800.2(c)(5); 36 C.F.R. § 800.3.  The only participation rights guaranteed to the Foundation in a Section 106 review process is the ability to submit comments. *See* 36 C.F.R. § 800.2(d)(1)-(2).

Dkt. No. 12 at 24-28), the Foundation must allege something more than a lost opportunity to advocate for their point of view.  *See Food & Water Watch*, 808 F.3d at 919.

The Foundation fails to tie this alleged procedural harm to anything concrete.  The Foundation alleges that it has been denied information about the scope and nature of the resurfacing project.  *See* Pls. Am. Compl. ¶¶ 17, 72, 88. But as a result of the prior emergency motion briefing, the Foundation received all the information to which it was entitled as a matter of course.  *See* Dkt. No. 12 at 15-16 & n.6.  The only NHPA compliance documentation that the Park Service prepared for this project—and the only information to which the Foundation could possibly be entitled—is the Assessment of Effects, available at Dkt. No. 12-10 and reattached hereto as Exhibit 1.

To the extent that the Foundation is saying that they could have gotten more information had the Park Service engaged in a formal Section 106 consultation, rather than applying the streamlined review process available through its programmatic agreement, that allegation would fail to establish standing, too.  *See* Dkt. No. 12 at 16-17.  Simply wanting more information that might be developed or disclosed as a consequence of further process does not suffice for Article III standing.  *See, e.g.*, *Found. on Econ. Trends v. Lyng*, 943 F.2d 79, 84–85 (D.C. Cir. 1991) ("[W]e have never sustained an organization's standing in a NEPA case solely on the basis of 'informational injury,' that is, damage to the organization's interest in disseminating the environmental data an impact statement could be expected to contain."); *Ctr. for Biological Diversity v. Bernhardt*, 490 F. Supp. 3d 40, 49 (D.D.C. 2020). The Foundation had to allege how the Park Service's decision to use a streamlined review process "directly affected and interfered with [its] core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395.  It hasn't done so, and it therefore lacks standing to sue.

14

Last, just as in the first iteration of Plaintiffs' Complaint, the Foundation's allegations focus on the alleged denial of rights under the NHPA and omit any discussion of NEPA. *See* Pls. Am. Compl. ¶ 17. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Thus, if the Foundation is trying to raise a NEPA claim, the Court lacks jurisdiction to hear it.

## II.    Plaintiffs lack standing to seek certain forms of relief

Separately, and in the alternative, Plaintiffs lack standing to seek certain forms of relief requested in their amended complaint. Plaintiffs ask the Court to, *inter alia*, order Defendants to "[e]njoin Defendants from taking any further steps to alter the Reflecting Pool until Defendants have completed a lawful Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review as prescribed by 42 U.S.C. § 4336" and "conduct the Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review as prescribed by 42 U.S.C. § 4336." Pls. Am. Compl. at 30-31.

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431. The plaintiff bears the burden of showing redressability—that is, "whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025) (citation omitted). For purposes of injunctive relief, "past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).

Plaintiffs fail to establish standing to seek an injunction that forbids further alteration to the Reflecting Pool. On its face, this relief is not likely to address Mr. Birnbaum's alleged

aesthetic harm: given that his aesthetic concern with the Reflecting Pool is its current work-in-progress appearance, *see* Pls. Am. Compl. ¶¶ 19, 20, 61, such an injunction would likely prolong his alleged injury and distress. Nor would this injunction remedy the Foundation's alleged procedural and informational injuries. *See* Pls. Am. Compl. ¶¶ 17, 72, 88. The Foundation has all the information to which it was entitled, and it fails to explain how this injunction would remedy the alleged failure by the Park Service to give it an opportunity to comment on a now-complete NHPA process. In any event, the alleged procedural and informational harms, which are "past injuries," are "insufficient to establish standing." *Dearth*, 641 F.3d at 501.

Plaintiffs also fail to establish standing for relief that would direct the Park Service to engage in additional procedure. With respect to the alleged aesthetic harms, further process—in and of itself—will not change that. And Plaintiffs do not ask the Court to order Defendants to take any action that would change the Reflecting Pool's appearance.

So too for the alleged procedural and informational harms. Participating in an NHPA consultation will have no real-world impact unless that consultation is part of a new project, but Plaintiffs (understandably) do not ask the Court to order Defendants to undertake a new Reflecting Pool project. And Plaintiffs now know "about the scope and nature of the project." Pls. Am. Compl. ¶ 88. They would only learn something new if there were a new project. Because the work is complete and the analysis is done, Plaintiffs "might as well ask a meteorologist on Friday to redo the Thursday forecast." *Weiss v. Sec'y of U.S. Dep't of Interior*, 459 F. App'x 497, 500 (6th Cir. 2012). At bottom, to the extent that the Court concludes that Plaintiffs have alleged an Article III injury (and they have not), Plaintiffs have failed to establish that either the requested injunction or further process would redress any of their supposed harms.

16

**CONCLUSION**

Neither Plaintiff alleges a cognizable injury in fact.  Separately, and in the alternative, the relief Plaintiffs request would do nothing to remedy their alleged harms, and as such they lack standing to ask for it.  The Court should dismiss Plaintiffs' amended complaint for lack of subject-matter jurisdiction.

Dated: July 17, 2026                    Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General

*/s/ John K. Heise*
JOHN K. HEISE (CA Bar No. 331615)
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-3312
Email: john.heise@usdoj.gov

*Attorneys for Defendants*