**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION, et al., | |
| *Plaintiffs*, | Civil Action No. 1:26-cv-01593-CJN |
| v. | Hon. Carl J. Nichols |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | |
| *Defendants*. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ..................................................................................................................................... 2

     I.     Plaintiffs fail to establish standing .......................................................................... 2

          A.     Charles Birnbaum has not suffered an Article III injury ........................... 3

          B.     The Foundation has not suffered an Article III injury ............................... 8

     II.    Plaintiffs lack standing to pursue requested relief ................................................ 11

CONCLUSION .................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Animal Legal Def. Fund, Inc. v. Glickman,*
  154 F.3d 426 (D.C. Cir. 1998)................................................................................. 5, 6

*Campaign Legal Ctr. v. Fed. Election Comm'n,*
  31 F.4th 781 (D.C. Cir. 2022).............................................................................. 9, 10

*Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.,*
  901 F.2d 107 (D.C. Cir. 1990)................................................................................. 10

*Env't Def. Fund v. FERC,*
  2 F.4th 953 (D.C. Cir. 2021)................................................................................... 3, 4

*FDA v. All. for Hippocratic Medicine,*
  602 U.S. 367 (2024).................................................................................................. 10

*Foundation on Economic Trends v. Lyng,*
  943 F.2d 79 (D.C. Cir. 1991).................................................................................. 8, 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
  528 U.S. 167 (2000).................................................................................................... 2

*Humane Soc. of the U.S. v. Hodel,*
  840 F.2d 45 (D.C. Cir. 1988)................................................................................... 5, 7

*Humane Soc. of U.S. v. Babbitt,*
  46 F.3d 93 (D.C. Cir. 1995)....................................................................................... 12

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992)................................................................................................. 4, 7

*Palisades Gen. Hosp. Inc. v. Leavitt,*
  426 F.3d 400 (D.C. Cir. 2005).................................................................................. 12

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
  797 F.3d 1087 (D.C. Cir. 2015)................................................................................ 10

*Sierra Club v. FERC,*
  827 F.3d 59 (D.C. Cir. 2016)...................................................................................... 3

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009)................................................................................................... 11

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982)................................................................................................. 5, 8

**Statutes**

42 U.S.C. § 4336................................................................................................................. 11

**Regulations**

36 C.F.R. Part 800.................................................................................................... 11

**Other Authorities**

*Access to Courts: Aesthetic Injuries, Animal Rights, and Anthropomorphism*,
    122 HARV. L. REV. 1204 (2009) ............................................................................... 6

Robert J. Pushaw, Jr., *Limiting Article III Standing to "Accidental" Plaintiffs: Lessons from
    Environmental and Animal Law Cases*, 45 GA. L. REV. 1, 58 (2010)........................................ 6

**INTRODUCTION**

Plaintiff Charles Birnbaum claims he is suffering an Article III injury from the color of the Lincoln Memorial Reflecting Pool ("Reflecting Pool"): its basin is now dark blue, and he prefers dark gray. Plaintiff asks this Court to be the first to ground a finding of aesthetic harm in a color choice. The Cultural Resources Foundation (the "Foundation") laments the fact that it couldn't participate in a more robust conversation about this project before it started and suggests that the absence of some unspecified information about the project will undermine its institutional mission in undisclosed ways. The Foundation similarly asks this Court to be the first to base an informational injury on such a vague allegation of the right to participate in National Historic Preservation Act ("NHPA") and National Environmental Policy Act ("NEPA") reviews. Each theory is nearly boundless in scope and would confer standing upon millions of prospective litigants—anyone who dislikes a federal project or wants to know more about it.

The Court lacks jurisdiction over Plaintiffs' claims.[1] Plaintiffs' theory of aesthetic harm would throw open the courthouse doors to anyone who dislikes nearly any change to any federal property they use for recreation. And Plaintiffs cite no case that would allow an offended observer such as Mr. Birnbaum to claim an injury in fact merely because he dislikes the color of something. So too for the Foundation. Plaintiffs fail to establish that the information they want

---

[1] The afternoon that this Reply was due, the D.C. Circuit issued a 136-page opinion in *National Trust for Historic Preservation in the United States v. National Park Service, et al.* (No. 26-5123) (D.C. Cir.). The government will be appealing this decision. There, the D.C. Circuit concluded that the plaintiff made a clear showing that it was likely to establish each element of standing in the context of a preliminary injunction motion. Slip op. at 30. The Court noted that "[c]onstruction of the ballroom [in President's Park] will cause [the plaintiff] personal and professional 'injuries, including to [her] aesthetic, cultural, and historical interests." *Id.* at 34 (fourth alteration in original) (citation omitted). We are still reviewing this decision and analyzing its impact on this case. Defendants thus request leave to submit a supplemental brief addressing this decision.

exists (a precondition for an alleged harm based on the government "withholding" information) and do not explain how said information has any impact on the Foundation's institutional mission. The Foundation is left asserting a bare procedural right that, without more, does not suffice for standing.

Nor do Plaintiffs offer a persuasive answer to the redressability concerns raised in Defendants' opening brief. Plaintiffs ask the Court to order all repair work to a halt while Defendants undertake further process. But this relief would resolve neither Mr. Birnbaum's purported aesthetic harm, nor create the information that the Foundation wants to have. And the Court lacks jurisdiction to issue the specific relief Plaintiffs seek in the form of administrative processes to undertake in the event of remand.

ARGUMENT

Mr. Birnbaum's aesthetic preferences do not amount to an Article III injury in fact. Nor does the Foundation's vague complaint that they would like to have more information or process suffice. And Plaintiffs fail to establish that the relief they request would be likely to redress their alleged harms. The Court should dismiss this case.

## I.      Plaintiffs fail to establish standing

To have Article III standing, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Neither Plaintiff has alleged an injury that suffices for Article III standing.

2

### A.    Charles Birnbaum has not suffered an Article III injury

Plaintiffs' opposition confirms Mr. Birnbaum's theory of injury: because he prefers the color gray, the Reflecting Pool's blue coating harms his aesthetic interest. *See* Dkt. No. 27 (Pls. Opp.) at 15 ("The peeling and algae aggravate the injury; they do not constitute it. Repairing the blue coating will not restore the achromatic basin. Even a defect-free blue pool inflicts the aesthetic injury . . . .").

According to Plaintiffs, the standing inquiry turns on "whether the plaintiff can show that his aesthetic enjoyment of *something* has been affected by Defendants' activity." Pls. Opp. at 12. Surely even the plaintiff in *Env't Def. Fund v. FERC (EDF)*, 2 F.4th 953 (D.C. Cir. 2021), met this low bar by describing the challenged project as a "looming eyesore" that she drove past several times per week that was "not in keeping with the character of her neighborhood." 2 F.4th at 968 (brackets omitted). No doubt the *EDF* plaintiff enjoyed her drives past the metering station a little bit less, just as Mr. Birnbaum anticipates less enjoyable visits to the Reflecting Pool. But central to the D.C. Circuit's reasoning was the plaintiff's failure to allege how "her planned future uses of the land have been foreclosed by the construction." *Id*. at 969. On that basis, the Circuit distinguished cases like *Sierra Club v. FERC*, 827 F.3d 59 (D.C. Cir. 2016), where the plaintiff showed standing by explaining how the installation of a pipeline would interfere with his boating and duck hunting. *EDF*, 2 F.4th at 970. Neither the Reflecting Pool's color (the difference between blue and gray, really) nor its current or future maintenance forecloses Mr. Birnbaum's future use of the Reflecting Pool. The color in no way inhibits his

3

ability to visit and observe the Pool, and temporary maintenance will not permanently interfere with Mr. Birnbaum's future use.

To be sure, the *EDF* plaintiff did not allege that she "used and enjoyed the land on which the station now exists" or that she "intended to use the land in the future." *Id*. at 969; *see* Pls. Opp. at 12. But just because Mr. Birnbaum's allegations do not suffer from this particular deficiency does not mean he has standing. Whether he uses and enjoys the area is relevant only if he has asserted a cognizable injury, and Mr. Birnbaum has not shown a legally protected interest in viewing a specific color. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Indeed, Plaintiffs do not cite a single case that based an Article III injury on a preferred color. In many ways, the *EDF* plaintiff's alleged harms were more concrete and particularized than Mr. Birnbaum's. For example, the *EDF* plaintiff lived closer to the objectionable structure, made a plausible argument that it could affect her property value (alleging that it did not keep with the character of her neighborhood), and visited the area more frequently. *EDF*, 2 F.4th at 968.

At bottom, both the *EDF* plaintiff and Mr. Birnbaum dislike the appearance of something, on land they do not own, that they see with some frequency. Both hoped to establish standing based on the "incidental viewership of something unappealing." 2 F.4th at 970. And both lack standing for want of an injury in fact.

Plaintiffs are not shy about the scope of their theory: they seem to be saying that Mr. Birnbaum would have standing to challenge any physical alteration of the Reflecting Pool that he disagrees with. *See* Pls. Opp. at 12 ("But Mr. Birnbaum is not asserting an abstract, ideological disagreement. The government altered the physical features of a landscape he personally uses."). Under this theory, the courthouse doors would be open to anyone who dislikes the way something on federal property looks or may look, even if the appearance in no way interferes

4

with their ability to use the affected area. For example, Mr. Birnbaum presumably thinks he would have standing to challenge a decision to install a water fountain if he believes the water fountain would degrade his enjoyment of the Reflecting Pool. If the government wanted to plant new trees or prune existing ones, those decisions, too, could presumably amount to an Article III injury under Mr. Birnbaum's theory. And because these harms are based on Mr. Birnbaum's preferences and personal opinions, they could be molded to challenge anything he dislikes.

Plaintiff points to Mr. Birnbaum's "heightened appreciation" for the Reflecting Pool's design, but that does not manufacture an Article III injury. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982) ("Standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy."). If it were true that anyone's idiosyncratic design preference about a federal structure sufficed for standing, there would be little bite left to basic standing principles, both because such alleged injuries are often abstract and because such grievances are often generalized.

Plaintiffs cite two cases to support the proposition that merely seeing something unpleasant suffices for Article III injury: *Animal Legal Def. Fund, Inc. v. Glickman (Glickman)*, 154 F.3d 426, 433 (D.C. Cir. 1998), and *Humane Soc. of the U.S. v. Hodel (Hodel)*, 840 F.2d 45, 51 (D.C. Cir. 1988). Both cases deal with animal observation, and, rightly or wrongly, that type of aesthetic interest has a precedential pedigree that Plaintiffs' theory does not. *See Glickman*, 154 F.3d at 432 ("The Supreme Court has repeatedly made clear that injury to an aesthetic interest in the observation of animals is sufficient to satisfy the demands of Article III standing."); *id.* at 438 ("Where an act is expressly motivated by considerations of humaneness toward animals, who are uniquely incapable of defending their own interests in court, it strikes

5

us as eminently logical to allow groups specifically concerned with animal welfare to invoke the aid of the courts in enforcing the statute." (alteration and citation omitted)).[2]

*Glickman* demonstrates that the animal observation cases are their own unique species of precedent. In *Glickman*, the plaintiff alleged a special connection to individual primates enduring inhumane treatment at a zoo that he regularly visited and planned to keep visiting. 154 F.3d at 431. The D.C. Circuit, relying in part on the "court's precedent . . . specifically recogniz[ing] that people have a cognizable interest in viewing animals free from inhumane treatment," and drawing an analogy to "plaintiffs who suffered aesthetic injury stemming from the condition and quality, or despoliation, of an environmental area that they used," concluded that the plaintiff had standing. *Id*. at 433, 434. Various commentators have described *Glickman* and its progeny as an "expansion from species-based to individual animal-based aesthetic injury claims." *Access to Courts: Aesthetic Injuries, Animal Rights, and Anthropomorphism*, 122 HARV. L. REV. 1204, 1216 (2009); *see also* Robert J. Pushaw, Jr., *Limiting Article III Standing to "Accidental" Plaintiffs: Lessons from Environmental and Animal Law Cases*, 45 GA. L. REV. 1, 58 (2010) (explaining that *Glickman* "appears quite radical," but that its "precise holding was confined to plaintiffs who had frequently visited specific animals in public institutions, planned to continue doing so, and had formed an emotional attachment to them").

Plaintiffs give no reason for the Court to extend the reasoning from *Glickman* to the present case; doing so would be a significant expansion of Article III injury principles. Unlike in *Glickman*, there is no long-standing line of D.C. Circuit cases holding that plaintiffs have a cognizable interest in viewing federal structures free from alterations as minor as the difference

---

[2] We preserve the argument that these cases were wrongly decided, but we recognize that they are binding on this Court.

6

between blue and gray.  Unlike the context of environmental degradation, Mr. Birnbaum cannot point to damage to a space he enjoys, like the dwindling of a species or the felling of trees. Indeed, that was the gravamen of the court's reasoning in *Hodel*, where the plaintiffs alleged that allowing hunting on wildlife refuges "deplet[ed] the supply of animals and birds that refuge visitors seek to view," and also forced plaintiffs to "witness animal corpses and environmental degradation."  840 F.2d at 52.

Rather, what we have here is an idiosyncratic, abstract disagreement about a design feature that may or may not be visible to the naked eye of a casual observer.  This case is thus unlike the paradigmatic animal-observer cases, where the plaintiff expresses concern about being able to observe a species in the future.  *See, e.g.*, *Lujan*, 504 U.S. at 562–63 (explaining that the "desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing").  Instead, here, Mr. Birnbaum expresses dismay about seeing federal property in an altered state, rather than the diminished or lost opportunity to see an endangered species.  *Glickman* and other animal-rights standing cases are close to a high-water mark of standing, and Plaintiffs' proposed extension of that line of cases threatens to break the dam.

At bottom, Mr. Birnbaum is left with offended-observer status.  Plaintiffs allege that he "will continue to suffer [his] aesthetic injury unless and until the historic character of the pool is restored."  Dkt. No. 23 ("Pls. Am. Compl.") ¶ 20; *see also* Pls. Opp. at 14 (describing Mr. Birnbaum's injury as "being deprived the opportunity to view the Reflecting Pool in its pre-project splendor").  This shows that Plaintiff simply disagrees with the color of the Reflecting Pool's basin, but such a disagreement amounts to an abstract, generalized, "psychological" harm,

7

which does not suffice for an injury in fact. *Valley Forge*, 454 U.S. at 485. Mr. Birnbaum lacks an injury in fact, and he should be dismissed from this case.

## B.    The Foundation has not suffered an Article III injury

The Foundation has done even less than Mr. Birnbaum to establish standing. For all the hand-waving and buzzwords concerning its institutional mission, Plaintiffs allege little of substance. The Foundation relies on two purported harms: (1) a deprivation of information that doesn't yet exist, and (2) the inability to participate in the Section 106 process that they think should have happened. Neither alleged harm suffices for standing.

Plaintiffs' opposition makes clear that they're relying on information that *would have been generated* if the Park Service had undertaken a different Section 106 process. *See* Pls. Opp. at 16-17 ("When NPS conducts the standard Section 106 and NEPA reviews, it *generates* a trove of information, including detailed presentations about the project options the agency considered, materials from meetings with consulting parties, and communications with other agencies.") (emphasis added). Put simply, this is not how informational injuries work: no statute requires the agency to disclose information that doesn't exist.

*Foundation on Economic Trends v. Lyng*, 943 F.2d 79 (D.C. Cir. 1991), proves the point. There, the D.C. Circuit explained, "we have never sustained an organization's standing in a NEPA case solely on the basis of 'informational injury,' that is, damage to the organization's interest in disseminating the environmental data an impact statement could be expected to contain."[3] *Id*. at 84. Were it otherwise, an organization's (or any member of the public's) "mere

---

[3] As noted in the opening brief, Plaintiffs trace no harm from the purported NEPA violations to the Foundation. *See* Pls. Am. Compl. ¶¶ 14-17. Nevertheless, the NEPA context here is instructive as to Section 106 compliance given that both statutes are fundamentally procedural in nature, requiring the agency to examine and report the consequences of their actions before undertaking them.

interest in a problem" would suffice to confer standing. *Id*. at 85 (citation omitted). And the D.C. Circuit further observed that "'informational injury,' in its broadest sense, exists day in and day out, whenever federal agencies are not creating information a member of the public would like to have"—meaning that a plaintiff could create standing for himself in any case merely by requesting further information from an agency. *Id*.

Even the cases that Plaintiffs say support their claim for standing explain that "a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." *Campaign Legal Ctr. v. Fed. Election Comm'n*, 31 F.4th 781, 783 (D.C. Cir. 2022). A denial of access to information presupposes that the information already exists (which it did in *Campaign Legal Center*, *see id*. at 790). Here, Defendants have not "withheld" anything, *contra* Pls. Opp. at 17. In opposition, Plaintiffs gesture towards other materials that might be created if additional Section 106 consultation took place. *See* Pls. Opp. at 16-17. But what Plaintiffs fail to do is establish that there is specific information about this project over and above what they already have that the Park Service currently has in its possession relevant to the effects of the project or their purported injuries. And Plaintiffs do not explain how the "comprehensive disclosure requirements" in the Federal Election Campaign Act at issue in the *Campaign Legal Center* case are analogous to the Park Service's obligations under NHPA and NEPA. *See* 31 F.4th at 784.

Nor does the Foundation explain how the denial of this unspecified, yet-to-be-generated information would undermine its mission. "[T]o sustain informational standing, organizations must point to concrete ways in which their programmatic activities have been harmed." *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 123 (D.C. Cir.

9

1990).  Plaintiffs say that the Foundation "uses this information to shape its activities and further

its mission," and "draws on exactly that kind of information in its educational and stewardship

programs."  Pls. Opp. at 17 & n.3.  The continued vagueness about what the Foundation's

mission entails and how the information would further that mission means the Foundation lacks

standing—it has "failed to show how the lack of" information "has significantly harmed their

ability to educate and inform the public."  *See Competitive Enter. Inst.,* 901 F.2d at 123. This

distinguishes the present case from the *PETA* case that Plaintiffs cite in support, *see* Pls. Opp. at

17, where the plaintiff explained at length how the USDA's challenged action "impair[ed]

PETA's activities," including but not limited to an estimated expenditure of internal funds

traceable to the challenged action.  *See People for the Ethical Treatment of Animals v. U.S. Dep't

of Agric.*, 797 F.3d 1087, 1095–96 (D.C. Cir. 2015).  Moreover, the Supreme Court's 2024

decision in *FDA v. Alliance for Hippocratic Medicine* made clear that the alleged "impair[ment]"

of an organizational mission does not demonstrate standing.  602 U.S. 367, 394 (2024).  Rather,

an organizational plaintiff must show that a challenged action has "directly affected and

interfered with [its] core business activities."  *Id*. at 395.  Plaintiffs have made no such showing

here.

Apart from the alleged informational injury, the Foundation merely leans on its alleged

right—if it were the case that the Park Service had to conduct a full Section 106 review (which it

didn't)—to submit comments and ask to participate as a consulting party.  *See* Pls. Opp. at 17-18.

But the Foundation must tether this procedural right to something concrete.  They haven't done

so.  This aspect of the case is just like *Summers*, where the Supreme Court concluded that

allegations that the plaintiffs "have been denied the ability to file comments" was insufficient,

10

without more, for standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). The Court should dismiss the Foundation as a plaintiff for lack of an injury in fact.

## II.     Plaintiffs lack standing to pursue requested relief

Plaintiffs ask the Court to halt any repair work and order Defendants to engage in the processes they believe to have been necessary before starting the project. Pls. Am. Compl. at 31. In the interest of clarity, Defendants only contest in this motion whether Plaintiffs have standing to seek items (c) and (d) in their Prayer for Relief: respectively, an injunction that forbids Defendants "from taking any further steps to alter the Reflecting Pool until Defendants have completed a lawful Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review as prescribed by 42 U.S.C. § 4336," and an order that directs Defendants "to conduct the Section 106 consultation process as prescribed by 36 C.F.R. Part 800 and a NEPA review as prescribed by 42 U.S.C. § 4336."

For item (c), Plaintiffs fail to explain how putting a stop to minor repairs within the scope of the original project while further meetings occur and reports are prepared would address any of their alleged harms. Mr. Birnbaum alleges that he's injured by the "resurfacing of the basin in a blue epoxy/polyurea coating" as well as "the resulting defects, including uneven coloration, chipped paint, and rapid accumulation of algae." Pls. Am. Compl. ¶ 20. So regarding the first aspect of this alleged injury (the material used to resurface the Reflecting Pool and color thereof) a freeze on all project work wouldn't redress the alleged aesthetic harm because nothing would change, and Mr. Birnbaum's purported injury would not be remedied. Nor would stopping repair work resolve the defects—indeed, quite the opposite. And halting repairs would not generate the information the Foundation would like to have. So Plaintiffs don't establish any likelihood that the injunction they seek would redress their alleged injuries.

11

*Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 100 (D.C. Cir. 1995) (requiring a "likelihood" of plaintiff's desired outcome for redressability in procedural injury case).

For item (d), Plaintiffs have asked the Court for specific relief: to dictate the nature of the procedures and review that the Park Service would undertake in the event of remand. But "under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). In other words, the Court could remand the Park Service's decision for further review consistent with a merits opinion, but "ha[s] no jurisdiction to order specific relief." *Id*. Plaintiffs fail to show redressability for all the relief they request.

## CONCLUSION

Neither Plaintiff alleges a cognizable injury in fact, and much of the relief they request shows a vanishingly small possibility of redressing their alleged harms. The Court should dismiss Plaintiffs' amended complaint for lack of subject-matter jurisdiction.

August 7, 2026                          Respectfully submitted,

                                        ADAM R.F. GUSTAFSON
                                        Principal Deputy Assistant Attorney General

                                        BRADLEY CRAIGMYLE
                                        Deputy Assistant Attorney General

                                        */s/ John K. Heise*
                                        JOHN K. HEISE (CA Bar No. 331615)
                                        Trial Attorney
                                        Natural Resources Section
                                        Environment & Natural Resources Division
                                        Natural Resources Section
                                        Ben Franklin Station, P.O. Box 7611
                                        Washington, D.C. 20044-7611
                                        Telephone: (202) 598-3312
                                        Email: john.heise@usdoj.gov

                                        *Attorneys for Defendants*

13