**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION *et al.*,<br>*Plaintiffs*,<br>*v.*<br>U.S. DEPARTMENT OF THE INTERIOR *et al.*,<br>*Defendants*. | No. 26 Civ. 1593 (CJN) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**
**REGARDING IMPACT OF *NATIONAL TRUST***
**ON DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The Facts in This Case Parallel the Facts the D.C. Circuit Held Sufficient to Confer Standing in *National Trust*. .......... 1

II. *National Trust* Rejected the Arguments Raised by the Government in This Litigation .......... 5

A. A Plaintiff Need Not Show Altered Behavior. .......... 6

B. The Ability to Look Away Does Not Cure the Injury. .......... 7

C. Cognizable Aesthetic Injury Is Not Confined to Animal-Observation Cases. .......... 7

D. An Injury to a Resource the Plaintiff Uses Is Not a Generalized Grievance. .......... 8

III. Mr. Birnbaum Has Standing Even Under the Dissenting Opinion in *National Trust*. .......... 9

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

### Cases

*Animal Legal Defense Fund v. Glickman*,
154 F.3d 426 (D.C. Cir. 1998) .......... 7

*Env't Def. Fund v. FERC*,
2 F.4th 953 (D.C. Cir. 2021) .......... 6, 10

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 1

*Humane Society of the United States v. Hodel*,
840 F.2d 45 (D.C. Cir. 1988) .......... 7

*Int'l Dark-Sky Ass'n v. FCC*,
106 F.4th 1206 (D.C. Cir. 2024) .......... 10

*Lemon v. Geren*,
514 F.3d 1312 (D.C. Cir. 2008) .......... 8

*Narragansett Indian Tribal Historic Preservation Office v. FERC*,
949 F.3d 8 (D.C. Cir. 2020) .......... 8

*Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*,
No. 26-5123, -- F.4th ----, 2026 WL 2276494 (D.C. Cir. Aug. 7, 2026) .......... passim

*Sierra Club v. Jewell*,
764 F.3d 1 (D.C. Cir. 2014) .......... 8

*United States v. Torres*,
115 F.3d 1033 (D.C. Cir. 1997) .......... 1

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) .......... 5

## INTRODUCTION

In its decision in *Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*, No. 26-5123, -- F.4th ----, 2026 WL 2276494 (D.C. Cir. Aug. 7, 2026) ("*National Trust*"),[1] a panel of the Court of Appeals followed well-established precedent: A plaintiff who "'use[s] the affected area' and is an individual 'for whom the aesthetic and recreational values of the area will be lessened by the challenged activity' has 'adequately allege[d]' an injury in fact." *Id.* at *15 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)). Applying this law, the Court of Appeals held that Professor Alison Hoagland, a member of National Trust, suffered an Article III injury, thus giving National Trust standing to bring its suit.

At the Court's invitation, Plaintiffs submit this supplemental filing to address the effect of *National Trust* on Defendants' motion to dismiss. The effect of this decision—under either the majority or the dissenting view—is direct and dispositive: it confirms that Plaintiff Charles Birnbaum—whose claim to standing is at least as strong as Professor Hoagland's—has asserted a cognizable injury and has standing to bring his suit. The Court should deny Defendants' motion to dismiss.

## ARGUMENT

### I. The Facts in This Case Parallel the Facts the D.C. Circuit Held Sufficient to Confer Standing in *National Trust*.

In *National Trust*, the plaintiff organization challenged the construction of the new White House ballroom. The D.C. Circuit held that the organization had clearly shown that its member,

[1] On August 21, 2026, the Chief Justice temporarily stayed the preliminary injunction entered by the district court pending further order. That order does not disturb the D.C. Circuit's opinion, which remains binding on this Court. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of this court, are obligated to follow controlling circuit precedent until either [the Court of Appeals], sitting en banc, or the Supreme Court, overrule it.").

Professor Alison Hoagland, "likely has standing to sue in her own right," 2026 WL 2276494, at *13. Specifically as to injury, the Court held that Professor Hoagland has "adequately alleged, at this stage of the litigation, concrete and imminent 'professional and personal[,]' historical-preservation, and aesthetic injuries that '[she] would suffer[.]'" *Id.* at *14. The court identified four features of her declaration that supported her standing.

*First*, Professor Hoagland's regular use of the affected property. She "routinely recreates by walking in front of the White House and in Lafayette Square directly across from the White House," and "regularly walk[s] through portions of President's Park . . . in order to enjoy the historic buildings" and "the beauty of the L'Enfant Plan." *Id.* at *13.

*Second*, her intent to continue that use. Professor Hoagland "intend[s] to continue to travel to the area around the White House, to walk through Lafayette Square, [and] to attend functions in neighboring buildings . . . about once a month." *Id.* at *14.

*Third*, Professor Hoagland's identification of a specific design characteristic that the challenged undertaking would alter. She valued the White House's intentionally designed "republican simplicity," the architectural statement that "our president lives in a *house*[,]" "not a palace," and the "intentional architectural symmetry" of the L'Enfant Plan, and explained that the proposed ballroom would "overshadow[] the White House, exceeding it in height and massing," and "diminish the primacy of the White House[.]" *Id.* at *14, *17.

*Fourth*, her professional relationship to the resource. Professor Hoagland is "an architectural historian, author, consultant, and professor emerita in historic preservation" who "worked for fifteen years as the senior historian at the National Park Service's Historic American Buildings Survey, which documents historic aspects of national sites, including the White House." *Id.* at *13. This relation added a professional dimension to her injury. Her scholarship uses the

White House "as a reference point" for her study of the District's architecture, and this "academic work . . . will be hampered" by the construction. *Id.* at *14, *18. The court treated that professional dimension as strengthening the injury, relying on her "professional and personal" harms throughout, *id.* at *14–*15, and observing that she identified "concrete ways she is personally and routinely impacted" as a result of her professional commitments and research, *id.* at *17.

The facts in this case mirror each of those four features.

*Regular use of the affected property.* Mr. Birnbaum alleges that the Lincoln Memorial Grounds and the Reflecting Pool are his "go-to place for walking, reflecting, and taking respite from the demands of his work," and that he found particular solace there during the COVID-19 pandemic. First Amended Complaint ("FAC") ¶ 19, ECF No. 23. That is enjoyment of the affected area in the sense *Laidlaw* and *National Trust* require, not incidental exposure to it. *See National Trust*, 2026 WL 2276494, at *14-*15.

*Intent to continue that use.* Mr. Birnbaum visits "approximately once a month and plans to continue visiting . . . with at least the same frequency in the future." FAC ¶ 19. In *National Trust*, the D.C. Circuit held an identical frequency sufficient, and identified once-a-month visits with an intent to continue as "plainly . . . imminent under established precedent." 2026 WL 2276494, at *15 n.5.

*A specific design characteristic altered by the undertaking.* Mr. Birnbaum identifies the grey-tinted, achromatic basin as the source of the pool's reflective depth and alleges that its replacement with a blue epoxy and polyurea coating has materially degraded his aesthetic experience of the landscape. FAC ¶ 20.

The Court does not need to rely on Mr. Birnbaum's say-so.[2] The Park Service's own 1999

[2] Similarly, in *National Trust*, the D.C. Circuit noted that the defendant agency had

Cultural Landscape Report identifies the grey, achromatic basin as a character-defining feature of the Lincoln Memorial Grounds and the source of the pool's reflective function. *Id.* ¶ 43. And the Park Service's own Assessment of Actions Having an Effect on Historic Properties for this project records that the resurfacing does not "[r]eplace historic features/elements in kind," that it does "[a]dd non-historic features/elements to a historic structure," and "[a]lter or remove features/elements of a historic setting or environment," ECF No. 25-1 at 3; that "[Cultural Landscape Reports] do not recommend painting the pool walls or bottom and [Cultural Landscape Inventories] have no historic documentation of painting," *id.* at 4; and that "[c]onsultation with the DC-[State Historic Preservation Officer] would probably result in non-concurrence with an agency official proposed finding of No Adverse Effect," *id.* at 5. This record forecloses the premise that Mr. Birnbaum's identification of the altered features reflects nothing more than his "idiosyncratic" tastes. Defs.' Reply in Supp. of Mot. to Dismiss ("Reply Br.") at 5, 7, ECF No. 29.

*Professional relationship to the resource.* Mr. Birnbaum served from 1992 to 2007 as coordinator of the National Park Service's Historic Landscape Initiative, and authored *The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for the Treatment of Cultural Landscapes* (1996), the governing federal framework for the treatment of historic landscapes, including the Lincoln Memorial Grounds. FAC ¶ 18. Where Professor Hoagland spent fifteen years documenting historic properties for the Park Service, Mr. Birnbaum

---

acknowledged that views of the White House "will be permanently altered," that the project would "disrupt the historical continuity of the White House grounds and alter the architectural integrity of the east side[,]" and that it would create "a visual imbalance." 2026 WL 2276494, at *16. That agency record, the court held, "underscores the concreteness, imminence, and substantiality of Professor Hoagland's individualized injuries," and "belies the Defendants' effort to paint [them] as the idiosyncratic grousing of 'a single pedestrian[]' who 'occasionally walks near President's Park[.]'" *Id.* Because the agency had found the effects the plaintiff described, the government could not "claim that Professor Hoagland is misguided in asserting those injuries." *Id.*

spent fifteen years at the Park Service and authored the standards under which the Park Service treats historic landscapes. That relationship adds the same professional dimension to his injury: his authorship of the Landscape Guidelines gives him "a heightened appreciation for the specific design qualities that make the Reflecting Pool significant." *Id.* ¶ 20. Defendants respond that "heightened appreciation" cannot "manufacture an Article III injury," Reply Br. at 5, invoking a statement from *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982), that standing "is not measured by the intensity of the litigant's interest." But Mr. Birnbaum does not claim standing merely because he feels more strongly than others about historic preservation; he claims it because the alteration of the historic features of the property diminished his enjoyment of the resource. Expertise in historical preservation both in *National Trust* and here explains why changes which Defendants attempt to brush aside as "minor," Reply Br. 6, constitute a concrete injury in the historic preservation context.

It bears emphasizing that the parallels arise under a materially less demanding evidentiary standard. *National Trust* was decided on a preliminary-injunction record requiring a clear showing on evidence. 2026 WL 2276494, at *12. Defendants' motion is a facial challenge, on which the allegations of the First Amended Complaint are accepted as true. And those allegations readily establish that Mr. Birnbaum has suffered an Article III injury at least as strong as the injury described in *National Trust*.

## II. *National Trust* Rejected the Arguments Raised by the Government in This Litigation.

The parallels set out above dispose of Defendants' challenge to Mr. Birnbaum's Article III standing. Each of the arguments Defendants have pressed against that conclusion was raised by the government in *National Trust* and rejected: that a plaintiff must show his behavior has changed;

that a plaintiff's ability to look away defeats the injury; that cognizable aesthetic injury is confined to a discrete line of animal-observation cases; and that what remains is a generalized grievance.

**A. A Plaintiff Need Not Show Altered Behavior.**

The centerpiece of Defendants' argument is that Mr. Birnbaum "has not alleged that his behavior has changed in any way," and that because he "can still visit and walk around the Reflecting Pool just like before," his injury is "insufficiently concrete." Defs.' Mem. in Supp. of Mot. to Dismiss ("Mot.") at 10, ECF No. 25. Defendants derive that requirement from a selective quotation from *Env't Def. Fund v. FERC* ("*EDF*"), 2 F.4th 953, 969-70 (D.C. Cir. 2021). Mot. at 9.

The government advanced the same argument in *National Trust*, contending "that aesthetic harm from the permanent visual destruction of part of the Nation's history is insufficient unless it also changes the plaintiff's conduct." 2026 WL 2276494, at *17. The D.C. Circuit's response was categorical: "That makes no sense." *Id.* The court explained that "[t]he whole point of preserving historic buildings and sites, monuments, and memorials is for members of the public to be able to visit them, view them, and appreciate them, even though they cannot use them in the tangible ways the Defendants would require." *Id.* Injury lies in the impairment of that relationship to the resource, not in whether the plaintiff stops visiting.

The court reinforced the point in distinguishing *EDF* itself. As the D.C. Circuit explained, the plaintiff in *EDF* failed because "she never indicate[d] how she derived aesthetic value from the land as it had existed before the construction[,]" because she did not allege "that she intended to use the land in the future[,]" and because she did not show that her "planned future uses of the land ha[d] been foreclosed." *Id.* at *18 (quoting *EDF*, 2 F.4th at 969). Against that, the court set out what the *National Trust* plaintiff had shown: her aesthetic and professional interest in the resource's historic design; her regular visits and intent to continue them; and "how the proposed

ballroom would materially injure her personal and professional enjoyment of the historic site." *Id.* Diminished enjoyment due to Defendants' actions—not altered conduct—is what standing requires. *See also* Pls.' Mem. in Opp. ("Opp.") at 11-12, ECF No. 27. Mr. Birnbaum has made that showing. *See supra*, Part I.

**B. The Ability to Look Away Does Not Cure the Injury.**

Defendants argue that "[i]f Mr. Birnbaum does not like the way the Reflecting Pool looks, he can avert his gaze to the Lincoln Memorial during his monthly visits." Mot. at 12. The government made the same argument in *National Trust*, urging that the plaintiff could "easily avert her gaze" and that persons "wounded by the lost historical view could just 'shift [their] gaze[.]'" 2026 WL 2276494, at *18. The D.C. Circuit answered unequivocally: "That is wrong." *Id.* at *17. Looking away does not cure the injury, because the injury is the loss of the opportunity to experience the resource as it was: the plaintiff "will no longer be able to 'use [and] derive benefit from' seeing and studying" the resource in its historic form, "and that permanent loss will injure her 'aesthetic, cultural, and historical interests[.]'" *Id.* (quoting declaration).

The D.C. Circuit also identified the consequence of the contrary rule. Defendants' "cramped standing theory would deem no one injured by a decision to raze the Statue of Liberty, to obscure the names on the Vietnam War Memorial, or to install a political billboard atop Mount Rushmore." *Id.* at *18. The same reasoning applies to the resurfacing of the basin of the Lincoln Memorial Reflecting Pool.

**C. Cognizable Aesthetic Injury Is Not Confined to Animal-Observation Cases.**

Defendants' reply rests on the proposition that *Animal Legal Defense Fund v. Glickman*, 154 F.3d 426 (D.C. Cir. 1998), and *Humane Society of the United States v. Hodel*, 840 F.2d 45 (D.C. Cir. 1988), are "their own unique species of precedent," Reply Br. at 6, and that "that type

of aesthetic interest has a precedential pedigree that Plaintiffs' theory does not," *id.* at 5. They assert that "there is no long-standing line of D.C. Circuit cases holding that plaintiffs have a cognizable interest in viewing federal structures free from alterations." *Id.* at 6–7.

As *National Trust* makes clear, that, too, is wrong. There is "no principled distinction between the injury in fact of disrupted star gazing, battlefield gazing, animal viewing, and Professor Hoagland's disrupted historic architecture viewing (and studying)." 2026 WL 2276494, at *15 n.5. Nothing in Article III justifies drawing a distinction between viewing animals and monuments.

Instead, *National Trust* catalogues authorities in which plaintiffs successfully asserted injury from alteration of historic landmarks: *Lemon v. Geren*, 514 F.3d 1312, 1314–15 (D.C. Cir. 2008), in which plaintiffs were harmed by "the closure and redevelopment of Fort Ritchie," "an historic site they visit and enjoy"; *Narragansett Indian Tribal Historic Preservation Office v. FERC*, 949 F.3d 8, 12 (D.C. Cir. 2020), in which the court explained that "the destruction of the ceremonial landscapes" used for cultural and religious purposes "certainly qualifies as an injury in fact"; and *Sierra Club v. Jewell*, 764 F.3d 1, 5 (D.C. Cir. 2014), in which members who "view and enjoy" the Blair Mountain battlefield "for purposes of studying and appreciating its history" had standing to challenge action affecting the site. 2026 WL 2276494, at *15, *17, *18. None of these precedents involves animals. Each involves a built or cultural landscape that plaintiffs visited and valued. Mr. Birnbaum's injury from the alteration of the Reflecting Pool, a historic landmark, falls squarely within precedent.

**D. An Injury to a Resource the Plaintiff Uses Is Not a Generalized Grievance.**

Defendants characterize Mr. Birnbaum's injury as "purely psychic in nature," Mot. at 10, and as an "abstract, generalized, 'psychological' harm," Reply Br. at 7–8, invoking *Valley Forge*

and *FDA v. All. for Hippocratic Med.* ("*AHM*"), 602 U.S. 367 (2024). The government relied on these authorities in *National Trust*, and the D.C. Circuit rejected both.

As to *Valley Forge*, the Court of Appeals explained: it is not "accurate for the Defendants to categorize Professor Hoagland's injury as a mere 'psychological consequence' that similarly impacts everyone across the country." 2026 WL 2276494, at *17. The plaintiff had "identified concrete ways she is personally and routinely impacted" — her professional commitments in the affected area, her recreational time there, and her research drawing on the resource. *Id.* As to *AHM*, the Court of Appeals explained that the plaintiff "is a far cry from the doctors alleging harm when thinking about or witnessing others use abortion drugs," because she alleged "direct harm to her personal 'aesthetic, cultural, and historic' interests that she fulfills through her regular visits," rather than "mere 'distress at or disagreement with the activities of others[,]' divorced from the governmental action's direct effect on her." *Id.* (quoting *AHM*, 602 U.S. at 393 n.3). The line the court drew is between ideological objection to government conduct and impairment of the plaintiff's own experience of a resource she uses. Mr. Birnbaum is on the same side of this line as Professor Hoagland: like her, he does not assert an abstract objection to the government's actions; instead, he was injured by the government's alteration of a historic resource he regularly enjoys and wants to enjoy in the future. *See* FAC ¶¶ 19-20; *see also* Opp. at 14.

### III. Mr. Birnbaum Has Standing Even Under the Dissenting Opinion in *National Trust*.

Although it is not controlling, it is notable that Mr. Birnbaum has standing even under the dissenting opinion in *National Trust.* The dissent did not question that aesthetic harm can constitute an Article III injury. It treated as controlling precedent both *Int'l Dark-Sky Ass'n v. FCC*, 106 F.4th 1206 (D.C. Cir. 2024), where stargazers "use[d]" the sky, and *Jewell*, where plaintiffs "view[ed] and enjoy[ed]" a historic battlefield. 2026 WL 2276494, at *49 (Rao, J., dissenting). The dissent's

disagreement with the majority was with the sufficiency of Professor Hoagland's declaration on two grounds—lack of imminence and particularization—neither of which applies to Mr. Birnbaum.

First, as to imminence, the dissent faulted Professor Hoagland for not stating "concrete plans to use and enjoy President's Park," observing that she "does not claim that taking in an unchanged view of the White House is the object of her future plans." *Id.* at *50. Mr. Birnbaum alleges precisely that. The Reflecting Pool is not a place he passes; it is his "go-to place for walking, reflecting, and taking respite from the demands of his work." FAC ¶ 19. He alleges that he visits approximately once a month and "plans to continue visiting . . . with at least the same frequency in the future." *Id.* Furthermore, his enjoyment has *already* been diminished by Defendants' transformation. FAC ¶ 61. The injury is not merely imminent; it is already occurring.

Second, as to particularization, the dissent posited that a plaintiff who "incidentally views something unpleasant" while traveling elsewhere does not "use" the property. 2026 WL 2276494, at *49 (quoting *EDF*, 2 F.4th at 970). It read Professor Hoagland's declaration as describing walks past the White House "on her way to other buildings." *Id.* at *50. That reading, whatever its merits as to Professor Hoagland, has no application here. Mr. Birnbaum does not encounter the Reflecting Pool *en route* to somewhere else. He goes there specifically for the purpose of enjoying the Reflecting Pool, FAC ¶¶ 19-20—similar to the use the dissent credited in *Jewell* and *Dark-Sky*. 2026 WL 2276494, at *49.

In sum, even under the dissent's view of the law, Mr. Birnbaum has alleged an injury.

## CONCLUSION

For the foregoing reasons and as further explained in Plaintiffs' opposition to Defendants' motion to dismiss, ECF No. 27, the Court should deny Defendants' motion to dismiss.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Alexander Kristofcak*
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
JOSEPH MEAD
(D.C. Bar No. 1740771)
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
WASHINGTON LITIGATION GROUP
1717 K Street NW, Suite 1120
Washington, DC 20006
Phone (202) 521-8734
Fax (202) 521-8745
akristofcak@washingtonlitigationgroup.org

*Attorneys for Plaintiffs*