**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CULTURAL LANDSCAPE FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF AND NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Civil Action No. 1:26-cv-01593-CJN<br><br>Hon. Carl J. Nichols |

## INTRODUCTION

Defendants argued in their motion to dismiss that mere aesthetic disagreement cannot support individual or organizational standing. The Supreme Court's recent decision related to the planned ballroom at the White House clarifies standing jurisprudence and supports dismissal of this suit.

The parties agree that the ballroom case is highly relevant here. Defendants respond to Plaintiffs': (i) Supplemental Brief, Dkt No. 31 ("Supp Br."), discussing the D.C. Circuit's affirmance of the preliminary injunction on construction of the East Wing of the White House, *National Trust for Historic Preservation in the United States v. National Park Service* ("*National Trust*"), No. 26-5123, -- F.4th ----, 2026 WL 2276494 (D.C. Cir. Aug. 7, 2026), and (ii) Notice of Supplemental Authority, Dkt. No. 32 ("Not. of Supp. Auth."), concerning the Supreme Court's decision staying that injunction, *National Park Service v. National Trust for Historic Preservation in the United States* ("*National Park Service*"), 609 U.S. ___, No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) (*per curiam*).

The Supreme Court's ruling in *National Park Service* supports Defendants' Motion to Dismiss, Dkt. No. 25. In its decision, the Court found that the aesthetic injury asserted by the plaintiffs' declarant was likely insufficient to establish standing because "mere offense, disagreement, or distaste does not qualify as a concrete and particularized injury under Article III." *Nat'l Park Serv.*, 2026 WL 2564318, at *2. The aesthetic injury asserted by Plaintiffs' declarant in this case is indistinguishable from the injury asserted in *National Park Service.* Plaintiffs' declarant, Charles Birnbaum, asserts an injury based solely on disagreement with the selected paint color. *See* Am. Compl., Dkt. No. 23. Having previously represented that the facts alleged in his declaration "mirror" those alleged in *National Park Service*, Pls.' Supp. Br. 3, Plaintiffs' belated attempt to recast the declarations as "materially different," Not. of Supp. Auth., ¶ 2, is neither credible nor supported by the record. Plaintiffs' Amended Complaint should be dismissed for lack of subject-matter jurisdiction because Plaintiffs cannot demonstrate Article III standing to pursue their claims.

## ARGUMENT

### I. The Court's Decision in *National Park Service* Forecloses Theories of Standing Based on Distaste for a Particular Aesthetic.

In *National Park Service*, the National Trust for Historic Preservation in the United States ("Trust") asserted standing based on its member's "desire to view" the East Wing in "stately simplicity" on monthly visits to the neighborhood. 2026 WL 2564318 at *3 (citation omitted). She claimed that on her monthly walks through the neighborhood she would have to "view the finished ballroom the government is constructing" which "would cause her to suffer injuries to her aesthetic, cultural, and historical interests because she finds the scale, height, and massing of the government's design distasteful." *Id.* at *2 (citation omitted). But the Supreme Court found her

asserted injuries insufficient to establish standing because offense to her visual preferences "does not qualify as a concrete and particularized injury under Article III." *Id.*

The Court rejected the Trust's member's attempt to ground her injury in a viewshed interest. *Id.* at *3 ("[T]he Trust reasons that, if the desire to view a 'particular crocodile' qualifies as a cognizable interest for purposes of Article III standing, [the member's] desire to view a new East Wing characterized by more 'stately simplicity' than the government proposes must as well."). The Court explained, "*Lujan*'s statement that the 'desire to . . . observe an animal species, even for purely esthetic purposes,' can constitute 'a cognizable interest for purpose of standing,'" did not describe a "sufficient" showing of standing. *Id.* at *3 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992)). Because "Article III 'requires more than an injury to a cognizable interest,'" a plaintiff must also demonstrate "that its claimed injury is 'concrete and particularized.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, 563).

Unlike the court of appeals, the Supreme Court held that the Trust's member failed to establish a concrete and particularized injury. *Id.* The D.C. Circuit found likely standing based on the member's lost "opportunity to view Lafayette Square with the intentional architectural symmetry of the 235-year-old L'Enfant Plan" while recreating there. *Nat'l Tr.*, 2026 WL 2276494, at *17. The Supreme Court, by contrast, held that her "desire to view" a symmetric White House demonstrated nothing beyond "'the psychological consequence presumably produced by observation of conduct with which one disagrees,'" *Nat'l Park Serv.*, 2026 WL 2564318, at *2–3 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 485 (1982)). And the member could not transmute that psychological effect into an Article III injury by invoking her "expertise in historic architecture," as the Supreme Court's standing cases "contain no such special carveout." *Id.* at *3.

It was thus irrelevant that the Trust's member used the affected area and would derive less aesthetic and recreational value because of the East Wing construction activities and the final appearance of the ballroom. Whereas the D.C. Circuit found the member "'adequately alleged' an injury in fact" by "'aver[ring] that she uses the affected area' and is an individual 'for whom the aesthetic and recreational values of the area will be lessened,'"[1] the Supreme Court rejected the Trust's use-by-viewing theory of standing. *Nat'l Park Serv.*, 2026 WL 2564318, at *2–3 ("standing is unavailable where, as here, the only injury a plaintiff asserts stems from offense, disagreement, or distaste"). Thus, as the Chief Justice succinctly explained the majority's holding, "'I want to look at the White House' cannot" sufficiently "answer the ever critical 'what's it to you?' question of Article III standing," "no matter how distinctive the particular viewer's interest in looking at it may be." *Id.* at *6 (Roberts, C.J., dissenting).

The Supreme Court's reasoning in staying the injunction upheld by the court of appeals straightforwardly applies to this case and supports Defendants' Motion to Dismiss.

## II. Plaintiffs Cannot Establish Standing Based on One Person's Preference for a Dark Gray—Rather than Dark Blue—Reflecting Pool.

Plaintiffs have emphasized that "the facts in this case mirror" those relevant to standing in *National Park Service*. Supp. Br. 3; *see also id.* at 1-4. The analysis of standing should follow suit. Mr. Birnbaum alleges that his "aesthetic enjoyment of the Reflecting Pool . . . has been concretely harmed by Defendants' alteration of its character-defining features and the resulting defects, including uneven coloration, chipped paint, and rapid accumulation of algae." Am. Compl. ¶¶ 19, 20; *see also id.* ¶ 61 ("the transformation has been shocking and upsetting to Mr. Birnbaum and diminished his enjoyment of the Reflecting Pool"). This allegation describes only

[1] *Nat'l Tr.*, 2026 WL 2276494, at *15 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (citation modified)).

disagreement or distaste, not a concrete or particularized injury. *See Nat'l Park Serv.*, 2026 WL 2564318, at *3. Thus, just as the Trust is not likely to establish standing based on a member's "desire to view" the White House, *id.* at *3, Plaintiffs cannot establish standing based on Mr. Birnbaum's desire to view a "grey-tinted, achromatic concrete basin" at the Reflecting Pool, Am. Compl., ¶ 20.

*National Park Service* also confirms that Mr. Birnbaum's alleged "heightened appreciation for the specific design qualities" of the Reflecting Pool based on his "training as a landscape architect," Pls.' Opp'n to Defs.' Mot. to Dismiss 14, Dkt. No. 27, makes no difference in proving injury. *See Nat'l Park Serv.*, 2026 WL 2564318, at *3 (finding no "special carveout" for declarants with expertise). Article III standing "is not measured by the intensity of the litigant's interest, or by a litigant's special interest in the subject." *Id.* (internal citation omitted).

For the same reason, Plaintiffs' attempt to recast Mr. Birnbaum's aesthetic interest in viewing the Reflecting Pool as somehow greater or more deeply felt than Professor Hoagland's interest in viewing the White House is unavailing. Plaintiffs now insist that the facts here are "materially different" because the Reflecting Pool is allegedly Mr. Birnbaum's "go-to place for walking, reflecting, and taking respite," whereas Professor Hoagland, planned to visit the White House "about once a month" and alleged only "mere presence in the surrounding neighborhood." Not. of Supp. Auth. at ¶2. But Mr. Birnbaum *also* alleges that he plans to visit the Reflecting Pool "approximately once a month" in the future, Am. Compl. ¶ 19—an "identical frequency" to Professor Hoagland, as Plaintiffs pointed out, Supp. Br. at 3. Regardless of the frequency of the planned walks, the kind of aesthetic injury alleged is the same.

Further, Mr. Birnbaum's alleged interest in "walking, reflecting, and taking respite" by the Reflecting Pool cannot be meaningfully distinguished from Professor Hoagland's recreational

interest in walking in view of the White House. *See Nat'l Tr.*, 2026 WL 2276494, at *13. Indeed, Plaintiffs now seem to contend that Mr. Birnbaum's interests are also recreational in nature, in an attempt to draw parallels with *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000), and *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). Not. of Supp. Auth. at ¶3. But the Amended Complaint does not allege that the color of the Reflecting Pool limits Mr. Birnbaum's ability to access or walk around it. To the contrary, Plaintiffs allege that Mr. Birnbaum plans to continue visiting the Reflecting Pool, Am. Compl. at ¶19, and they aver that his injury stems only from diminished enjoyment of those visits, *see* Supp. Br. at 7 (arguing that standing only requires proof of "[d]iminished enjoyment due to Defendants' actions," not "altered conduct"). Plaintiffs' new recreational-injury allegations have no basis in the record and should be rejected.

## CONCLUSION

Plaintiffs' observation that *National Park Service* did not "decide the merits" of that case is irrelevant here. Not. of Supp. Auth. at ¶1. This case is squarely controlled by *National Park Service* because it addresses a nearly identical question of standing and involves a case that does not differ from this one in any pertinent respect. *Cf. Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (finding an interim order controlling). For the reasons stated in *National Park Service*, and those previously presented in support of Defendants' Motion, Plaintiffs' Amended Complaint should be dismissed for lack of subject-matter jurisdiction.

DATE: September 11, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BRADLEY CRAIGMYLE

Deputy Assistant Attorney General

/s/ Marissa Piropato
MARISSA PIROPATO
Deputy Chief
Natural Resources Section
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 532-3182
Email: Marissa.piropato@usdoj.gov

*Attorneys for Defendants*