**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE CULTURAL LANDSCAPE FOUNDATION *et al.*,

*Plaintiffs*,

*v.*

U.S. DEPARTMENT OF THE INTERIOR *et al.*,

*Defendants*.

No. 26 Civ. 1593 (CJN)

**PLAINTIFFS' REVISED SUPPLEMENTAL BRIEF REGARDING IMPACT OF *NATIONAL TRUST* ON DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. The Supreme Court's Stay Order Reaffirms Existing Law Recognizing Diminishment of Use is Grounds for Standing. ........ 2

II. Mr. Birnbaum Alleges the Degradation of His Enjoyment of a Structure he Travels To See, Not Offense. ........ 5

III. Defendants' Claim of Inconsistency is a Baseless Distraction. ........ 6

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

## Cases

*Bahlul v. United States*,
77 F.4th 918 (D.C. Cir. 2023)....................4

*Bost v. Ill. State Bd. of Elections*,
607 U.S. 71 (2026)....................1

*Campaign Legal Ctr. v. Iowa Values*,
691 F. Supp. 3d 94 (D.D.C. 2023)....................5

*Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*,
146 F.4th 1144 (D.C. Cir. 2025)....................4

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)....................2

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000)....................2, 3

*Int'l Dark-Sky Ass'n v. FCC*,
106 F.4th 1206 (D.C. Cir. 2024)....................4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................3

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023)....................3

*Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*,
185 F.4th 1185 (D.C. Cir. 2026)....................2, 3, 4, 5

*National Park Service v. National Trust for Historic Preservation in the United States*,
No. 26A203, 609 U.S. ___ (Aug. 31, 2026)....................1, 2, 5

*Sierra Club v. Jewell*,
764 F.3d 1 (D.C. Cir. 2014)....................4

*Sierra Club v. Morton*,
405 U.S. 727 (1972)....................3

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009)....................2, 3

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982)....................2

## INTRODUCTION

In *National Park Service v. National Trust for Historic Preservation in the United States*, No. 26A203, 609 U.S. ___ (Aug. 31, 2026) (per curiam) ("*National Park Service*"), the Supreme Court reaffirmed two long-settled principles. On the one hand, "mere offense, disagreement, or distaste," without more, does not establish standing. Slip op. at 3. On the other, the loss of enjoyment or use that a plaintiff experiences from the degradation of a resource he intentionally and purposefully visits is different—such an injury *is* "*more* than mere offense." *Id*. at 4 (emphasis in original). Applying those principles, the Court concluded that an individual who happens to "visit the neighborhood" around a planned structure and "finds . . . the government's design distasteful" lacks standing to challenge its construction. *Id.* at 3.[1]

Mr. Birnbaum's injury fits squarely on the loss-of-use side of the line. He does not object to the construction of a new structure; he alleges the diminishment of his enjoyment of an existing historic structure he frequents. And his encountering the Reflecting Pool is not incidental but intentional—a place he purposefully seeks out to enjoy the design features of this historic structure. This has always been the basis for Mr. Birnbaum's standing, and *every opinion* from *every court* in the *National Park Service* litigation is consistent with the rule that governs this case: a plaintiff who intentionally and regularly visits a resource for the purpose of viewing that resource suffers an Article III injury when the government visibly alters that resource in a way that materially affects his enjoyment of it. *See, e.g.*, *id.* at 4 (majority); *id.* at 12-13 (Roberts, C.J., dissenting);

[1] The Supreme Court's order in *National Park Service* addressed only the aesthetic injury asserted by an individual member of the plaintiff organization. It did not address organizational or informational injury and has no bearing on The Cultural Landscape Foundation's independent standing, which Plaintiffs have established, *see* Pls.' Mem. in Opp. ("Opp.") at 15-18, ECF No. 27, and which alone suffices for this case to proceed, *see Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 76 n.3 (2026).

*Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*, 185 F.4th 1185, 1210 (D.C. Cir. 2026) ("*National Trust*") (majority); *id.* at 1251 (Rao, J., dissenting).[2]

## I. The Supreme Court's Stay Order Reaffirms Existing Law Recognizing Diminishment of Use is Grounds for Standing.

The Supreme Court's stay order neither made new law nor abrogated old. It restated that mere "distress at or disagreement with the activities of others is not a basis under Article III for a plaintiff to bring a federal lawsuit." *National Park Service*, slip op. at 3 (quoting *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 390 n.3 (2024)). And it restated that a plaintiff must identify an injury "other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Id.* (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982)). Plaintiffs have never disputed either proposition. Plaintiffs' opposition addressed *Valley Forge* directly and explained why Mr. Birnbaum's injury is not of that character. *See* Opp. at 12-13.

At the same time, the Supreme Court's order in *National Park Service* also reaffirmed *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), and *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), as cases "where the plaintiff's injuries involved *more* than mere offense." *National Park Service*, slip op. at 4 (emphasis in original). Those cases are instructive. In *Laidlaw*, the Court recognized that plaintiffs "adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." 528 U.S. at 183

[2] The Supreme Court did not vacate or reverse the D.C. Circuit's decision, which remains binding precedent. Indeed, as a stay order, the Supreme Court did not even conclusively decide whether the *National Trust* had standing. *See National Park Service*, slip op. at 2 (concluding that "the government is *likely* to prevail in showing that the Trust lacks standing" (emphasis added)).

(quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Thus, even though the challenged action had no measurable adverse effect on the river, plaintiffs who regularly used the river had standing to sue based on their lessened enjoyment of the river. *Id.* at 182-83. Similarly, in *Summers*, the Government did not even contest that an individual who alleged "his interests in viewing the flora and fauna of the area would be harmed" by a proposed project had standing. 555 U.S. at 494-96. As the Court noted, harm to the forest or the environment that impedes on "even the mere esthetic interests of the plaintiff" suffices for standing. *Id.* at 494; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992) ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"). Only the Supreme Court has the "prerogative of overruling its own decisions," *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (internal quotation marks omitted), and the Supreme Court reaffirmed rather than overruled this precedent. That choice controls here.

The Government reads the Supreme Court's stay opinion to reject any "use-by-viewing theory of standing," conflating any injury based on sight with an injury based on offense. Defs.' Resp. to Pls.' Supp. Br. at 4 ("Defs.' Resp."), ECF No. 33. But some things are primarily enjoyed (or "used") by viewing them—monuments and endangered animals as prime examples. *See National Trust*, 185 F.4th at 1213 ("The whole point of preserving historic buildings and sites, monuments, and memorials is for members of the public to be able to visit them, view them, and appreciate them."). That does not place their enjoyment outside of Article III. When the government diminishes a resource that a person seeks to view, the injury comes not from offense but because the government has interfered with the person's relationship with the resource. For example, assume the Government were to obliterate the names of the fallen soldiers etched into the Vietnam Veterans Memorial. A veteran who traveled to the Memorial each year to pay tribute

by observing his comrades' names would surely suffer an Article III injury—not because he finds the government's actions distasteful, but because his use of the Memorial has been diminished. *See id.* at 1214 ("The Defendants' cramped standing theory would deem no one injured by a decision to raze the Statue of Liberty, to obscure the names on the Vietnam War Memorial, or to install a political billboard atop Mount Rushmore," which "brushes off the signification, emotion, meaning, and particularized value to individuals of witnessing certain places").

The Government's claim to the contrary is unsupported by anything in the Supreme Court's stay order. It cannot be squared with *Laidlaw* and *Summers*. And, as both opinions in the D.C. Circuit recognized, that view is flatly irreconcilable with D.C. Circuit precedent. *National Trust*, 185 F.4th at 1210 (majority opinion); *id.* at 1251 (Rao, J., dissenting) ("To demonstrate an aesthetic injury is particularized, a plaintiff must show she will 'use the land' in a way that will be impaired by the challenged action."). Indeed, the D.C. Circuit dissenting opinion approvingly cites two examples of standing established through use-by-viewing: *Int'l Dark-Sky Ass'n v. FCC*, 106 F.4th 1206 (D.C. Cir. 2024), which recognized standing for "stargazers and astronomers [who] 'use' the sky,'" and *Sierra Club v. Jewell*, 764 F.3d 1 (D.C. Cir. 2014), where plaintiffs "view[ed] and enjoy[ed]" a historic battlefield. *National Trust*, 185 F.4th at 1251 (Rao, J., dissenting). The majority cites more. *Id.* at 1210 (majority op.) (citing *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 146 F.4th 1144, 1157 (D.C. Cir. 2025), which recognized "an amateur photographer and entomophile who went on annual vacations to view the American Burying Beetle had standing to challenge a change in its protected status").[3] That law controls.

[3] The Supreme Court's interim stay order did not cast doubt on any of this precedent, much less "*clearly* dictate a departure from circuit law." *Bahlul v. United States*, 77 F.4th 918, 926 (D.C. Cir. 2023) (emphasis added; internal quotation marks omitted). And even if it were otherwise, "whether a [Supreme Court] decision has done so is a determination for a panel of the Circuit—not [the district] Court—to make." *Campaign Legal Ctr. v. Iowa Values*, 691 F. Supp. 3d 94, 103 (D.D.C.

## II. Mr. Birnbaum Alleges the Degradation of His Enjoyment of a Structure he Travels To See, Not Offense.

Whatever difficulty the line between use and offense may pose in other cases, it poses none here.[4] The individual claiming standing in *National Trust* expected to encounter the ballroom she objected to while visiting the surrounding neighborhood; her contact with it was "incidental," something she saw on her way to somewhere else. *National Trust*, 185 F.4th at 1251 (Rao, J., dissenting). And her claim to standing rested on distaste for a structure that did not yet exist: she objected to what was being built, not to her loss of use or enjoyment of the structure already there. *See* slip op. at 1 ("The injunction the Trust sought focused not on the already-completed demolition of the old East Wing but on halting the ongoing construction of a new one.").

Mr. Birnbaum's relationship to the Reflecting Pool is fundamentally different. First, he does not come upon the Reflecting Pool; he comes to it. The Lincoln Memorial Grounds and the Reflecting Pool have long been a cherished part of his life in Washington. He found particular solace visiting it during the COVID-19 pandemic, and the Grounds have since been his "go-to place for walking, reflecting, and taking respite from the demands of his work." First Amended Complaint ("FAC") ¶ 19, ECF No. 23. His visits are not incidental to some other errand; their purpose is the Pool itself. *Id.* ¶¶ 19-20.

Second, he seeks to preserve the essential features of a historic structure he already uses, so that he may continue to enjoy it as he long has. Yet Defendants' transformation "diminished his

---

2023).

[4] Indeed, the primary differences between the majority and dissenting opinions, and between the Supreme Court majority and the D.C. Circuit majority, is not over the applicable legal principles but how to understand the specific evidence in the case. *See, e.g.*, *National Park Service*, slip op. at 5 (Roberts, C.J., dissenting) (the majority had "reframed Hoagland's aesthetic injury as 'mere offense'"); *National Trust*, 185 F.4th at 1252 (arguing that the majority opinion "fill[ed] in the blanks for the plaintiff" and "stretch[ed]" the facts from the declaration to find standing).

enjoyment of the Reflecting Pool," FAC ¶ 61, and his visits since the alteration have been "a materially worse experience," *id.* ¶ 18. It is the loss of his full enjoyment of a resource he intentionally visits because of Defendants' alteration of that very structure—the covering up of one of its essential, character-defining features—that establishes his standing.[5] Put differently, the injury here is the loss of something he cherished, not the addition of something "offensive" in his line of sight. That's not "mere offense," nothing in the Supreme Court's stay order, or either the majority or dissenting opinions in the D.C. Circuit, suggest that such an injury is beyond the purview of the federal courts.

## III. Defendants' Claim of Inconsistency is a Baseless Distraction.

There is nothing novel, inconsistent, or contradictory about Plaintiffs' position, which has rested throughout on the same factual predicate and the same legal theory. Mr. Birnbaum's declaration, executed May 9, 2026, alleges diminished enjoyment caused by structural changes to the Reflecting Pool. ECF No. 2-1 ¶¶ 24-26. The Amended Complaint, filed July 2, 2026, alleges it. FAC ¶¶ 18-20, 61. Plaintiffs' opposition, filed July 31, 2026, argued the claim under *Laidlaw*'s "aesthetic and recreational values" standard and described Mr. Birnbaum's "continued use of the site on materially degraded terms" as "a paradigmatic aesthetic injury." Opp. at 10-11; *see also id.* at 13-15. Plaintiffs' supplemental brief, filed August 28, 2026, argued that "[d]iminished enjoyment due to Defendants' actions . . . is what standing requires." Pls.' Supp. Br. ("Supp. Br.")

[5] Birnbaum's allegations of diminished enjoyment are themselves sufficient at this stage. But Defendants' own documents confirm the magnitude of the change. The Park Service's 1999 Cultural Landscape Report identifies the grey, achromatic basin as a character-defining feature of the Lincoln Memorial Grounds and as the source of the pool's reflective function. FAC ¶ 43. The Park Service's Assessment of Actions Having an Effect on Historic Properties for this project records that the resurfacing does not "[r]eplace historic features/elements in kind," that it does "[a]dd non-historic features/elements to a historic structure," and that it does "[a]lter or remove features/elements of a historic setting or environment." ECF No. 25-1 at 3. This is not about "mere offense" but preserving the essential features of a structure that Mr. Birnbaum seeks out to enjoy.

7, ECF No. 31. Each of those filings preceded the Supreme Court's order by weeks or months, and Defendants' assertion that Plaintiffs advance "new recreational-injury allegations" with "no basis in the record," Defs.' Resp. at 6, cannot be squared with them. Whether the interest is labeled "aesthetic" or "recreational," it is the same interest Plaintiffs have asserted from the outset.

And there is also nothing inconsistent between this brief and Plaintiffs' first supplemental brief. Plucking a few words out of context, the Government suggests that the Plaintiffs previously argued that their allegations "mirror" the facts of *National Trust*, and thus their claim to standing must meet the same fate. Defs.' Resp. at 2, 4. What Plaintiffs said was that the D.C. Circuit panel had identified "four features" that supported the individual's claim to standing, and "[t]he facts in this case mirror *each of those four features*." Supp. Br. at 2-3 (emphasis added). For example, both Mr. Birnbaum and the individual asserting standing in *National Trust* visited the relevant area monthly. *See id.* That remains true. But that hardly concedes that *every* fact or factor relevant to standing is identical across both cases. And as discussed above, the reasons the Supreme Court gave for preliminarily finding the *National Trust* plaintiff likely lacks standing do not have application to the facts alleged here. The outcome turns on what a plaintiff asserts: offense alone, or diminished enjoyment of a resource he uses. Mr. Birnbaum plainly asserts the latter. Accordingly, he has standing to bring his claim.

## CONCLUSION

For the foregoing reasons and as further explained in Plaintiffs' opposition to Defendants' motion to dismiss, ECF No. 27, and supplemental filings, ECF Nos. 31 & 32, the Court should deny Defendants' motion to dismiss.

Dated: September 18, 2026

Respectfully submitted,

*<u>/s/ Alexander Kristofcak</u>*
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
JOSEPH MEAD
(D.C. Bar No. 1740771)
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
WASHINGTON LITIGATION GROUP
1717 K Street NW, Suite 1120
Washington, DC 20006
Phone (202) 521-8734
Fax (202) 521-8745
akristofcak@washingtonlitigationgroup.org

*Attorneys for Plaintiffs*